## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| HDR FARMS INCORPORATED, | ) | Chapter 11 |
| | ) | |
| Debtor | ) | CASE NO. 20-50888-GRS |
| _____ | ) | |
| | ) | |
| HDR FARMS INCORPORATED | ) | A.P. No. 21-05166-grs |
| LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLIED BOTANICS LLC f/k/a | ) | |
| XSI USA, LLC; COZEN O'CONNOR; | ) | |
| KAWEL LAUBACH; DEAN JOHNSON | ) | |
| ANNETTE COX; CHARLES THOMAS | ) | |
| "TODD" MERCER; and APPLIED | ) | |
| BIOLOGY LLC | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

## COZEN O'CONNOR'S MOTION FOR SUMMARY JUDGMENT

Defendant, Cozen O'Connor ("Cozen"), respectfully moves the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, for entry of an order granting summary judgment in favor of Cozen and dismissing each of the claims against Cozen in the Amended Complaint [Doc. No. 17].

### I.    INTRODUCTION

Plaintiff alleges that Kawel LauBach ("LauBach"), a founding member, former director and chief executive officer (CEO) of HDR Farms Incorporated ("HDR Farms" or "HDR"),

breached his fiduciary duty to HDR by causing the creation of an allegedly competing company, XSi-USA, LLC ("XSi" or "XSi-USA"), and by diverting corporate opportunities from HDR to XSi-USA. Plaintiff further alleges that Cozen negligently and/or intentionally facilitated LauBach's conduct and that, as a result, a $2.6M investment opportunity ($2.5M by Annette Cox and $100,000 by Todd Mercer's wife) was diverted away from HDR. [Doc. No. 17, Counts IV and V.][1]

While there is no basis for finding that Cozen breached any duties to HDR Farms, summary judgment is warranted in its favor even assuming *arguendo* that it did. This is so because there is no evidence to support any finding that anything LauBach did to solicit the $2.6M investment into XSi or anything that Cozen allegedly did to facilitate that investment proximately caused any harm to HDR. And there is no evidence to support the finding that Annette Cox or Todd Mercer or any other investor would have invested in HDR Farms even had XSi not been formed and even if they had never been solicited to invest into XSi. Without that necessary evidence, Plaintiff cannot establish the elements of causation and damage that necessarily underlie both its malpractice and its aiding and abetting claims against Cozen.

## II.     RELEVANT AND UNDISPUTED FACTS

### A.     Cozen Did Not Represent HDR Farms on any of the Matters Sued Upon in this Case.

Cozen represented HDR Farms for less than four months, from early October 2019 through late January 2020.   [Exhibit 1, Declaration of Joseph Bedwick ("Bedwick Decl."), ¶ 3.]  Cozen's dealings with HDR were predominantly with LauBach, who at that time was HDR's CEO. [*Id.*, ¶ 4.]

---

[1] The Amended Complaint consisted of 14 separate counts against 7 defendants. Two of these counts were asserted against Cozen, one for aiding and abetting the alleged breach of fiduciary duty by LauBach and one for malpractice.

While LauBach would intermittently seek advice from Cozen's Joseph Bedwick ("Bedwick"), the principal focus of Cozen's representation was litigation-oriented, handled by Cozen litigator Kari Berman, with the goal of assisting HDR in redeeming the shares held by one of HDR's founding shareholders, Danny Plyler. [*Id.*, ¶¶ 5-6; Exhibit 2, Deposition of Kawel LauBach ("LauBach Depo."), pp. 16, 101-02.] And Cozen never represented HDR on either of the matters which underlie Plaintiff's claims in this case, that is, either HDR's negotiations of its letter of intent ("LOI") with XSi or HDR's efforts to raise investment capital. [*Id.*, ¶¶ 7; Exhibit 2, LauBach Depo., 16, 25-27,101-02.] To the contrary, HDR Farms negotiated and entered into its LOI with XSi Xtraction Solutions, Inc. without the slightest involvement by Cozen, and HDR Farms never asked Cozen for any advice in connection with the negotiation of the LOI or the terms of the LOI. Similarly, Cozen had no input into or knowledge of HDR Farms' fundraising efforts, or how Annette Cox and Todd Mercer were solicited to invest, or the discussions around which entity the Cox/Mercer investments would be made. [*Id.,* ¶¶ 8-9.]

### B.    HDR's Dismal Financial Condition.

By November 2019, when HDR entered into its LOI with XSi, the Company was a financial disaster. After a little more than one year of operations, HDR had virtually no revenue, no customers, and it had recognized that its business model was unsustainable. [Exhibit 2, LauBach Depo., pp. 56-57; Exhibit 3, Deposition of Steve Bragg ("Bragg Depo."), 32-34, 139; Exhibit 4, Deposition of Stewart Wakeley ("Wakeley Depo."), pp. 84-87, 113-115.] For 2019 alone, the Company lost over $1.5 million. By year end 2019, it had accumulated a negative net worth of more than $2 million (assets of approximately $400,000 and liabilities of approximately $2.5 million). [Exhibit 2, LauBach Depo., pp. 9-12; *see also* Exhibit 5 (HDR 2019 Financial Statements).]

