**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | |
|---|---|
| IN RE | |
| HDR FARMS INCORPORATED | CASE NO. 20-50888 |
| DEBTOR | |
| HDR FARMS INCORPORATED LIQUIDATING TRUST | PLAINTIFF |
| V. | ADV. NO. 21-5166 |
| APPLIED BOTANICS LLC f/k/a XSI USA, LLC, et al. | DEFENDANT |

**MEMORANDUM OPINION GRANTING**
**MOTIONS FOR SUMMARY JUDGMENT**
**(Cox & Mercer)**

The Plaintiff seeks actual and punitive damages from the Defendants Kawel Laubach, Cozen O'Connor, Annette Cox, and Todd Mercer based on allegations of breach of fiduciary duty, fraud, usurpation of corporate opportunity, aiding and abetting breach of fiduciary duty, and legal malpractice. The Plaintiff is the liquidating trust created by the confirmed bankruptcy plan of Debtor HDR Farms Incorporated ("HDR Farms"). Laubach was an officer and director of HDR Farms until he resigned to take a position with a start-up entity, XSi USA Inc. ("XSi USA").

The Plaintiff alleges Laubach breached his fiduciary duty and committed fraud by creating XSi USA and diverting investments made by, or involving, Cox and Mercer. Cox invested $2,500,000.00 in XSi USA. The Amended Complaint alleged Mercer invested $100,000.00 in XSi USA but the record does not show any investment by Mercer.

1

The Plaintiff claims Cox and Mercer facilitated Laubach's breach of fiduciary duty through the investments in XSi USA. The Plaintiff further claims HDR Farms' legal counsel, Cozen O'Connor, aided and abetted the breach of fiduciary duty and committed legal malpractice.

Discovery closed and the Defendants moved for summary judgment based on the Plaintiff's failure to offer proof that Cox or Mercer ever intended to invest in HDR Farms. [ECF Nos. 200, 203, 204, 209.] The Defendants contend the investments in XSi USA did not cause HDR Farms harm if Cox and Mercer never intended to invest, so they are entitled to judgment as a matter of law. [ECF Nos. 212-215.] A hearing was held on July 21, 2022, and the matters were submitted for a decision. [ECF No. 216.]

The parties were told at the July 21 hearing that the record supported granting summary judgment to Cox and Mercer. [*Id*.] There is no evidence they aided and abetted any breach of fiduciary duty by Laubach through diversion of the investments from HDR Farms to XSi USA. A preliminary order granting their motions was entered "so the parties are not required to expend time and legal fees to prosecute or defend Counts 6 and 7." [ECF No. 222.] This memorandum opinion supplements the preliminary order and explains the basis for summary judgment.

## I. Facts.

The following is a discussion of the undisputed facts relevant to the issues raised in Cox and Mercer's summary judgment motions. The factual recitation is not intended to address all evidence relevant to causes of action not yet resolved.

**A. Debtor HDR Farms Incorporated.**

HDR Farms was a cannabis agricultural, processing, and cloning operation. It produced refined cannabinoids ("CBD(s)") and CBD isolate that was marketed wholesale to formulators of retail CBD products. [Case No. 20-50888, ECF No. 76 at § 3.]

Danny Plyler, Steve Bragg, and Laubach formed HDR Farms in 2018. [*Id.*] They funded the company through cash contributions from investors in exchange for non-voting shares and a convertible promissory note equal to the face amount of the cash investment. [*Id.*] Plyler, Bragg, and Laubach were also HDR Farms' original directors. [*See* Laubach Depo., ECF No. 211-1, at pp. 39-42.]

