**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

*Electronically Filed*

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| HDR FARMS INCORPORATED, | ) | |
| | ) | |
| Debtor | ) | Chapter 11 |
| | ) | |
| | ) | CASE NO. 20-50888-GRS |
| HDR FARMS INCORPORATED | ) | |
| LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | AP CASE NO. 21-05166-GRS |
| | ) | |
| APPLIED BOTANICS, LLC f/k/a | ) | |
| XSI USA, LLC, *et. al.* | ) | |
| | ) | |
| Defendants | ) | |

** ** ** ** ** **

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS, CHARLES THOMAS (TODD)
MERCER, JR. AND ANNETTE COX'S MOTION FOR DISMISSAL AND
SANCTIONS UNDER FED. RULE CIV. PROC. 11 AND 28 U.S.C. 1927**</u>

Comes the Defendant, Charles Thomas (Todd) Mercer, Jr. ("Mercer") and Annette

Cox ("Cox"), by counsel, and submit this Memorandum in Support of their Motion for

Dismissal and Sanctions pursuant to Fed. Rule Civ. Proc. 11 and 28 U.S.C. 1927.

<u>**INTRODUCTION**</u>

The documents produced by the Plaintiff, HDR Farms Incorporated Liquidating

Trust (the "Trust") and the depositions of its trustees, Dak Davis and Stewart Wakely and

HDR Farms' former CEO and board member Steve Bragg have revealed that counsel for

the Trust did not have a reasonable or good faith basis formed after a reasonable inquiry for signing the First Amended Complaint asserting that Mercer and Cox aided and abetted Defendant, Kawel LauBach ("LauBach"), in breaching a fiduciary duty to HDR Farms ("HDR").

The bases for the allegations against Mercer and Cox are that they intended to invest in HDR but then aided and abetted LauBach in breaching a fiduciary duty to HDR by investing in a "competing" business, XSI USA LLC ("XSI").  The Trust had access to the emails on the HDR server prior to filing the First Amended Complaint which clearly show that Mercer and Cox never had any intention of investing in HDR; were never asked to invest in HDR;  there was to be a new company formed to engage in a partnership with and eventually purchase HDR  and would be owned in part by two of the HDR board members; and all board members of HDR were aware of and approved of this plan and knew that Cox's investment would be in the new company[1].  The emails further show that this plan was evidenced by a Letter of Intent ("LOI") executed by LauBach on behalf of HDR which was approved by the HDR Board and its shareholders.  As will be shown below, numerous allegations in the First Amended Complaint prepared and filed by HDR's counsel are false and counsel had documents in its possession showing that the allegations were false.

Further, counsel for the Trust had possession of LauBach emails obtained by the Trustees from an email account used by LauBach after he left HDR.  These emails were

---

[1] The new company was subsequently set up as XSI USA, LLC ("XSI USA") and did business as CBD Kentucky and subsequently Applied Botanics.  Todd Mercer never invested in XSI USA.

from a CBDKY account and HDR, at the direction of Trustee Dak Davis ("Davis"), paid to renew the subscription to this account in January 2021 so that they could obtain "evidence" to be used in a potential adversary proceeding. Davis printed the emails and unilaterally redacted information that he deemed "irrelevant". These emails were provided to counsel for the Trust and were used and cited in the First Amended Complaint. The CBDKY emails were not produced by counsel for the Trust in response to discovery requests submitted in December 2021 and, in fact, **were not produced until after the depositions of Trustees Davis and Wakely.** The CBDKY tainted/redacted emails relied on by the Trust to file its First Amended Complaint were not produced until June 2022 after two motions to compel had been filed by LauBach's counsel. None of the parties can access the CBDKY email account now or obtain unredacted copies of the emails because HDR did not pay to renew the subscription to that account. These actions placed Mercer and Cox in the untenable position of having to defend a complaint that was based upon tainted evidence without any possibility of access to the original, unredacted emails.

There is and was no evidence at the time the Complaint and Amended Complaint were filed to support the Trust's claims against Mercer and Cox for aiding and abetting a breach of fiduciary duty. Although the Trust alleged that Mercer intended to invest in HDR and then aided and abetted in diverting the investment to XSI, there is no evidence in the thousands of pages of documents produced by the Trust that Mercer ever intended to invest in HDR and no evidence that Mercer ever invested in XSI. Neither Mercer nor Cox ever signed a subscription agreement or letter of intent to invest in HDR

and made no verbal statements of intent to invest in that company nor did they ever see any financial or other information about HDR.  Neither Mercer nor Cox had any involvement in setting up XSI.