Not only did the Company's financial statements (which any investor would have needed to review) depict a Company in hopeless distress but, in addition, HDR Farms had incurred approximately $2.3 million of investor debt, including to 33 separate investors who held promissory notes from HDR Farms that were either already in default and immediately due and payable or imminently due and payable. [Exhibit 2, LauBach Depo., p. 249; Exhibit 4, Wakeley Depo., p. 20; Exhibit 6, Declaration of Barry Hunter ("Hunter Decl."), ¶¶ 2-4.]  Thus, any new investor would have first needed not only to obtain at least 33 separate subordinations (or else at least $2.3 million of their investment would have been quicky dissipated by the original investor's claims) but also to turn a blind eye to HDR's catastrophic financial performance.  It is hardly surprising, then, that apart from Plaintiff's inability to show that the necessary subordinations could have been obtained, Plaintiff has not and cannot show that such a willing investor could have been secured.

**C.      Cox's and Mercer's Investment into XSi Was Consistent with the Business Plan Devised and Approved by HDR Farms *and its Entire Board of Directors*.**

HDR Farms made the ***business decision*** to enter into the LOI without the slightest involvement by Cozen. [Exhibit 1, Bedwick Decl., ¶ 8; Exhibit 2, LauBach Depo., p. 16.]  It did so as part of a plan to save itself from certain bankruptcy, because HDR Farms was unable, due to its dire financial condition, to attract the investment capital it needed to survive. [Exhibit 2, LauBach Depo., pp. 9, 12-13.]

The LOI, which was executed on or around November 22, 2019, provided for a joint venture between HDR and XSi Extractions, a Canadian hemp supplier, pursuant to which the two entities would form a new company, XSi-USA, which would utilize the contacts and capital of the Canadian Company in order to better commercialize and market HDR's hemp products. [Exhibit

4

7 (the LOI).]  In the short term, according to the LOI, XSi-USA would support HDR Farms by becoming HDR's sole customer for its CBD isolate product and by buying its principal assets for fair value, including its 130-acre farm. [Exhibit 7, LOI, p. 1].  In the long term, according to the LOI, XSi-USA would purchase the outstanding shares of HDR. [*Id.*]  Moreover, because HDR Farms' financial condition made it impossible for that Company to attract any new investment capital, **the LOI contemplated that all new investment money would be solicited into XSi.** [Exhibit 2, LauBach Depo., pp. 12-16, 18-19.]

Cozen was never asked to advise or assist HDR in its efforts to raise investment capital. And Cozen had no knowledge whatsoever about any of these efforts.  Just by way of example, Ms. Cox visited HDR Farms in early December 1999 to meet with Messrs. LauBach and Bragg.  Cozen had no knowledge of that visit to HDR's facility and it had no knowledge of her pre-investment discussions with HDR's representatives.  What Cozen had been told by LauBach on this subject was that HDR Farms was unable to attract any new investment capital due to the state of its financials. [Exhibit 1, Bedwick Decl. ¶¶ 10-11; Exhibit 2, LauBach Depo., pp. 12-13, 15-16.]

HDR Farms' joint venture/LOI with XSi and its solicitation of investment funds into XSi was not only LauBach's plan—***it was the plan of HDR's entire Board of Directors.***  At that time, HDR's Board of Directors consisted of LauBach, Steve Bragg and Stewart Wakeley.  LauBach was the CEO, Bragg was the COO, and Wakeley was a noteholder/investor himself and the representative, on the Board, of the numerous other noteholders/investors.  All three of the board members, LauBach, Bragg and Wakeley, knew of and approved of the LOI – accomplished with no involvement (or even awareness) by Cozen – and they knew of and approved soliciting investments into XSi.

The centrality of this incontestable fact cannot be overstated. The claim in this case is based upon the premise that Cozen's misconduct consisted of not advising HDR's board of directors that its CEO, LauBach, was planning to solicit funds into XSi. Plaintiff's Complaint, paragraph 51, actually alleges that Bragg and Wakeley were kept in the dark by LauBach and not consulted or apprised of the LOI. This allegation, like virtually all of the material allegations in Plaintiff's Complaint, is demonstrably false. It is not only contrary to what LauBach told Cozen during the representation, and it is not only contrary to what LauBach has testified, but it is contrary to the deposition testimony of the other two board members, Wakeley and Bragg. *See infra*, pp. 6-7.

**Indeed, it is not an overstatement to say that Plaintiff's central allegation, on which the claims against Cozen are based, is complete fiction. Not only did Wakeley and Bragg know of and approve of LauBach's conduct in negotiating and executing the LOI on behalf of HDR and in soliciting new investment funds into XSi, but they considered what LauBach was doing in this regard to be a "lifeline" for the Company.** [Exhibit 2, Laubach Depo., pp. 12-16, 18-19; Exhibit 8 (Plaintiff's Response to Requests for Admissions), Request Nos. 3-5; Exhibit 3, Bragg Depo., pp. 184-88, 108-09, 114, 146-47, 102-104,119-121, 174, 155-56 and Bragg depo. exhibit 13; Exhibit 4, Wakeley Depo., pp. 115-16, 57-63, 66-68, 69-71; Exhibit 9, Second Deposition of Stewart Wakeley ("Second Wakeley Depo."), pp. 42-45, 53-55.]