HDR Farms performed poorly through 2019. It earned only nominal profits from selling clones to farmers. [*Id.* at pp. 56-57.] The shareholder notes matured, but HDR Farms could not pay the approximately $2.1 million owed. [*Id.* at pp. 9-10.] HDR Farms also lost $1.5 million during 2019 and had a negative net worth of over $2 million. [*Id.*]

The financial problems were blamed, in part, on poor management attributed to Bragg and Plyler. [*Id.* at pp. 41-43, 59, 75, 103; Bragg Depo., ECF No. 200-3, at pp. 277-281.] HDR Farms hired Cozen in the fall of 2019 for "general corporate, business and litigation matters," including a possible buy-out of Plyler's shares. [ECF No. 211-46; *see also* Laubach Depo. at pp. 122-123, 127-130; Bedwick Depo., ECF No. 211-4, at pp. 10-11.] The effort to break with Plyler was not successful. [Laubach Depo. at p. 165.]

HDR Farms filed a chapter 11 bankruptcy petition on June 9, 2020, and confirmed its plan on December 28, 2020. [Case No. 20-50888, ECF Nos. 1, 76, 87.] The plan created the Plaintiff to pursue any assets still held by HDR Farms. [*Id.*, ECF No. 85.] Damon "Dak" Davis

and Stewart Wakeley are co-trustees of the liquidating trust. [*Id.*] The Plaintiff filed this adversary proceeding on October 15, 2021. [ECF No. 1.]

B. **Letters of Intent.**

Laubach assumed the role of CEO from Plyler in June 2019. [Laubach Depo. at pp. 57-59.] Plyler resigned as a director and officer in September 2019, but he remained the majority shareholder. [*Id.* at pp. 82-83.]

HDR Farms started looking for ways to service its debt or restructure in the summer of 2019. [*Id.* at pp. 16-17, 65-68, 72-78, 89-90.] HDR Farms investigated opportunities to partner with other hemp companies to move into the retail market. [*Id.*] Most of these attempts were not successful for a variety of reasons. [*Id.*]

HDR Farms also considered issuing new shares. [*Id.* at pp. 83-84, 244-245.] But HDR Farms had no unauthorized shares and could not issue new shares without cooperation from Plyler. [*Id.* at pp. 244-245; *see also* Bragg Depo. at pp. 210, 277-280.]

In the fall of 2019, Laubach began negotiations with XSi Canada. XSi Canada wanted to gain a footprint in the United States CBD market. [Laubach Depo. at pp. 92-94.] Laubach believed the partnership was an opportunity to restructure HDR Farms' operations and pay down the shareholder debt. [*Id.* at p. 107.]

The negotiations resulted in a non-binding letter of intent executed on November 22, 2019 ("XSi USA Letter of Intent"). [ECF No. 200-6.] The XSi USA Letter of Intent provided that XSi USA intended "to take-over the assets of HDR and … purchase the outstanding shares of HDR." [*Id.*] The XSi USA Letter of Intent also included a section labeled "**Non-Binding Commitment**" that described the document as a "non-binding indication of interest" that was "not intended, and shall not be deemed to create any binding obligation on the part of XSi

4

[USA], or any of its affiliates, to engage in any transaction with the VIT[1] or to continue its consideration of any such transaction." [*Id.* (emphasis in the original).]

The XSi USA Letter of Intent was part of larger transaction to create a partnership between XSi USA and another hemp company, Terpene Bio Tech, Inc. a/k/a Vitality Health ("Terpene/Vitality"). [Laubach Depo. at pp. 95-96.] On November 25, 2019, XSi USA and Terpene/Vitality executed a separate letter of intent that contemplated creation of a new entity owned equally by the companies that would operate a seed-to-sale hemp/CBD business with assets and expertise contributed by the respective parties ("Terpene/Vitality Letter of Intent"). [ECF No. 200-8.] The Terpene/Vitality Letter of Intent was also a non-binding agreement and subject to negotiation of a definitive agreement. [*Id.*]

C. **Investments.**

Mercer was a financial advisor at Merrill Lynch and Laubach's college friend. [Mercer Depo., ECF No. 200-10, at p. 7-8.] Mercer did not regularly communicate with Laubach after school, but re-established contact in 2019 when he discovered through social media that HDR Farms had greenhouse space that might interest one of his clients, Tony Mouser. [*Id.* at pp. 9-11.]