This Court has found in its Memorandum Opinion Granting Motions for Summary Judgment that there is no evidence that [Mercer and Cox] aided and abetted any breach of fiduciary duty by LauBach (DN 261, p. 2].  This Court further found that "there is significant evidence showing neither Cox nor Mercer ever considered a direct investment in HDR Farms" [DN 261, p. 7].  The HDR Board never even solicited an investment from Cox or Mercer.  Neither the HDR Trustees nor the HDR emails, which Plaintiff's counsel had access to prior to filing the Complaint, show that there was ever any intent by Cox or Mercer to invest in HDR Farms.  This Court found that "Cox and Mercer made a *prima facie* case that they did not aid and abet any breach of fiduciary duty by LauBach, regardless of their intentions" [DN 261, p. 12].

Mercer and Cox were perceived as potential defendants with deep pockets, and it is apparent that this is the only reason they were targeted in this action.  The filing of this lawsuit by counsel for the Trust violates both Bankruptcy Rule 9011 and 28 U.S.C. 1927.

This lawsuit has resulted in Mercer and Cox incurring significant legal fees and damage to their professional reputations and has caused millions of dollars in damages to Mercer, as well as Financial Industry Regulatory Authority issues which have caused Mercer to expend hundreds of hours of time and significant legal fees to address.  Mercer was required to leave his position at Merrill Lynch and start a new business in a very short time frame. Mercer's counsel advised HDR's counsel of these issues on numerous

occasions and requested that counsel consider and reconsider withdrawing its specious claims, to no avail.

Counsel for the Trust named and served the "wrong" Todd Mercer initially[2] as a Defendant in this case and refused to voluntarily dismiss him from the case despite repeated requests by Mercer's counsel to do so.   Mercer incurred expenses in obtaining a lawyer to file a motion to dismiss his cousin from this proceeding and HDR's counsel refused to reimburse Mercer for those legal expenses.

Even after counsel for the Trust knew that Mercer had never invested any funds in XSI, they continued to claim that Mercer was an investor in XSI.  During the hearing on Mercer and Cox's Motion for Summary Judgment, counsel claimed on the one hand that Cox and Mercer blindly followed everything LauBach told them to do and on the other hand claimed that Cox was a sophisticated businesswoman who would know exactly what a "breach of fiduciary duty" meant legally and that Laubach had breached that duty. Counsel for the Trust's actions in bringing this claim against Mercer and Cox were malicious and brought for the purpose of obtaining a settlement and payment of all or a portion of the fees incurred in bringing the frivolous claims against Mercer and Cox.

Counsel for HDR Trust requested two continuances of the trial and repeatedly delayed submitting discovery responses which resulted in numerous motions to compel and further exacerbated the damage to Cox and Mercer.  Counsel for the Trust was

---

[2] The Todd Mercer initially served and named in the Complaint is Defendant Charles Thomas Mercer's cousin. Despite counsel for Defendants' informing the Trust's counsel that they had served and named the wrong Defendant, they refused to voluntarily dismiss the mis-identified party and did not do so until the Todd Mercer initially named in the Complaint was required to incur legal fees in filing a motion to dismiss, which the Defendant Todd Mercer herein agreed to pay for his cousin.

reckless in bringing this claim without sufficient evidence to support the claim and has

such should be subject to sanctions.

Mercer and Cox have complied with the safe harbor provisions of Rule 11 by

notifying counsel for the Trust that its claims against them violated Rule 11 as well as 28

U.S.C. 1927 and counsel for the Trust refused to withdraw its claims against Mercer and

Cox within a 21-day time period (See, emails between counsel attached hereto as Exhibit

"1").  In addition, Mercer and Cox served counsel for the Trust with the Rule 11 Motion

and the Trust again refused to withdraw its claims (See, correspondence attached hereto

as Exhibit "2").