For example, as testified by Wakeley:

Q.      …you knew in November of 2019 what the LOI was with XSi, right?

A.      Correct.

Q.      You were supportive of it and you agreed with it?

A.      Correct.

Q.      Okay.  You knew when LauBach resigned that he was going to XSi and that Cox was going to be investing in XSi?

A.      Correct.

Q.      Not only did you not complain to anybody, but you supported that action and you expressed the fact that Cox's investment in XSi was critical to your company's success, right?

A.      That's what we were being told, and then also that they were going to merge with us and not be -- not be competing there.  That was the plan that we were being told, yes.

* * *

Q.      That LOI and the terms of that LOI, you-all considered it as a lifeline to the company, right?  That was a term you-all used.

A.      That was the purpose.

* * *

Q.      What Mr. LauBach told you and what you told your fellow investors about this deal whenever you told them was that this deal was good for the company and was likely to save the company, right?

A.      When I actually had an opportunity to tell them, yes.

Q.      And that's what you believed at the time, right?

A.      That's correct.

* * *

Q.      And not only did you approve it, but you expressed that that investment by Ms. Cox into XSi USA was a lifeline for the company, right?

A.      That's what we were being told, correct.

Q.      Okay.  And that's what you believed at the time?

A.      That's what I believed.

[Exhibit 4, Wakeley Depo., pp. 115-16, 67-68, 70.][2] As testified by Bragg:

---

[2] As Wakeley never spoke to Cozen, he cannot claim to have been misled on these matters by Cozen. [Exhibit 4, Wakeley Depo., p. 108.]  In fact Cozen was told the same thing by LauBach as was Wakeley and Bragg – that Cox's

Q.    …you were on board with this letter of intent when it was disclosed to you in November of 2019; correct?

A.    Yes.

* * *

Q.    By no later than January 13th, you knew and Mr. Wakeley knew that Annette Cox and Todd Mercer were going to be investing in XSi and not HDR; right?

A.    Yes.

* * *

Q.    And Mr. Wakeley's telling you that Cox's investments with XSi was the key to HDR's survival; right?

A.    Yes.

Q.    And you agreed; right?

A.    Yes.

[Exhibit 3, Bragg Depo., 108, 146, 155-56.][3]  And Cozen all along understood that the Board of Directors knew of and supported LauBach's conduct in dealing with XSi.  This was based not only on what LauBach told Bedwick but also based on a contemporaneous draft letter "From the desk of Stewart Wakeley" to HDR's then investors that LauBach showed Bedwick ("I want to encourage all investors to approve the transaction laid out to you [the transaction with XSi]…and

---

investment in XSi would be beneficial to HDR Farms, and Cozen had not been engaged to investigate the soundness of that conclusion. [Exhibit 1, Bedwick Decl. ¶ 12; Exhibit 4, Wakeley Depo., p. 116.]

[3] Bragg and Wakeley, like LauBach, believed that Cox's investment into XSi would benefit HDR Farms as long as the LOI terms were pursued.  In fact, wholly without Cozen's involvement and long after Cozen had stopped representing HDR Farms, the parties did convert certain of the LOI terms into a binding agreement, to wit, XSi bought $50,000 of HDR Farms' product and it bought HDR Farm's $675,000 farm, using the funds invested by Cox into XSi. [Exhibit 2, LauBach Depo., pp. 22-24.]  Both Bragg and Wakeley remained supportive of HDR Farms' relationship with XSi through the farm sale, in March 2020, and both testified that they would have remained supportive had XSi not terminated the relationship without consummating the remaining terms of the LOI. [Exhibit 3, Bragg Depo., pp. 160-61, 179-80; Exhibit 4, Wakeley Depo., pp. 67-68, 122-23.]  The parties terminated their relationship in late April 2020. [Exhibit 9, Second Wakeley Depo., pp. 23, 26-28.]  Cozen had no input or involvement whatsoever in the termination of the relationship between HDR Farms and XSi-USA, LLC, which occurred long after HDR Farms had retained new counsel and long after Cozen no longer represented HDR Farms.  [Exhibit 1, Bedwick Decl., ¶¶ 14.]

I want to express my gratitude to both Kawel and Steve for their efforts [on that transaction]).”
[Exhibit 3, Bragg Depo., pp. 187-88 and Bragg depo. exhibit 30; Exhibit 1, Bedwick Decl., ¶ 13.]
The transaction referenced by Wakeley was the LOI transaction pursuant to which the investment
into XSi was being solicited.