Mercer introduced Laubach to Mouser in October 2019. [*Id.*; ECF No. 211-5.] Laubach attempted to provide Mouser with information presumably about HDR Farms or XSi USA, but Mouser refused to review it. [Mouser Affidavit, ECF No. 203-10, at ¶ 2.] Mercer did not solicit an investment from Mouser or recommend that Mouser invest in HDR Farms or XSi USA. [*Id.* at ¶ 3.]

---

[1] This term is not defined in the XSi USA Letter of Intent but may refer to Vitality described *infra*.

5

Mercer knew Laubach was looking for investors in a CBD company in October 2019. [Mercer Depo. at pp. 23-26.] He believed any investment was for a company other than HDR Farms. [*Id*.]

Cox was one of his clients. [*Id.* at p. 68; Cox Depo., ECF No. 200-9, at pp. 5, 18-19.] Cox expressed an interest in the CBD industry, so Mercer introduced her to Laubach for a general overview of the CBD market. [Cox Depo. at pp. 18-19.]

Laubach met with Cox and Mercer on November 19, 2019. [Cox Depo. at pp. 22-26; Mercer Depo. at p. 23.] Laubach generally explained the CBD industry and HDR Farms' facility and operations. [Cox Depo. at pp. 22-26.] He also invited Cox and Mercer to visit the facility. [*Id.*]

Cox and Mercer accepted the offer and toured the facility with Laubach and Bragg in early December 2019. [Mercer Depo. at p. 25; Cox Depo. at pp. 27-30.] Johnson and Steve Olasz from XSi Canada were also present. [Cox Depo. at pp. 28-29.]

During the tour, Cox and Mercer were given a document titled "Proposed Corporate Structure." [Cox Depo. at pp. 35-36; Mercer Depo. at p. 64; ECF No. 211-11.] The document described the creation of a new company owned by XSi USA and Vitality. [ECF No. 211-11.] The ownership interests of XSi USA are described as 49% allocated to several parties that included Laubach and Bragg, an investor consortium, and an undefined "Legal Counsel." [*Id.*]

The Proposed Corporate Structure breaks down the business operations between XSi USA and Vitality. [*Id.*] The description references XSi USA's agreement to buy out HDR Farms within a 2-year period and consolidate HDR Farms' assets under its company name. [*Id.*] Laubach and Bragg explained during the tour that this was necessary because "they needed to

6

clean their mess up and they needed more investment dollars, and this is why that they're doing what they're doing…" [Mercer Depo. at pp. 30-31.]

Following the tour, Laubach sent Mercer an email with a breakdown of HDR Farms' current isolate production in a document titled "XSi Revenue Year 1, 2, &3.xlsx" and a correlating "ROI for Annette". [ECF No. 211-26.] Mercer did not open the document and never reviewed the projections. [Mercer Depo. at pp. 79-80.] Cox does not recall reviewing them either. [Cox Depo. at pp. 57-58.]

Cox relied on Mercer for investment advice, and Mercer was involved in her discussions with Laubach. [Cox Depo. at p. 5.] But Mercer testified he only gave Cox general financial advice about the risks of investing in a start-up CBD company. [Mercer Depo. at pp. 68-70.] He did not recommend that Cox invest in XSi USA or provide her with any financial information about XSi USA. [*Id*. at pp. 69-70, 89-90.] Cox ultimately decided to invest in the new company. [Cox Depo. at pp. 38-39.]

There is significant evidence showing neither Cox nor Mercer ever considered a direct investment in HDR Farms. Cox testified that she only considered investing in the new company described at the December tour. [*Id*.; *see also* Laubach Depo. at pp. 133-34.] Mercer adamantly denied giving any advice about investing in HDR Farms and the testimony from Cox supports this claim. [Mercer Depo. at pp. 11-17; Cox Depo. at pp. 11-12.] Although the Amended Complaint specifically avers that "Cox communicated to HDR Farms' Chief Operations Officer, Steve Bragg … that she was interested in investing funds in HDR Farms," Bragg admitted under oath that Cox never told him that she was interested in investing in HDR Farms. [ECF No. 17 at ¶ 54; *see* Bragg Depo. at pp. 109-110.]