## STATEMENT OF FACTS

The essential factual allegations against Mercer and Cox in paragraphs 139 and

145 of the Amended Complaint are that they negotiated the terms of a $2.5 million

investment in HDR Farms and then colluded with Johnson and LauBach to form XSI and

deprive HDR of this investment.  There is simply no evidence in the tens of thousands of

pages of documents produced by HDR, and that the Trust's counsel had access to, that

there is even a kernel of truth to these allegations

1. **The HDR Emails Produced by the Trust and the Depositions of the
   Trustees Do Not Support the Claims in the First Amended Complaint**

The emails produced by the Trust show that HDR CEO LauBach and Defendant

Dean Johnson ("Johnson") were first introduced in May 2019 and began discussing a

partnership between XSI Canada and HDR (HDR Trust #220, Ex. "3").  Johnson was with

XSI Canada at that time.  The discussions evolved into an intent for XSI Canada to

purchase HDR (HDR Trust #473, #8872 Ex. "4").  LauBach was also in discussions to partner with another CBD company, Vitality. **LauBach kept HDR Board members Steve Bragg ("Bragg") and Stuart Wakely ("Wakely") informed of these discussions as well as of the potential sale of HDR to XSI (**HDR Farms #8873, #8875, #8878, 3636 Ex. "5").

LauBach further informed Wakely that HDR had put "all their eggs in the partnership basket" and that there was no "Plan B" (HDR Farms #9344, Exhibit "6"). LauBach stated that HDR Farms had no value and a purchase of HDR Farms by XSI would allow the repayment of investors (HDR Farms #8879, Ex."7").  LauBach told Wakely that the plan was to form a partnership between HDR and two Canadian companies, Vitality and XSI Canada; HDR Farms would eventually be dissolved; and the assets would be moved to the Canadian company to allow capitalization of HDR and begin repayment to investors (HDR Farms #9345, Ex. "8").

LauBach and Mercer were fraternity brothers in college but had rarely communicated with each other prior to 2019 (Mercer Deposition, pp. 8, 45; Mercer deposition pages cited herein are attached as collective Ex. "9").  Mercer was a financial advisor with Merrill Lynch at that time and learned on social medial that LauBach was in the hemp business; had purchased several greenhouses and might have excess space to rent.  Mercer believed one of his clients Curtis "Tony" Mouser might be interested in leasing greenhouse space for Mr.  Mouser's own hemp growing business.  Mercer arranged a meeting between LauBach and Mr. Mouser to discuss the greenhouses but Mouser never considered investing in HDR (Mercer deposition, pp. 10-12).  There is no written documentation in the thousands of documents produced by the Trust that Tony

Mouser evidenced any interest in making a potential investment in HDR as alleged in paragraph 32 of the Amended Complaint - this was pure conjecture by HDR's counsel.

Mercer had another client, Cox, who told him in November 2019 that she was interested in CBD products. (Cox depo., p. 19). Mercer introduced Cox to LauBach at a meeting in November 2019 so that Cox could get a general view of the CBD market. LauBach did not ask Cox for any investment during this meeting, nor was there any discussion of a potential investment (Cox depo., pp. 10, 25; Cox deposition pages cited herein are attached as collective Ex. "10"). **Prior to this meeting**, LauBach had informed Mercer that HDR was in the final stages of executing a LOI with XSI USA to "partner in the states". (Ex. 4 to Mercer Deposition included with collective Ex. "9"). Mercer never discussed with Cox any investment in HDR (Mercer depo., pp. 16-17). LauBach sent revenue projections for XSI to Mercer on November 21, 2019 (Mercer depo. Ex. 6 attached hereto with Collective Ex. "9").

On November 29, 2019, LauBach told HDR Board member Wakely about his meeting with Cox and Mercer. At this point, the HDR Board members were all aware that LauBach had been in discussions regarding a potential partnership between HDR and XSI Canada. LauBach also told Wakely that a letter of intent (the "LOI") with XSI would be in place the following week; that product would be rolling by the end of January and that the XSI partnership would re-fund HDR (HDR Farms #8882, Exhibit "11"). A LOI between HDR and XSI was executed in November 2019 (HDR Farms #3636, Ex. 5). LauBach also told Wakely on November 21, 2019, that he had received the executed LOI from Dean Johnson (HDR Trust #9347, Exhibit "12").

There is no question that the HDR Board was aware that a new company was being formed to partner with HDR in November 2019 and this is clearly established by HDR's own documents.   On December 6, 2019, LauBach arranged for Cox and Mercer to tour the HDR farm so that they could see a hemp processing facility (Cox depo., p. 18). Several others attended the meeting, including HDR Board member Steve Bragg ("Bragg"), and Dean Johnson and Steve Olasz from XSI Canada (Cox depo., pp. 7-8, 30, Mercer depo., p. 19).