### D.    Cox and Mercer Never Considered Investing and Would Never Have Invested in HDR Farms.

While Plaintiff’s Complaint alleges that Annette Cox and Todd Mercer had agreed to invest
$2.6 million dollars into HDR Farms and that LauBach tortiously diverted this investment
opportunity from HDR over to XSi, Cox’s and Mercer’s alleged willingness to invest any money
into HDR is not only completely contrary to what HDR told Cozen during the representation, but
it is also completely contrary to fact.  As demonstrated by Cox’s and Mercer’s clear testimony,
they had never even considered investing into HDR and, had they ever been presented with that
Company’s financial statements (which statements were never presented to them), they would
have declined (as would have any investor given that a $2.6 million investment could not go far in
a company that was $2.5 million in the hole and had then current obligations to the existing
noteholders in the amount of $2.3 million). [Exhibit 10, Deposition of Todd Mercer (“Mercer
Depo.”), pp. 11-13, 26, 33-34 and Mercer depo. exhibit 1; Exhibit 11, Deposition of Annette Cox
(“Cox Depo.”), pp. 10-13 and Cox depo. exhibit 1; *see also* Exhibit 2, Laubach Depo., pp. 15-16,
247-48.]

Thus the entire premise of HDR’s lawsuit, that LauBach diverted an HDR investment
opportunity over to XSi and thereby damaged HDR by $2.6 million, is utter fiction. As HDR’s
Director Steve Bragg admitted at deposition, the allegation at paragraph 54 of Plaintiff’s
Complaint, *i.e.,* that Annette Cox told him she was interested in investing in HDR, was false – she
never told him any such thing. [Exhibit 3, Bragg Depo., pp. 109-111.]  Moreover, Bragg admitted,

at his deposition, that he was well aware, prior to meeting with Ms. Cox, that she was being solicited to invest into XSi—not HDR [*Id.,* pp. 101-04.]  And as every HDR witness testified and as the discovery documents plainly show, LauBach had advised HDR's Board by no later than early December 2019, nearly two months before the actual investments, that because of HDR's financial problems, the Cox/Mercer investments were being solicited into XSi and not into HDR. [*See* Exhibit 3, Bragg Depo., pp. 102, 104; Exhibit 9, Second Wakeley Depo., pp. 50-51, 53-55; *see also* Exhibit 12, 12/2/2019 email from LauBach to Wakeley ("Our efforts right now are to find funding for XSi to buy the farm from HDR…"); Exhibit 13, 12/16/2019 email from LauBach to Wakeley ("we have individuals interested in investing in this third party [XSi]").]

Plaintiff's Rule 30(b)(6) witness, Stewart Wakeley, begrudgingly admitted, at his deposition, that he had no evidence to suggest that Cox or Mercer would ever have invested in HDR had they been given the HDR financials. [Exhibit 4, Wakeley Depo., p. 91; *accord* Exhibit 3, Bragg Depo., pp. 111-12.]  And Wakeley similarly admitted that, without such evidence, he had no evidence that Cozen's alleged misconduct had in any way harmed HDR:

> Q.    If Mercer and Cox were not going to invest in your Company whether or not there was an XSi – how did anything Cozen do hurt you?
>
> A.    Well, at that point, I wouldn't say that they did….

[Exhibit 4, Wakeley Depo., p. 113.]

### III.    ARGUMENT

While there is no basis for finding that Cozen breached any duties to HDR Farms, judgment is warranted in its favor even assuming *arguendo* that it did.  This is so because, for three independently sufficient reasons, Plaintiff cannot establish that anything Cozen is alleged to have done proximately caused any harm to HDR Farms.

- First and foremost, Plaintiff has no evidence that Cox and Mercer would have invested in HDR Farms under any circumstances; thus, Cozen's role in forming XSi – and its supposed role in facilitating LauBach's solicitation of Cox and Mercer's investment in that Company – caused no harm to HDR Farms.

- Second, as to Plaintiff's conflict claim, Plaintiff has no evidence that a non-conflicted lawyer would have acted any differently from Cozen; thus, the alleged conflict could not have proximately harmed HDR Farms.

- Third, as to Plaintiff's Rule 1.13 claim that Cozen failed to report LauBach's alleged misconduct to the board of directors, Plaintiff has no evidence that any such reporting would have made any difference, as the board of directors already knew more than Cozen about LauBach's complained of actions.

For each of these reasons, Plaintiff cannot establish the necessary proximate causation and damage elements of its claims against Cozen.

### A.    The Sole Harm Alleged in this Case is the Harm Alleged to Flow from the Loss of the $2.6M Investment by Cox and Mercer.

The only harm alleged in the Amended Complaint is HDR Farms' alleged loss of the Cox/Mercer investment opportunity that LauBach allegedly diverted from HDR into XSi. This Court recognized as much in its February 23, 2022 Memorandum Opinion [Doc. No. 127] dismissing LauBach's third-party claim against former HDR Farms director Plyler: "…Plyler's actions are unrelated to the diversion of investments to XSi, which is the basis of the damages sought by Plaintiff…." [Doc. No. 127 at 8-9.]  Discovery has similarly confirmed that Plaintiff's claims are so limited.  In its Responses to Cozen's damages Interrogatory, Plaintiff stated as follows:

**INTERROGATORY NO. 2:**      Please state the damages you are claiming in this case against Cozen and the method(s) by which you are computing same, and identify all documents reflecting the information responsive to this interrogatory, that is, all documents containing information supporting or evidencing such damages computation or claim.