7

Cox and Mercer also testified they did not ask for or receive any financial information about HDR Farms. [Cox Depo. at pp. 11-12; Mercer Depo. at pp. 11-12, 16-19, 90-91; *see also* Laubach Depo. at p. 246.] If they had received financial statements, the statements would have reflected HDR Farms' $1.5 million loss and its $2.1 million debt on the shareholder notes. [Laubach Depo. at pp. 9-10.] Cox and Mercer confirmed they would not have considered, or recommended, investing in HDR Farms if they had known its financial condition. [Cox Depo. at p. 12; Mercer Depo. at pp. 33-34.]

Laubach did not ask Cox or Mercer to invest in HDR Farms. [*See* Cox Depo. at pp. 11-12; Mercer Depo. at pp. 11-12; Laubach Depo. at pp. 246-249.] Bragg did not solicit an investment in HDR Farms from Cox or Mercer. [Bragg Depo. at pp. 110-111.] Wakeley did not have any discussions with Cox or Mercer at all. [Wakeley Depo., ECF No. 200-7, at pp. 183-184.]

The HDR Farms Board knew Cox planned to invest in XSi USA. [Bragg Depo. at pp. 155-158; Wakeley Depo., at pp. 69, 88.] Laubach, Bragg, and Wakeley supported her investment and believed an investment in XSi USA would ultimately benefit HDR Farms. [Bragg Depo. at pp. 109, 155-156; Wakeley Depo. at pp. 70-72.]

**D. XSi USA, Inc.**

Laubach asked Cozen to prepare the necessary documents to incorporate XSi USA after Cox expressed interest in investing. [Bedwick Depo. at p. 26; Laubach Depo. at pp. 133-134.] Cozen prepared the documents and XSi USA was incorporated on December 12, 2019. [ECF No. 211-25.] XSi USA did not yet have assets or operations and would not retain Cozen as legal counsel until early January 2020. [Laubach Depo. at pp. 187-188; Bedwick Depo. at pp. 78-79.]

Cozen also prepared the operating and subscription agreements required for Cox's investment in XSi USA in January 2020. [Bedwick Depo. at pp. 83-87.]

On January 2, 2020, Laubach shared a proposed press release with Cox that described a partnership between HDR Farms, XSi USA, and Terpene/Vitality to create a new company called CBD Kentucky. [ECF No. 211-32; ECF No. 213-1.] Laubach also emailed Cozen that same day confirming funding for XSi USA contingent upon the "exit of Danny." [ECF No. 211-31.] Cox did not want to invest if Plyler was involved in the company. [Laubach Depo. at pp. 186-187; Cox Depo. at p. 40.]

On January 6, 2020, Laubach signed a letter on HDR Farms' behalf that waived any conflict of interest with Cozen's representation of XSi USA, Inc., in the possible acquisition of, and transactions with, HDR Farms. [ECF No. 211-33.]

On January 9, 2020, Laubach sent an email to Cozen about his intent to resign as CEO of HDR Farms and rescind his ownership interests "to avoid fiduciary conflicts" and pave the way for Cox's investment. [ECF No. 211-34.] Cozen advised Laubach that he should not resign or forfeit his ownership yet and should consider describing the new deal to the shareholders for their approval. [*Id.*]

On January 15, 2020, Laubach emailed Mercer and Cox to further explain "HDR's splintered partnership" and his intent to resign as CEO for "the main purpose of insulating and protecting [XSi USA] along with your investment" from the "challenges facing HDR." [ECF No. 211-38.] Laubach explained that his resignation should eliminate any concerns with Plyler, who had refused an offer from HDR Farms to purchase his shares in the company. [*Id.*] Laubach's email also claims his resignation will provide XSi USA the opportunity to use HDR

Farms as a vendor with no legal responsibility and "[a]ll previously conveyed information in relation to full 'Soil to Sale' operations remain intact and unchanged." [*Id*.]