At that meeting, Cox and Mercer were presented with a document entitled Proposed Corporate Structure. (See, Mercer #0006, Exhibit "13").   This document described a new company that would be set up, identified as Newco, KY LLC.  This document in and of itself completely undermines the Trust's claims against Cox and Mercer as it clearly establishes **before Cox invested in XSI** that a new company would be formed with the majority ownership being divided among Johnson, LauBach, Bragg and two other persons who are not parties to this suit.   XSI would enter into an agreement to purchase HDR within a two-year period.  Vitality would be part of the partnership and would provide recipes for products, marketing support and expertise in the operation of equipment (See, Exhibit "5").   **There is no mention in this document of an investment by Mercer or Cox in HDR.**   Although the Trust alleged in its Amended Complaint that Cox told Bragg she wanted to invest in HDR during the meeting, Bragg testified that he did not remember Cox stating that she intended to or wanted to invest money in HDR (Bragg depo., p. 109).

The three HDR Board members and officers, Bragg, LauBach and Wakely, were all

aware of and approved of the LOI between XSI and HDR (Bragg depo., p. 108; Wakely depo. p. 59; the cited deposition pages from Bragg's deposition are attached as collective Ex. 14 and Wakely's as collective Ex. 15). Wakely was aware that Bragg was to be one of the owners of the new company and had no problem with it (Wakely depo., p. 18). **Bragg and Wakely knew that Cox would be investing in XSI, not HDR** (Bragg depo., pp. 155-158, Wakely depo., p. 69, 88). In fact, Wakely expressed to Bragg that the key to HDR's survival was the investor (Cox) coming on board with XSI (HDR Trust, #3745, Ex. "16").

Wakely had no reason to believe Cox would have invested in HDR if she had seen the company's financial statements as it was in no better shape when Cox invested in XSI in January 2020 than when it filed for bankruptcy (Wakely depo. pp. 84, 91). The HDR financial statements as of mid-2019 showed that HDR had a loss of $1.5 million (Davis depo. p. 110, the cited pages from Davis' Deposition are attached as collective Ex. "17"). Bragg testified that he knew a new company was being set up to help HDR Farms, not compete with it, and Bragg was to be part of the new business (Bragg depo., p. 35, 36). LauBach informed the HDR investors during a meeting that HDR had executed a LOI to enter into a partnership with XSI (HDR Farms #8918-8919, Exhibit 18). Therefore, the investors and the HDR Board knew about XSI.

Everyone involved, including HDR Board members Bragg and Wakely, knew that Cox's $2.5 million investment would be in a new CBD company, XSI, rather than HDR (See, email from LauBach to Wakely, HDR Trust #8886, Ex. 19; Bragg depo., p. 102, Wakely depo., p. 88). Wakely never solicited Cox or Mercer to invest in HDR (Wakely depo., p. 185). Bragg testified that he knew XSI was going to be the vehicle for Cox and

Mercer's investment and Wakely also knew the investment would be in XSI (Bragg depo.,
pp. 104, 155)[3]. Bragg testified that XSI was not set up to compete with HDR, contrary to
what was asserted in the First Amended Complaint (Bragg depo., pp. 35-36).

LauBach resigned as an officer of HDR in a letter dated January 15, 2020, informing
the HDR Board that he would be the CEO of XSI USA, LLC (HDR Farms #1335, Ex. 20).
LauBach sold his shares in HDR to Bragg and Wakely (HDR Farms #8889, Ex. 21).
LauBach informed Cox of his resignation as an officer of HDR and the relinquishment of
his shares in the company in an email to her on January 15, 2020, prior to Cox investing
in XSI USA, LLC. LauBach also told her that HDR would be a vendor for XSI (Cox #0006,
Ex. 22). Despite the allegations in the First Amended Complaint that Mercer was an
investor in XSI, it is undisputed that Mercer never invested in XSI. An investment of
$100,000 was made into XSI by GEC Realty, LLC in which Mercer's wife was the sole
member (Mercer depo., pp. 86-87). Mercer is not a member or officer of GEC Realty
(Mercer depo., p. 87).

Bragg helped LauBach to obtain growing and processing licenses from the
Kentucky Department of Agriculture to assist XSI and the two continued to communicate
about the partnership through April 2020. Bragg obtained a tax identification number
for XSI (HDR Farms #10073, Ex. 23). He also helped facilitate the transfer of a greenhouse
lease from HDR to XSI (Bragg depo., p. 70).