**ANSWER:**      Each of the Defendants either breached or contributed to the breach of fiduciary duties and/or engaged in fraudulent conduct to divert $2.6 million in total investments that should have been infused into HDR Farms Incorporated through either a direct investment or partnership involving HDR Farms Incorporated and Applied Botanics LLC f/k/a XSI USA LLC.  In addition thereto, the Defendants' tortious conduct caused HDR Farms Incorporated to be denied valuable business opportunities that included forecasted revenues in excess of $100 million within a three-year period according to Kawel LauBach's representations to Steve Bragg while Mr. LauBach was CEO of HDR Farms Incorporated.

[Exhibit 14 ("Plaintiff's Responses to Cozen's First Interrogatories"), Interrogatory No. 2.]

Thereafter, during Cozen's Rule 30(b)(6) deposition of the Plaintiff's damages designee,

Plaintiff's witness stated as follows:

Q.    How did any of these things that you just told me about damage HDR?

A.    How does any of those things I told you about damage HDR?

Q.    That's Topic 6 [on the 30(b)(6) deposition notice.]

A.    Damages.  Well, I would have thought if XSi doesn't exist and it doesn't go over there, well, then there's -- I guess you could -- the money would go into HDR if they had been like, Okay, that's what we have to do, it's this or not, possibly….I'm saying that the damages against Cozen would be that I think they helped facilitate the money going into a competing company.

Q.    And how did they do that?  By setting up the company?

A.    Yeah.

[Exhibit 15, Deposition of Dak Davis ("Davis Depo."), pp. 70:17-71:14.]  No supplementation has been made as to either Plaintiff's Interrogatory Answer or its 30(b)(6) Deposition Answer, and Plaintiff has not designated a damages expert.

Thus, Plaintiff's claims against Cozen require it to prove that Cozen's alleged tortious activity proximately caused Plaintiff's loss of the Cox/Mercer investments. *See Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003) (proximate cause is a necessary element of a legal malpractice claim); *Douglas Walter Greene v. Frost Brown Todd, LLC*, No. 16-6761, 2017 WL 6210784, at *5 (6th Cir. Dec. 4, 2017) (affirming summary judgment when plaintiff failed to show attorney's alleged conflict of interest caused plaintiff any harm), *cert. denied*, 139 S.Ct. 568 (2018); *Everest Stables, Inc. v. Rambicure*, 803 F. App'x 819, 823-24 (6th Cir. 2020) (affirming dismissal of transactional malpractice and breach of fiduciary duty claims when facts did not "create a dispute about whether the allegedly deficient conduct . . . caused the alleged financial losses" while allowing claims of litigation losses causally connected to the alleged malpractice to proceed).

In dismissing an attorney malpractice claim at the summary judgment stage, Judge Hood cited Kentucky case law on the issue of causation supporting a malpractice claim:

> "We may assume malpractice on the part of defendants but every malpractice action does not carry with it a right to monetary judgment. It is the law that a malpractice action against an attorney cannot be established in the absence of a showing that his wrongful conduct has deprived his client of something to which he would have otherwise been entitled." *Mitchell v. Transamerica Ins. Co.,* 551 S.W. 2d 586, 588 (Ky. App. 1977).   "In other words, a plaintiff must show that the alleged malpractice caused him to lose something to which he would have otherwise been entitled." *Kirk v. Watts,* 62 S.W.3d 37, 44 (Ky. App. 2001).

*Scott v. Koch*, No. CIV.A.5:07-373-JMH, 2008 WL 2977371, at *5-6 (E.D. Ky. Aug. 1, 2008).  In this case, Plaintiff cannot show Cozen's acts harmed HDR because there is no evidence that Cox and Mercer would have invested in HDR, even without the acts alleged of Cozen.  Moreover, as an independently sufficient grounds for dismissing Plaintiff's conflict of interest claims against Cozen, Plaintiff cannot show that a non-conflicted attorney would have done anything different than Cozen in forming XSi or in preparing XSi's subscription documents, and as an independently sufficient grounds for dismissing Plaintiff's Rule 1.13 – duty to report – claims against Cozen,

Plaintiff cannot show that reporting LauBach's complained of conduct to the HDR Board would have made any difference, as the Board was already fully apprised of and fully supported that conduct.

> **B.     There is No Evidence that Cox and Mercer Would Have Invested in HDR, Even Without the Alleged Acts of Cozen.**

> [I]n cases involving transactional legal malpractice, there must be evidence to establish that the negligence was a substantial factor in bringing about the loss of a gain or benefit from the transaction. Where ... a plaintiff alleges that he suffered a loss in a particular transaction because an attorney failed to take steps to protect his interest, the plaintiff must present evidence that, even in the absence of negligence by the attorney, the other parties to the transaction would have recognized plaintiff's interest and plaintiff would have derived a benefit from it.

*Froom v. Perel*, 872 A.2d 1067, 1077 (N.J. App. Div. 2005), *cert. denied*, 185 N.J. 267 (N.J., Sep. 29, 2005).   Kentucky follows this general rule of causation in cases of transactional legal malpractice, requiring proof that "but for" the attorney's negligence, the client "would have had a better result" in the subject transaction. See *Scattoloni v. Hallenberg*, No. 2006-CA-001893-MR, 2008 WL 2219779, at *3 (Ky. Ct. App. May 30, 2008), *rev. denied* April 15, 2009 (summary judgment on transactional malpractice claim when there was no affirmative evidence – but only speculation – that the plaintiff would have received its desired deal but for the attorney's malpractice) (citation omitted); accord *Everest Stables,* 803 F. App'x at 823 (when transactional loss would have occurred "regardless of [attorney's] advice . . . advice didn't cause [the loss], so it falls out of the damages calculation").   Plaintiff cannot present any evidence, either from their expert or from fact witnesses, that HDR would have had obtained the desired investments, but for Cozen's alleged negligence.