Laubach officially resigned from HDR Farms on January 17, 2020. [ECF No. 211-39.] Following the resignation, Cox invested $2,500,000.00 in XSi USA. [ECF No. 211-41; Cox Depo. at p. 5.] Mercer did not make an investment in either company. [Mercer Depo. at pp. 86-90.] GEC Realty, LLC made a $100,000.00 investment in XSi USA around the same time that Cox invested. [*Id*.] The Plaintiff has never explained why the Amended Complaint claims Mercer invested funds in XSi USA.

XSi USA used the money to advance $22,000.00 toward the purchase of isolate to keep HDR Farms operational. [Laubach Depo. at pp. 22-23; Bragg Depo. at pp. 142-143.] A $35,000.00 deposit was made in advance of the purchase of a farm owned by HDR Farms. [Laubach Depo. at p. 23.] XSi USA also helped set up a bank account so HDR Farms could access funds to pay its operating expenses. [Bragg Depo. at p. 157.]

XSi USA eventually purchased the farm for $675,000.00. [Laubach Depo. at pp. 22-23; Bragg Depo. at pp. 142-143.] It did not purchase any more isolate from HDR Farms after its opportunity to partner with Terpene/Vitality dissolved in March 2020. [Laubach Depo. at pp. 22-26.]

XSi USA offered to purchase HDR Farms' remaining assets in April 2020, but HDR Farms did not accept the offer and it expired. [Bragg Depo. at pp. 215-221; Wakely Depo. at pp. 116-121.] HDR Farms and XSi USA never negotiated a binding contract. [Laubach Depo. at p. 27.] HDR Farms filed for bankruptcy relief soon thereafter.

## II. Summary Judgment.

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and the movants are "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (incorporated by FED. R. BANKR. P. 7056). The movants have the burden to show that there are no material facts in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). All facts, including inferences, are viewed in the light most favorable to the nonmoving party. *Id.*

The Defendants can satisfy their burden by exposing the lack of evidence on an issue that the Plaintiff must prove at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). The Plaintiff has the burden to show there is evidence to support all elements of the causes of actions alleged against the Defendants, including the elements of causation and injury. *See Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2014) (breach of fiduciary duty); *House v. Bristol-Myers Squibb Co.*, No. 3:15-CV-00894-JHM, 2017 WL 55876, at *8 (W.D. Ky. Jan. 4, 2017) (citing *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011)) (fraud); *Patmon v. Hobbs*, 280 S.W.3d 589, 598 (Ky. Ct. App. 2009) (usurpation of corporate opportunity); *Insight Kentucky Partners II, LP v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 546 (Ky. Ct. App. 2016) (aiding and abetting a breach of fiduciary duty); *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003) (legal malpractice).

The Plaintiff argues it only needs to show Laubach owes a fiduciary duty that was breached. Once proven, the burden would shift to the Defendants to show the actions did not

cause HDR Farms injury. *See Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 363 (4th Cir. 2014).

The *Tatum* case is not persuasive. *Tatum* is based on a federal statute not at issue here. Further, the Sixth Circuit has rejected such burden shifting. *Gold v. Coenen* (*In re Trans-Indus., Inc.*), 609 B.R. 608, 646-47 (Bankr. E.D. Mich. 2019) (plaintiff bears the burden of proof on each element of a breach of fiduciary duty claim). The Plaintiff has the burden to prove all elements of the claim.

The Plaintiff's primary theory is that the Defendants diverted investments by or involving Cox and Mercer from HDR Farms to XSi USA. [ECF No. 17 at 2-3 (Preliminary Statement); ECF No. 211 at 23-24.] The Defendants' proof shows HDR Farms did not lose any investment because neither Cox nor Mercer intended to invest in HDR Farms. Cox and Mercer have made a prima facie case that they did not aid and abet any breach of fiduciary duty by Laubach, regardless of their intentions.