LauBach sent Cox an Operating Agreement for XSI which she executed on or

---

[3] Wakely knew that Cox's investment would be in XSI (See emails between Wakely and Bragg, Ex. 13 and 14 and
16 to Bragg depo included in collective Ex.14).

around January 20, 2020, after LauBach had resigned as an officer of HDR Farms and sold his shares in that company (HDR Farms #1450, Ex. 24).  XSI did purchase the HDR Farm for $675,000 and paid the HDR payroll and other labor costs but HDR had spent the money and became eager for the sale of HDR to XSI to be consummated (HDR Farms #10209, 3843, Ex. 25).  On April 8, 2020, LauBach informed Wakely that they needed to begin the consolidation of HDR and XSI in order to protect HDR investors (HDR Farms #9348 and 9349, Ex. 26).  XSI did in fact offer to purchase HDR in April 2020, but the offer expired when HDR Farms did not accept the offer in a timely manner and the offer was withdrawn (HDR Farms #1386, 4186, 1449, 4202, 5453, Ex. 27).

Even if XSI had not offered to purchase HDR or otherwise fulfilled the LOI, this would not form the basis for a breach of fiduciary duty claim against LauBach as he was no longer a fiduciary of HDR.  There is no evidence that LauBach did not intend to fulfill the LOI while he was an officer and a director of HDR, and Wakely acknowledged that he had no evidence of any such intent by LauBach (Wakely depo, Vol. 2, p. 10).

HDR subsequently filed this Chapter 11 bankruptcy.  The Trust brought this adversary proceeding against numerous defendants including Cox and Mercer but notably did not sue Bragg even though he assisted in the set-up of the so-called competing company XSI.  Bragg testified that he had an agreement with trustees Wakely and Davis that if he would cooperate in their investigation of a potential adversary proceeding, Bragg would not be sued by the Trust (Bragg depo., p. 245).

The Trust's attorneys had access to all of the emails on the HDR server and most certainly interviewed trustees Wakely and Davis and cooperating witness Bragg prior to

filing suit.  The emails and the testimony of Wakely, Davis and Bragg do not support the claims asserted against Mercer and Cox in any way, shape, or form, yet counsel chose to file this baseless lawsuit anyway.  Their actions were reckless and harmful to Mercer and Cox; consequently, sanctions are warranted under the federal rules.

**2.    Counsel for the Trust Improperly Relied on CBDKY Emails in Filing the First Amended Complaint and Failed to Timely Produce the Emails**

Trustee Davis testified in a 30(b)(6) deposition in June 2022 that in January 2021 HDR paid a third party, Dave Lloyd, to renew a Go Daddy subscription for a CBDKY email account used by LauBach after he left HDR.  (Davis depo., p. 44).  There had been some discussion between counsel for the trust, Tyler Yeager, and Dave Lloyd about a subpoena for these emails in order to allow counsel to "sharpen their swords" for a claim against LauBach and his "co-conspirators" (HDR 5516, Exhibit "28").  However, the subpoena was abandoned when Yeager told Lloyd HDR could not give him a release or cover his legal expenses (See, Exhibit 28).

Bragg, Davis and Wakely individually agreed to release Lloyd and to pay to renew the Go Daddy subscription.  (HDR 5518, Exhibit "29").  When Davis obtained the password to the CBDKY account, he reviewed the emails and marked through certain items in these emails that he deemed "irrelevant" with a black marker after he printed the emails (Davis depo., pp. 54, 66, 99).    He placed the redacted emails in a binder and provided them to counsel for the Trust in April 2021 prior to this lawsuit being filed (Davis depo., p. 50, 56-57).    When asked why Davis redacted certain parts of the emails, he testified as follows:

A. I didn't think that they were relevant to the emails, and I tried to eliminate stuff. Some if it was doodling. But for the most part, I was like, well this is not needed. I'll take that out. … There was no rhyme or reason. (Davis depo., pp. 54-55).

In addition to Davis' redactions, there were other redactions in the CBDKY emails and Davis did not know if he did those or whether Wakely, Trust counsel or another party made those redactions (Davis depo, p. 66). **Davis did not save unredacted copies of the CBDKY emails relied on by Trust counsel in filing this Complaint** (Davis depo., p. 68). After obtaining and marking up the emails and providing them to Trust counsel, the Trust did not pay to renew the Go Daddy subscription and no longer had access to the account after January 2022 (Davis depo., p. 79, 92). Thus, the Defendants could not obtain the original emails and had no way to determine whether there are other emails from that account that were responsive to discovery requests.