First, Plaintiff does not have any expert opinion testimony that Cozen's actions prevented HDR from achieving a better result.  Under Kentucky law, a plaintiff in a professional malpractice case is typically required "to put forth expert testimony to inform the jury of the applicable ...

standard of care, any breach of that standard[,] and the resulting injury." *Blankenship v. Collier*, 302 S.W.3d 665, 675 (Ky. 2010). Without such expert testimony showing causation, summary judgment is also required. See *Rogers v. Clay*, 2006 WL 3691214, *3 (Ky. App. Dec. 15, 2006) (affirming summary judgment when plaintiff failed to produce expert testimony on causation in legal malpractice claim); accord *Froom*, 872 A.2d at 1067.

For example, in *Froom*, the Court found expert testimony was required on the issue of causation in relation to a claim of malpractice in a real estate acquisition and development deal. *Id.* at 1079. Specifically, in order to prove that the attorney **caused** the harm that the client complained of, expert opinion was required to show that "sophisticated investors would be willing to invest in the acquisition and development of the property" on the plaintiff's terms. *Id.* And, even assuming the attorney was negligent in failing to protect the client's interests, without expert testimony to show the other parties would have agreed to do the deal on the client's terms, the client could not prove causation required to support its claim of transactional malpractice. *Id.* at 1080 ("there was no competent testimony from any expert that the investors in this complex real estate transaction would have acquiesced to giving [plaintiff] any percentage of the project. There was no evidence whatsoever that the parties to the transaction or other potential investors would have agreed [to the deal sought by the plaintiff]"). Plaintiff's claims against Cozen suffer from the same fatal lack of expert proof.

Plaintiffs have identified Peter Ostermiller as their expert witness. Mr. Ostermiller's disclosure indicates he will opine that Cozen had a conflict of interest in violation of Kentucky's rules of legal ethics and had a duty to report LauBach's activities to the Board. Notably absent from Mr. Ostermiller's opinions is any explanation as to **how** the alleged conflict of interest or failure to alert the Board (to matters of which it was already aware) caused damage to the HDR.

And there is no discussion, whatsoever, as to why the Court should assume that, but for the alleged ethical violations, HDR would have achieved a better result (specifically, the Cox and Mercer investments) or would have obtained the capital it needed to survive.  Without this evidence, Plaintiff cannot meet its summary judgment burden.

Setting aside the need for expert testimony, Plaintiff also does not have any lay evidence sufficient to create a genuine issue of fact as to whether HDR would have achieved a better result by obtaining the Cox/Mercer investments it needed to survive but for Cozen's alleged negligence. Specifically, there is no evidence that Cox and Mercer would have invested in HDR, even if XSi had not been formed and LauBach had not recruited investors for XSi.  In fact, all the evidence is to the contrary as Cox and Mercer have testified that they would never have invested in HDR and the financial statements of HDR (reflecting a negative net income of $1.5 million dollars in 2019; a negative net worth of $2.5 million and over $2 million dollars of prior investor notes in current or imminent default) plainly bear out that testimony.  Consider the disclosure that would have had to be made to any potential HDR Farms investor in late 2019:

> **"We have no assets; we have no customers; our prior business plan has failed; we owe $2.3 million to our prior investors who hold notes the bulk of which are already in default and immediately due and payable.  Now, would you like to invest $2.5 million?**

Courts in Kentucky and across the country have dismissed transactional malpractice claims for lack of proof of causation when there was no evidence (but only speculation and wishful thinking) that the transaction would have gone forward but for the acts alleged of attorney.  For example, in *Scattoloni*, the Kentucky Court refused to accept the client's personal opinion that, but for the attorney's negligence, the other party to the transaction would have agreed to the client's terms as sufficient to meet its summary judgment burden. 2008 WL 2219779, at *3.  And even when the other party testified that he "didn't know" if he would have agreed to the client's terms,

the Kentucky Court Appeals found the plaintiff's reliance on that testimony to be "nothing more

than speculation" and not sufficient evidence of causation to survive summary judgment. *Id.*

(Here, to the contrary, the other parties (Cox and Mercer) quite clearly testified that they ***would***

***not have invested*** and the state of HDR's financials bears out that testimony). Other courts have

similarly refused to allow transactional malpractice claims to survive summary judgment based on

mere speculation and conjecture of a ***possible*** better result for the client. *See, e.g., Lalonde v.*

*Taylor Eng. Duma, LLP*, 825 S.E.2d 237 (Ga. App. 2019) (summary judgment for defendant-

attorney; client failed to show that attorneys were the but-for cause of his damages "given that