The Plaintiff now has the burden to present "affirmative evidence" to demonstrate genuine issues of material fact to defeat the motions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The Plaintiff must present more than a mere scintilla of evidence. *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 628-29 (6th Cir. 2008). The Plaintiff's evidence must be enough that a reasonable fact finder could find in its favor. *Id.* Speculation cannot defeat a properly supported motion for summary judgment. *Jennings v. County of Monroe*, 630 Fed. Appx. 547, 555 (6th Cir. 2015) (a party cannot defeat summary judgment with conclusory allegations, speculation, and unsubstantiated assertions).

### III. The Plaintiff Has Not Shown that Mercer or Cox Aided and Abetted Laubach's Breach of Fiduciary Duty.

The Amended Complaint claims Mercer and Cox colluded with Laubach and Johnson to deprive HDR Farms of their investments. [ECF No. 17 at ¶¶ 137-148.] Mercer never invested in XSi USA, and Cox, Mercer, and Laubach testified there was never a request or intent to invest in HDR Farms. The evidence shows that Cox and Mercer did not aid and abet any breach of Laubach's fiduciary duty.

#### A. Aiding and Abetting Requires Proof of Substantial Assistance with Actual Knowledge.

Aiding and abetting a breach of a fiduciary duty is not a free-standing claim. *Dickson v. Shook*, No. 2017-CA-000023-MR and No. 2017-CA-001115-MR, 2019 WL 1412497, at *18 (Ky. Ct. App. Mar. 29, 2019). It is a theory under which the Plaintiff may recover from multiple defendants for an underlying breach of fiduciary duty. *Id.*

The Plaintiff must first show a party has a fiduciary duty and the duty was breached. *See Insight Kentucky Partners II, LP*, 514 S.W.3d at 546. There is no dispute that Laubach owed a fiduciary duty to HDR Farms, but there are genuine issues of fact regarding any breach.

Cox and Mercer are still entitled to summary judgment because the Plaintiff cannot prove the other necessary elements to prevail on the aiding and abetting claim. The Plaintiff must prove: (i) Cox or Mercer gave "substantial assistance or encouragement" to perpetuate Laubach's breach and (ii) they knew Laubach's conduct breached his fiduciary duty. *See id.* at 546.

"Substantial assistance" means that a defendant's conduct was a substantial factor in causing the tort. *Id.* at 547-49 (citing *Aetna Cas. & Surety Co. v. Leahey Const. Co.*, 219 F.3d 519, 537 (6th Cir. 2000)). Substantial assistance also requires actual knowledge of the existence of the fiduciary duty and that the conduct is wrong. *Id; see also Miles Farm Supply, LLC v.*

*Helena Chemical* Co., 595 F.3d 663, 666 (6th Cir. 2010). Constructive knowledge of the fiduciary duty or the breach is not sufficient. *Id*.

### B. There Is No Evidence that Cox or Mercer Understood Laubach's Fiduciary Obligations.

The Plaintiff offered no proof showing Cox or Mercer knew or understood the duty Laubach owed to HDR Farms as its CEO and Director. In fact, the evidence is to the contrary. [*See* Cox Depo. at p. 44 (testifying Laubach's "duties" were not discussed).]

The Plaintiff suggests this knowledge is obvious or inferable because Cox was a sophisticated businesswoman and Mercer worked for a large investment firm. It is possible to believe these parties have more than a passing knowledge of an officer's or director's fiduciary obligations, but the Plaintiff did not present enough evidence to justify the requested inference. It is not possible to conclude Cox or Mercer had actual knowledge of Laubach's fiduciary obligations. *See Miles Farm Supply, LLC*, 595 F.3d at 666.

### C. The Plaintiff Has Not Shown that Cox and Mercer Substantially Assisted the Assumed Breach of Fiduciary Duty.

The Plaintiff's claim of substantial assistance centers around its theory that Cox and Mercer worked with Laubach to steer $2.6 million in investments from, or involving, Cox and Mercer away from HDR Farms and to XSi USA. The evidence does not show assistance, and particularly does not support a finding of substantial assistance.