The Trust failed to produce the CBDKY emails in response to discovery requests submitted to the Trust in December 2021 nor were they produced by Trust counsel prior to the Trustees' depositions in April 2022 (Davis depo., p. 102). These actions prompted LauBach's counsel to file a motion to compel and subsequently this Court entered an Order requiring Plaintiff to answer why it did not provide these emails in response to discovery or until after the depositions of the Trustees (See, DN 189). Counsel for the Trust has yet to provide an explanation for this, nor was Davis able to provide an explanation as to why these documents were withheld (Davis depo., p. 102). Nevertheless, counsel for the Trust improperly relied upon this tainted evidence in filing its First Amended Complaint against Cox and Mercer.

**3.**      <u>**False Allegations in the First Amended Complaint**</u>

In addition to initially suing a Todd Mercer who had no relationship to any of the parties or the allegations in the Amended Complaint, the Trust has made numerous allegations in its Amended Complaint that are inaccurate or completely false as proven by the evidence that the Trust was privy to prior to filing the Amended Complaint. Based on the evidence cited above, the false allegations are as follows:

32.      By the end of September 2019, Mercer had connected LauBach to a lead on a potential investment of $2.5 million into HDR Farms from his client, Tony Mouser.

34.      On October 14, 2019, LauBach sent Mercer proprietary information of HDR Farms for Mercer to share with Mouser.

49.      On November 19, 2019, LauBach met with Mercer and Cox about an investment in HDR Farms.

54.      … While meeting with officers of HDR Farms, Cox communicated to … Steve Bragg that she was interested in investing funds in HDR Farms.

In addition, there is no evidence that Cox colluded with Johnson and LauBach to form XSI and deprive HDR of her investment as alleged in Count 139. There is no evidence that Mercer intended to invest $100,00 in HDR or colluded with Dean Johnson and LauBach to form XSI as alleged in Count 145. Counsel for the Trust should be held accountable for asserting these allegations without a good faith basis and for the resulting damages to Cox and Mercer.

# ARGUMENT

### A. The Trust and its Counsel Violated BR 9011 by Filing Its Complaint and First Amended Complaint

Bankruptcy Rule 9011 [Fed. Rule Civ. Proc. 11] requires that every adversary proceeding be signed by an attorney and further provides:

> That his signature constitutes a certificate that he has read the adversary proceeding and to the best of his knowledge, information, and belief, formed after reasonable inquiry that it is well grounds in fact and warranted by existing law. Violation of this rule subjects the attorney and/or the represented party to appropriate sanctions which may include payment to a defendant of the reasonable expenses incurred because of the filing of the adversary proceeding, including a reasonable attorney's fee.

*In re Excello Press, Inc.*, 104 B.R. 924 (E.D. Ill 1989). There are both objective and subjective components to the rule. The subjective component necessitates the imposition of sanctions when a pleading is interposed for an improper purpose, regardless of whether supported by the facts and law. The objective component requires a reasonable inquiry before filing even though the pleading is filed in good faith. Id. at 927. Lawyers "have an obligation not to bring any party into court without first doing the necessary research" regarding the claims asserted against a defendant. Id. at 927.

An attorney is required to investigate prior to filing a claim and "must explore readily available avenues of factual inquiry". *In re Creditors Service Corp.*, 207 B.R. 567 (1997). Sanctions must be assessed where there is no evidence to support the attorney's claim for relief. Id. at 571 (citing, *Albright v. Upjohn Co.*, 788 F.2d 1217, 1221-22 (6th Cir. 1986). Sanctions are warranted if a claim is frivolous which denotes a filing that lacks factual foundation and is made without reasonably competent inquiry. *Townsend v.*

*Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).    In evaluating the reasonableness of an attorney's conduct, it should test that conduct by inquiring into what it was reasonable for the attorney to believe at the time the pleading was submitted. *In re McClean Wine Co., Inc.*, 463 B.R. 838 (E.D. Mich 2011).[4]

If counsel advisees opposing counsel that factual contentions are without evidentiary support and legal arguments are not warranted by existing law and opposing counsel proceeds anyway, sanctions are appropriate and are within the bankruptcy court's wide discretion. *In re Fraga*, 2007 WL 7532279 (9th Cir. BAP 2007). If a party or attorney does not move to amend its adversary complaint to correct errors, the party/attorney is in violation of 9011. *In re Olympia Holding Corp.*, 186 B.R. 157 (M.D. Fla 1995).