'there is no evidence that [the other party] would have agreed to terms more favorable for [the

client.]'") (quoting *Mosera v. Davis*, 701 S.E.2d 864, 869 (2010) (upholding grant of summary

judgment to attorneys in malpractice action)); *Trust v. Durst*, No. CV 12-5255 (JBS/AMD), 2015

WL 7720481, at *10 (D.N.J. Nov. 30, 2015) (same; noting "pure conjecture" as to how the other

party would have reacted to the client's offer is not sufficient to prove causation), *aff'd sub nom.*

*Durst v. Durst*, 663 F. App'x 231 (3d Cir. 2016); *Bryant v. Bryan Cave, LLP*, 400 S.W.3d 325,

341-42 (Mo. Ct. App. 2013) (same; noting the potential of a better deal for the client cannot be

based on "pure supposition"); *Mann v. GTCR Golder Rauner, L.L.C.,* 351 B.R. 685, 706 (D. Ariz.

2006) (same; without evidence that "but for" the attorney's conflict of interest, the debtor company

would have survived, element of causation was not established), *reconsideration denied*, 2007 WL

1020341, at *5 (D. Ariz. Mar. 30, 2007) (noting "conclusory allegations are insufficient to

establish a triable issue" as to causation).

Plaintiff's aiding and abetting claim fails for this same reason, that is, for Plaintiff's

inability to show that Cox/Mercer would have invested in HDR but for the conduct by LauBach

that Cozen allegedly aided and abetted. *See Cadle v. Jefferson*, No. 307-CV-070-RGJCHL, 2021

WL 535848, at *2 (W.D. Ky. Feb. 12, 2021) (to establish aiding and abetting a breach of fiduciary

duty, a plaintiff must first show a breach that causes it damage); *see also Insight Kentucky Partners*

*II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 547–48 (Ky. Ct. App. 2016), *rev. denied*

(2017) ("[the] substantial assistance [element of an aiding and abetting claim] means something

more than merely providing routine professional services that aid the tortfeasor . . . but do not

proximately cause the plaintiffs' harm.").  Thus, apart from Plaintiff's inability to demonstrate that

Cozen actually knew of LauBach's supposed breach and that it substantially assisted in same,

Plaintiff's aiding and abetting claim against Cozen fails because it cannot show that the underlying

conduct that Cozen allegedly assisted, LauBach's solicitation of an investment into XSi, actually

caused any harm to HDR.

In sum, without evidence that Cox and Mercer would have invested in HDR Farms but for

the alleged actions of Cozen and that Cozen's actions were the reason HDR did not acquire those

investments, there can be no proof of causation and damages as are required to support any of

Plaintiff's claims against Cozen.  Here, where there is not only an absence of the necessary

evidence, but where the evidence points directly to the contrary of what Plaintiff needs to prove

for its causation element, that is, that Cox and Mercer would have invested in HDR Farms but for

the acts complained of, summary judgment must be entered in favor of Cozen.

      **C.**      **As an Alternative Grounds for Summary Judgment on Plaintiff's
Conflict of Interest Claim, Plaintiff Cannot Establish Proximate
Causation Because a Non-Conflicted Attorney Would Not Have Done
Anything Different.**

In cases, like here, where an attorney is alleged to have violated the conflict of interest rules

governing attorney conduct, the plaintiff must show, in order to establish that the conflict was the

proximate cause of the damages alleged, that he/she would have fared better had a non-conflicted

attorney handled his/her affairs. Thus, courts have repeatedly dismissed malpractice claims where

the plaintiff cannot show that a non-conflicted lawyer would have done anything different.[4] In *Johnson v. Jones,* 652 P.2d 650, 655 (Idaho 1982), for example, the Court dismissed the buyer's claim that the attorney failed to disclose his prior representation of the seller where buyer failed to offer any proof that a non-conflicted attorney would have drafted the sales contract differently. Similarly, in *New Uchtorff Companies, Inc. v. Johnson Mfg*., 683 N.W.2d 126 (Table), 2004 WL 899636 (Iowa Ct. App. 2004), the Court rejected a malpractice claim when the client failed to prove law firm's representation of both the owner of a bankrupt corporation and buyer of corporation's assets caused any injury. There, the Court also found it "significant" that the buyer had no proof of "what different result a non-conflicted attorney may have achieved." *Id.* at *4. In this case, Plaintiff not only has no evidence that Cozen's actions caused damage any to HDR, because there would have been no investment into HDR even had XSi never been formed (which by itself is a sufficient basis for dismissing this case as to Cozen), but Plaintiff also has no evidence that another attorney would have done anything different than Cozen in filing organizational documents with the Delaware Secretary of State and the Internal Revenue Service or by preparing subscription documents for Annette Cox's investment.

> **D.      As an Alternative Grounds for Summary Judgment on Plaintiff's Rule 1.13 Claim, Plaintiff Cannot Establish that Cozen's Alleged Failure to Report was the Proximate Cause of its Damage Because the HDR Board was Fully Aware of (and Supported) LauBach's Activities Relating to the Formation and Funding of XSi.**

Plaintiff contends that Cozen breached a duty created by Kentucky's legal ethics Rule 1.13 to report LauBach's activities related to XSi to HDR's Board of Directors. However, because the

---

[4] While this Motion assumes *arguendo* that Cozen violated attorney conflict rules, in fact it did no such thing. Cozen's representation of XSi lasted for approximately one month and solely involved preparing organizational documents and a subscription agreement for XSi-USA. Cozen only agreed to undertake this representation **at HDR's request**— to further the joint venture aspects of the parties' dealings. Moreover, Cozen never represented XSi-USA in any matters that were adverse to HDR—either in relation to the LOI or in any other matter that was adverse to HDR. [Exhibit 1, Bedwick Decl., ¶¶ 15-16.]