Cox, Mercer, and Laubach confirmed there was never a request or intent to invest in HDR Farms. Cox invested in XSi USA, but Mercer did not invest in HDR Farms or XSi USA. Further, even if there was an initial intent to invest in HDR Farms, the evidence does not suggest either conspired with Laubach to divert any investment from HDR Farms to XSi USA.

The Plaintiff's inference of assistance through diversion of investments fails.

### 1. There Is No Proof that Mercer Invested in XSi USA.

The Amended Complaint alleges Mercer invested $100,000.00 in XSi USA. [ECF No. 17 at ¶ 145 ("By negotiating … Mercer's $100,000.00 [] investment in HDR Farms …"); *see also id.* at ¶¶ 50, 115 (alleging Mercer intended to invest).] It was clear by the close of discovery that Mercer did not invest in HDR Farms or XSi USA. Despite this, the Plaintiff continued to claim Mercer made the investment in its Response to the summary judgment motions. [*See, e.g.,* ECF No. 211 at 15 ("The funding source was Cox and Mercer."), 24 ("But the undisputed fact is that Cox and Mercer promptly invested in XSi.").]

Discovery revealed a $100,000.00 investment in XSi USA by GEC Realty, LLC, at the same time as the Cox investment. GEC Realty is owned by Mercer's wife. The Plaintiff has not, however, provided any proof that Mercer advised GEC Realty or his wife regarding the investment. *See* Part III.C.3 *infra*. The marital relationship alone is not enough to support a connection.

### 2. The Plaintiff's Evidence Does Not Show that Cox or Mercer Intended to Invest in HDR Farms.

There is not enough evidence for a reasonable factfinder to conclude Cox or Mercer ever intended to invest in HDR Farms. The Plaintiff wants to infer intention from a list of facts in the Response to summary judgment motions. [ECF No. 211 at 20-23.] The list focuses on (i) Laubach's identification of Cox as a potential investor that could save the company and (ii) oral and written information provided when Cox and Mercer toured the farm in early December. The evidence does not support the Plaintiff's desired inference.

#### i. Cox Was Identified as a Potential Investor in XSi USA, Not HDR Farms.

Laubach intended to target Cox as an investor that might help HDR Farms out of its financial mess. [*See* ECF No. 211-10.] He told Cozen in an October 28, 2019, email that "we

15

have found a majority investor to assist with cost of expansion and establishment of a new LLC."
[*Id.*] Laubach confirmed the majority investor was Cox, and her investment was for XSi USA, not HDR Farms. [Laubach Depo. at p. 98.] Cox gave similar testimony regarding her intention to invest in XSi USA. [Cox Depo. at pp. 38-39.]

The testimony is supported by the email. The text refers to an investor that would assist with a new entity. Actual knowledge and assistance are required, and this information does not support either.

### ii. The Discussions Related to an Investment in XSi USA, Not HDR Farms.

The parties agree there were discussions involving HDR Farms before the tour and when Cox and Mercer visited the facility in early December. The discussions also concerned the expected relationship with XSi USA and Terpene/Vitality and the creation of a new partnership that would include XSi USA owning all HDR Farms' assets.

Mercer's description of Laubach's and Bragg's comments about the problems facing HDR Farms was not information that would induce an investment. Raising these issues explains why XSi USA planned to buy out HDR Farms' assets and operate as a new, separate company. The comments do not support an inference that Cox or Mercer intended to invest in HDR Farms or assist any malfeasance by Laubach.

### iii. The Documents Referred to an Investment in XSi USA, Not HDR Farms.

Cox and Mercer received the Proposed Corporate Structure during their tour of the farm. The Proposed Corporate Structure described the XSi USA and Terpene/Vitality relationship and indicated XSi USA would purchase HDR Farms' assets and operate as a separate entity. [ECF No. 211-11.] It is hard to infer Cox or Mercer would have determined Laubach was breaching any duty to HDR Farms from the information in this document or suggest assistance if there was a breach.

Further, the HDR Farms' isolate projections that Laubach shared with Mercer are based on XSi USA's acquisition of HDR Farms' assets. Regardless, Mercer did not open the attachment and Cox does not recall reviewing them.