The Sixth Circuit has found violations of companion Federal Rule of Civ. Proc. 11 where the plaintiff attorney's pre-filing investigation failed to disclose that the claim against the defendant is well-grounded in fact. *Albright v. Upjohn Co.*, 788 F.2d 1217 (6th Cir. 1986). The Sixth Circuit has recognized that sanctions under Rule 11 are mandatory if the objective standard of reasonableness has been breached. *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 401 (6th Cir. 1987).

In order to prevail on the claim of aiding and abetting a breach of fiduciary duty, a plaintiff must show: (1) the existence and breach of a fiduciary duty; (2) the defendant gave the breaching party "substantial assistance or encouragement" in effectuating the

---

[4] In refusing to dismiss its claims against Mercer and Cox, the Trust relies entirely on testimony from Mercer and Cox rather than the facts that were in its possession at the time the complaint was filed (See, Ex. 1).

breach; and (3) the defendant knew that the party's conduct breached that fiduciary duty.

*Miles Farm Supply, LLC v. Helena Chem. Co.*, 595 F.3d 663 (6th Cir. 2010). "Substantial

assistance" means that a defendant's conduct was a substantial factor in causing the tort.

*Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 537 (6th Cir. 2000). As to the

third element of the claim, constructive knowledge is not enough. The plaintiff must

show that the defendant had *actual* knowledge of any breach. *Miles Farm Supply, LLC v.*

*Helena Chemical Co.*, 595 F.3d 663, 666 (6th Cir. 2010) (dismissing plaintiff's claim of aiding

and abetting breach of fiduciary duty where there was no evidence that the defendant

had actual knowledge of a breach of fiduciary duty).

Once HDR filed its Chapter 11 petition and its attorneys had access to the email

communications among the various parties, they should have reviewed these

communications whether the Trust had a viable claim against Cox and Mercer prior to

filing its Complaint. As set forth above, the communications clearly show that the

trustees of the Trust knew that Cox and Mercer never intended to invest in HDR Farms

and thus could not possibly have aided and abetted LauBach in diverting funds from

HDR to XSI. The investors knew and approved the letter of intent for HDR to partner

with XSI. The HDR Board and trustees Wakely and Davis knew all along that Cox was

investing in XSI, not HDR, and were fine with that because her investment would be used

to fund HDR and potentially purchase HDR. In fact, Cox's investment did help fund

HDR for a period of time and XSI did offer to purchase HDR. Even HDR Board member

Bragg intended to be involved in XSI and assisted XSI in obtaining the greenhouse lease

and grower and processor's licenses. Wakely admitted that he had no evidence that

LauBach did not intend to go through with the LOI while he was an officer and fiduciary of HDR.

After HDR filed for bankruptcy, Bragg made a deal with Wakely and Davis that he would assist them in their adversary proceeding if the Trust would not sue Bragg. Instead, the Trust sued Mercer and Cox who they perceived as having deep pockets. Further, the trustees paid a third party to obtain some of LauBach's emails after he left HDR without his permission, rather than counsel for the trustees issuing a subpoena for those emails. This resulted in Bragg, Wakely and Davis obtaining personal counsel and to assert the Fifth Amendment in their depositions in response to questions about these illegally obtained emails.

These actions of the trustees are the very definition of bad faith and the failure by counsel to conduct a reasonable investigation of both the trustees and the email communications in their possession are egregious. Further, counsel for the Trust should never have relied on emails unilaterally selected and redacted by Davis particularly when they failed to retain clean copies of the emails. Further, there are gross misstatements of fact in the First Amended Complaint such as the allegation that Mercer invested in XSI when he did not and that Mercer introduced Mouser to HDR as a potential investor in HDR, both of which allegations were baseless. Counsel for the Trust initially sued a different Todd Mercer than the person who is currently the Defendant and failed to dismiss the wrong party even after they were told of their error. Counsel for the Trust has caused Mercer and Cox to incur additional legal fees by requesting two continuances of the trial date, requesting multiple extensions of time to produce documents and even

then, producing those documents in multiple rounds of productions.

Both the Trust and its counsel should be subject to sanctions, up to and including an award of attorneys' fees incurred by Mercer and Cox in defending this frivolous action.