Board of Directors knew far more than Cozen about the actions by LauBach about which it now complains, that is, causing HDR Farms' entry into an LOI with XSi and his solicitation of investments into XSi, there was nothing for Cozen to report.  Plainly, Plaintiff cannot establish that Cozen's alleged violation of its reporting duties under Rule 1.13 proximately caused any harm to HDR Farms where the entire Board of Directors already knew of and approved the complained of conduct.[5]

In *Peterson v. Winston & Strawn LLP*, 729 F.3d 750 (7th Cir. 2013), *cert. denied* 571 U.S. 1237 (2014), for example, the Court held that the trustee failed to allege facts sufficient to establish proximate causation where it appeared from the pleadings that the debtor's directors would not have stopped the investment manager's improper activities, even if the attorney had reported those activities to the Board. *Id.* at 752-53 (noting the Trustee's "complaint and briefs stop with the assertion that the directors had a legal duty to ride herd on Bell and thus would have done so. That may be a correct statement of their duties, but the Trustee has not offered anything to make plausible a contention that the directors would have fulfilled them, even if the law firm had a duty to bypass Bell."). Plaintiff's claims against Cozen fail for the same reason—because there is no evidence that a report to the Board would have prevented the harm to HDR that is complained of by Plaintiff.

To the contrary, the facts make it clear that HDR's Directors were already fully aware (and approved) of the very actions Plaintiff now claims Cozen should have reported to them.  Without

---

[5] While this Motion assumes *arguendo* that Cozen violated its Rule 1.13 reporting duties, in fact it did no such thing. Plaintiff's Rule 1.13 claim amounts to the proposition that – despite never being asked to advise HDR Farms on the soundness of its business and investment plans with XSi – Cozen should have taken it upon itself to do a financial analysis of the company, assess funding sources, and then devise a business plan different from that which the Company's governing body had adopted.  This is not something that any lawyer can be expected to do, and there is no evidence that anyone at HDR Farms expected this service from Cozen. *See* Kentucky Supreme Court Rule ("SCR") 3.130(1.13), Cmt 3 ("When constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful. Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer's province.")

affirmative evidence that HDR's Directors were unaware of LauBach's activities and that the Board would have stopped those activities in response to a report from Cozen, Plaintiff cannot show Cozen's failure to make a report to the Board caused damage to HDR. See *Catler v. Arent Fox, LLP*, 71 A.3d 155, 180, 182-184 (Md. App. 2013), *cert. denied* 435 Md. 502 (2013) (summary judgment on claim that attorney should have stopped corporate president from entering into questionable loan agreements because the other officers possessed the same knowledge concerning the loans and the president's alleged cognitive decline as the lawyer); accord, *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 552 (Fla. Dist. Ct. App. 2003) (legal malpractice claim failed because there was no one within the corporation to whom lawyer could report the alleged misconduct that would have changed the result); *R.W. Holdco, Inc. v. Johnson*, 601 S.E.2d 177, 188 (Ga. App. 2004), *cert. denied* (claim against lawyer for aiding and abetting corporate officer in unauthorized sale of corporate assets failed because corporation ratified the transaction). Thus, in this case, Plaintiff not only has no evidence that Cozen's actions caused damage any to HDR, because there would have been no investment into HDR even had XSi never been formed (which by itself is a sufficient basis for dismissing this case as to Cozen), but Plaintiff also has no evidence that Cozen's failure to report Laubach's conduct to the Board of Directors made any difference because the Board of Directors already knew of and fully approved of that conduct.

## IV.    CONCLUSION

For the foregoing reasons, Cozen respectfully requests that this Court enter an order (i) granting this Motion, (ii) entering summary judgment for Cozen and dismissing all claims asserted against Cozen in the Amended Complaint with prejudice, and (iii) granting Cozen any additional relief to which it may be entitled.

## NOTICE

Notice is hereby given that the briefing and hearing schedule on this Motion is as set forth in the Court's Scheduling Orders. [Doc. #190, as modified by Doc. ##193 and 199.]

Respectfully submitted,

*/s/ Barry D. Hunter*
Barry D. Hunter
Adam R. Kegley
FROST BROWN TODD LLC
250 West Main Street, Suite 2800
Lexington, Kentucky 40507
(859) 231-0000 (tel)
(859) 231-0011 (fax)
bhunter@fbtlaw.com
akegley@fbtlaw.com
*Counsel for Defendant Cozen O'Connor*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served on June 13, 2022 on all the parties by the Court via CM/ECF noticing at the email address registered with the Court via electronic mail.

*/s/ Barry D. Hunter*
Barry D. Hunter

0149133.0751045  4863-2111-2609v3