The Plaintiff also alleges collusion and knowledge through a press release drafted by Laubach and reviewed by Cox. [ECF No. 213-1.] The Plaintiff initially points to a statement in the first paragraph that indicates HDR Farms worked to find able partners. The Plaintiff argues this implies Cox was interested in HDR Farms but then abruptly shifted her investment to XSi USA.

The Plaintiff's suggestion ignores the placement of the statement. The first and second paragraphs of the press release refer to the "merger" and "partnership" involving HDR Farms, XSi USA, and Terpene/Vitality. [*See id.*] The reference to partner does not appear to refer to Cox, and regardless does not prove Cox intended to only partner with HDR Farms.

Cox is not mentioned until the third paragraph, which indicates she will join the board of directors. [*Id.*] The statement does not clearly indicate which company's board she will join. It is hard to see how her involvement on any board facilitates a claim that she knew she was assisting Laubach with a breach of his fiduciary duty.

The Plaintiff also suggests that her advance review of the press release somehow shows collusion with Laubach. The press release describes the developing partnership among HDR Farms, XSi USA, and Terpene/Vitality. This information reinforces Cox's testimony that she intended to invest in XSi USA; it does not suggest she intended to invest in HDR Farms or infer collusion with Laubach.

The absence of proof from available information draws attention to the Plaintiff's failure to address the information Cox and Mercer did not have but should have reviewed if there was

17

an intent to invest. They never asked for or received financial information essential to a decision to invest in HDR Farms. It is not reasonable to believe a financial advisor and a sophisticated businessperson would invest in any entity without financial statements and other pertinent financial information.

The information provided to Cox and Mercer does not suggest they intended to invest in HDR Farms or provided substantial assistance to Laubach if he breached any fiduciary duty.

### 3. The Plaintiff Has Not Shown that Mercer Recommended Any Investment in HDR Farms or XSi USA.

Mercer denies he solicited or recommended Cox invest in XSi USA. Mercer acknowledges that he gave general information to clients about investments, and he spoke to Cox about investing in a start-up company. [Mercer Depo. at pp. 67-72.] This ambiguous and routine financial advice is not enough to show substantial assistance aiding and abetting Laubach's alleged effort to push Cox to XSi USA. *See Insight Kentucky Partners II, LP*, 514 S.W.3d at 547 (routine professional services do not rise to the level of substantial assistance in an aiding and abetting claim). If it has relevance, the information supports that Cox intended to invest in XSi USA because it was the only start-up company considered.

There is also no proof Mercer was involved in GEC Realty's decision to invest in XSi USA. The Plaintiff's reliance on the marital relationship alone to infer Mercer advised the company or his wife without more is not reasonable. Further, the Plaintiff needs to prove Mercer substantially assisted Laubach by pushing GEC Realty to invest in XSi USA rather than HDR Farms. There is no evidence GEC Realty or Mercer's wife ever intended to invest in HDR Farms.

**D. The Plaintiff Has Not Shown that Cox or Mercer Colluded with Laubach to Breach His Fiduciary Duty.**

The Plaintiff's evidence does not show that a decision to invest in XSi USA instead of HDR Farms was nefarious even if there was an original intent to invest in HDR Farms. The evidence overwhelmingly leads to a conclusion that Cox believed she was investing in the partnership between XSi USA and Terpene/Vitality. Mercer's understanding was the same.

**IV. Conclusion.**

The Plaintiff has not presented evidence that would allow a reasonable fact finder to conclude that Cox or Mercer provided substantial assistance to Laubach or knew he had a fiduciary duty and was breaching that duty. It is therefore ORDERED:

(1)   Cox and Mercer's Motions for Summary Judgment [ECF Nos. 203, 204] are GRANTED.

(2)   Counts 6 and 7 of the Amended Complaint [ECF No. 17] are DISMISSED WITH PREJUDICE.

(3)   A separate judgment shall issue.

19

_____
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Tuesday, August 30, 2022**
(grs)