### 2.  Counsel for the Trust Has Violated 28 U.S.C. 1927

A Defendant may seek sanctions against counsel under 28 U.S.C. 1927 which provides that:

> An attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

Under this statute, a court may impose sanctions "when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims". *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986).  A finding of bad faith is not necessary to find a violation of this statute.  *Dixon v. Clem*, 492 F.3d 665, 679 (6th Cir. 2007).  *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001).  There must be some conduct on the party of the attorney "that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party".  Id. at 553.

In this case, the Trust alleges in its paragraph 146 of its First Amended Complaint "Mercer knew or should have known that LauBach's conduct breached his fiduciary duty to HDR Farms".  Whether Mercer and Cox "should have known" that LauBach was

breaching his fiduciary duties to HDR Farms is irrelevant and falls short of the requisite

standard for such a claim.  The standard of proof requires "actual knowledge" by Mercer

that LauBach was breaching his fiduciary duty to HDR Farms.  There are no facts alleged

in the First Amended Complaint and no proof in the evidence produced by and available

to HDR Farms at the time it filed its pleading to support its claims that Mercer or Cox

had actual knowledge that LauBach was breaching any fiduciary duties to HDR Farms

by soliciting his investment in XSI or that Mercer's conduct was a "substantial factor" in

causing LauBach's breach of fiduciary duty.   In fact, the evidence is entirely to the

contrary.  This Court has found that there is "no evidence" that Mercer and cox aided

and abetted LauBach in a breach of fiduciary duty to HDR Farms.  Cleary, counsel for the

Trust's actions in continuing to pursue this case through summary judgment while

knowing that they did not have evidence to support the claim is a clear violation of 28

U.S.C. 1927.

Further, counsel for the Trust knew that Mercer never invested in XSI USA, LLC

yet made this allegation in its Complaint and continued to proclaim that he did make that

investment.  This Court found that it was clear at the close of discovery that Mercer did

not invest in HDR Farms or XSI USA "but continued to claim Mercer made the

investment in its Response to the summary judgment motion" [D 261, p. 15].

In addition, by failing to timely produce documents, this resulted in increased

legal fees for all Defendants as they were required to take an additional deposition of Dak

Davis and file multiple motions to compel production and respond to requests for

continuance of the trial.   This Court even noted in a hearing that counsel for the Trust

was on the hottest of hot seats as a result of its actions, including failure to timely produce documents.

For the reasons set forth herein, counsel for the Trust has violated 28 U.S.C. 1987 and should be required to satisfy personally the expenses incurred by Mercer and Cox in defending this adversary proceeding.

## <u>CONCLUSION</u>

Based on the foregoing, Mercer and Cox respectfully request that they be entitled to sanctions against the Trust and its counsel pursuant to BR 9011 and 28 U.S.C. 1927 to include their attorneys' fees and costs incurred in defending this frivolous and baseless lawsuit and be allowed to tender its costs and fees for a determination by the Court as to whether fees and costs should be awarded to Mercer and Cox.

Respectfully submitted,

/s/Jan M. West
Jan M. West
GOLDBERG SIMPSON, LLC
Norton Commons
9301 Dayflower Street
Prospect, KY  40059
Phone: (502) 589-4440
Fax: (502) 581-1344
jwest@goldbergsimpson.com
*Counsel for Defendant, Charles Thomas "Todd" Mercer, III*

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2022, I electronically filed this document through the e-Filing system and served a true copy by electronic mail, to the following:

Hon. Charity S. Bird
Hon. Tyler R. Yeager
Kaplan Johnson Abate & Bird, LLP
710 W. Main Street, Fourth Floor
Louisville, KY 40202
COUNSEL FOR PLAINTIFF

Applied Botanics LLC f/k/a
XSI USA, LLC
118 E. Main Street, Ste. 200
Louisville, KY 40202

Hon. Adam R. Kegley
250 W. Main Street, Ste. 2800
Lexington, KY 40507
COUNSEL FOR COZEN O'CONNER

Dean Johnson
865 Whitfield Lane
Taylorsville, KY 40071

Hon. Marshall R. Hixson
Stites & Harbison, PLLC
250 W. Main Street, Ste. 2300
Lexington, KY 40507
COUNSEL FOR KAWEL LAUBACH

/s/ Jan M. West
*Counsel for Defendants, Todd Mercer* and
*Annette Cox*