UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| IN RE:<br>HDR FARMS INCORPORATED<br>           Debtor.<br><br>HDR FARMS INCORPORATED<br>LIQUIDATING TRUST,<br>           Plaintiff,<br>v.<br><br>APPLIED BOTANICS LLC f/k/a XSI USA,<br>LLC, et al.<br>           Defendants. | CHAPTER 11<br><br>CASE NO. 20-50888-GRS<br><br><br><br>AP NO. 21-05166-GRS<br><br>**KAWEL LAUBACH'S TRIAL BRIEF** |

Pursuant to the Court's August 8, 2022 Third Amended Order for Trial (ECF #255), Defendant Kawel LauBach submits the following Trial Brief.

**I.**  **CURRENT AND FORMER PARTIES**

1.  *HDR Farms Incorporated*—Chapter 11 debtor, Case No. 20-50888. With regard to the claims in this case, Debtor's directors were Kawel LauBach, Steve Bragg and Stewart Wakeley.

2.  *Plaintiff HDR Farms Incorporated Liquidating Trust—* Pursuant to Debtor's Amended Supplement to the Amended Plan, title to all property of the bankruptcy estate vested in the Plaintiff Trust, including the right to bring causes of action held by the Debtor.

3.  *Defendant Kawel Laubach*—Former shareholder, director and officer of Debtor.

4.  *Trustee Stewart Wakeley*—Former shareholder of Debtor and director of Debtor's Board which approved and ratified all decisions by Mr. LauBach which Plaintiff Trust now criticizes.

5.  *Trustee Damon "Dak" Davis*—Former Shareholder of Debtor.

1

6. *Defendant Cozen O'Connor*— ("Cozen") Debtor's pre-bankruptcy law firm and on whom Mr. LauBach relied for advice regarding satisfaction of his fiduciary duties. Its partner, Joe Bedwick, provided legal advice to HDR Farms and Kawel LauBach concerning a number of issues, including LauBach's resignation from HDR Farms.

7. *Steve Bragg*—Former shareholder, officer and director of Debtor's board which approved and ratified all decisions by Mr. LauBach which Plaintiff Trust now criticizes.[1]

8. *Defendant Applied Botanics, LLC d/k/a XSI USA, LLC.*- ("XSI") a now defunct cannabidiol ("CBD") company which offered Debtor a Letter of Intent ("LOI") designed to serve as a lifeline to the struggling Debtor. XSI has never entered an appearance and Plaintiff has never moved to default XSI.

9. *Defendant Dean Johnson*—founding member of XSI. Mr. Johnson has never entered an appearance and Plaintiff has never moved to default him.

10. *Former Defendant Annette Cox*—a $2.5 million investor in XSI and dismissed by summary judgment.

11. *Former Defendant Todd Mercer*—financial advisor to Annette Cox, and whose wife invested $100,000 in XSI, also dismissed by summary judgment.

## II.    EXECUTIVE SUMMARY

The remaining claim in this litigation against Mr. LauBach is his alleged breach of fiduciary duty. Mr. LauBach vehemently denies breaching any duties to Debtor because <u>every</u> business decision identified in this litigation was <u>unanimously</u> approved by the Board of Directors, including Mr. Wakeley. Furthermore, Mr. LauBach at all times acted in the best interest of the Debtor, and followed all advice of Cozen to ensure compliance with his fiduciary

---

[1] Trustees Stewart Wakeley and Steve Bragg were dismissed as third-party defendants, but they remain parties for purposes of apportionment.

2

duties. Under the circumstances, Mr. LauBach is entitled to the protections of the Business Judgment Rule contained in KRS 271B.8-300, and of the Debtor's corporate Bylaws, which released and held him harmless from all liability because he conducted himself in good faith.

A review of the timeline, material facts, and pertinent documents establish that Mr. LauBach acted in good faith at all times, and was driven solely by a desire for Debtor to succeed which would have allowed his close friends and family to recoup their substantial investments in Debtor. Unfortunately, despite Mr. LauBach's best efforts and intentions, Debtor, like many other start-ups and CBD companies, failed.

Plaintiff Trust has an unsurmountable challenge of establishing the breach of any fiduciary duty by Mr. LauBach. Additionally, we expect the fact finder to recognize that this litigation is nothing more than a retaliatory effort led by disgruntled and conflicted trustees seeking to settle a personal score against Mr. LauBach. To the extent unclean hands exist, they belong to the Trustees. (*See*, *e.g.,* Motion to Remove Trustees, Case No. 20-50888, ECF# 106; Motion to Dismiss filed by Applied Biology, a company owned by Kawel LauBach's brother-in-law, ECF# 47, and subsequent Order of Dismissal, ECF# 93).

### III. MATERIAL FACTS

In 2018, two friends formed Debtor. They later brought in a third friend, Mr. LauBach, to help promote the business and convinced him to move from Florida to Kentucky to work for Debtor. At its inception, Debtor was funded by loans from Class B non-voting shareholders in the amount of $2,107,500 ("the Shareholder Loans"). In return for the Shareholder Loans, Debtor executed and delivered promissory notes to each of the respective Class B shareholders. Mr. LauBach's friends and family loaned substantial amounts to Debtor, and Mr. LauBach was especially motivated to make Debtor successful so that his friends and family could get repaid.

During its first year in existence, Debtor produced and sold CBD isolate as its founders had planned.

By the fall of 2019, Debtor was struggling financially and on the precipice of bankruptcy. Most of the promissory notes were in default with their entire balances due without notice or demand. In 2019, Debtor lost $1,533,383.67, and its liabilities totaled $2,512,819, inclusive of the overdue substantial loans.

*The Lifeline*. The loss and indebtedness Debtor experienced in 2019 prevented the raise of additional investment capital. The only potentially available lifeline was a collaboration offered by XSI which was memorialized by the LOI executed on November 22, 2019. (Exh. 1). The LOI memorialized the intents of Debtor and XSI to enter into a business relationship in which XSI would purchase Debtor's horticulture assets, including its farmland and its leased greenhouse space, and eventually purchase all outstanding shares of Debtor for a price of up to $2 million. Under the terms of the LOI, Debtor would continue to process hemp biomass into finished distillate and isolate, which it would then sell to XSI.

Debtor's Board of Directors unanimously approved the terms of the LOI, both before and after it was executed. Considering its imperiled financial status, Debtor's three Directors, Trustee Wakeley, Steve Bragg, and Mr. LauBach, unanimously believed that the LOI would be a Lifeline and was the company's best chance of survival.

*The Lifeline Investor.* Mr. LauBach was a fraternity brothers of Todd Mercer, a Wealth Management Advisor formerly at Merrill Lynch in Louisville Kentucky. One of his clients was Annette Cox, the ex-wife of Papa John's founder. Ms. Cox relied on him for advice regarding her investment decisions. Ms. Cox was interested in CBD, both for personal use, and as a potential investment opportunity.

841264:3:LEXINGTON

Mr. Mercer, through his spouse, and Ms. Cox ultimately sought to invest up to $2.6 million in a CBD company. They initially visited toured Debtor's facilities in Harrodsburg, Kentucky, but were unimpressed. Ms. Cox perceived Debtor's facility to be very unorganized and unprofessional. Mr. Mercer saw that the facility lacked cleanliness and safety protocols in Debtor's manufacturing process. After their tour, Ms. Cox and Mr. Mercer left Debtor's facility with a completely negative view of the company. Furthermore, a substantial number of shares were owned by Danny Plyler, a Debtor founder and fraternity brother of Mr. LauBach and Mr. Mercer. Mr. Plyler's known drug abuse and volatility caused Mr. Mercer to avoid recommending any investment in the Debtor.

For a variety of reasons, Ms. Cox and Mr. Mercer, through his spouse, never actually considered investing in Debtor. Further, even if Ms. Cox and Mrs. Mercer wanted to invest, all of the Class-A voting shares were accounted for and none were available for outside investors. Thus, investment would only give Ms. Cox and Mrs. Mercer non-voting Class B shares.

*The Board continued to promote the Lifeline.* In January 2020, Debtor had virtually no cash and its only potential path to viability was sales and profits flowing from the LOI with XSI. In January 2020, Ms. Cox and Derika Wells Mercer, Mr. Mercer's wife, invested a total of $2.6 million in XSI ("the Investment"). The Investment, directly into XSI and not Debtor, occurred with the <u>knowledge, encouragement, and approval</u> of Debtor's Directors, who expected benefit to the Debtor since the LOI was still in effect. Again, the LOI contemplated that XSI would provide a source for Debtor to sell CBD isolate and eventually have its shareholders paid back.

Shortly before the Investment, Mr. LauBach resigned from Debtor and joined XSI. His resignation letter, in part, summarizes his anticipation that Debtor would reap benefits in his departure and the Debtor's relationship with XSI. (Exh. 2). Those benefits soon emerged. For

5

example, XSI advanced $22,000 of operating cash to Debtor, advanced $35,000 toward the purchase of a farm from Debtor, and purchased a farm from Debtor for $675,000 as expressly contemplated in the LOI. In short, for a period of time after LauBach transitioned to XSI, the LOI provided substantial benefit to Debtor as intended.

About one month after Mr. LauBach resigned, Debtor's Board reported to its investors that it was the "Board's opinion that Mr. LauBach has acted in good faith to HDR and we thank him for his incredible efforts." (Exh. 3). This admission, in addition to the protections of the Business Judgment Rule codified in KRS 271B.8-300, should be dispositive of the entire litigation as those Bylaws waive any claim against Mr. LauBach so long as he acted in good faith.

It was not until March 2020, after Mr. LauBach no longer owed any fiduciary duties to the Debtor, did the LOI arrangement start to fracture based on the failures of Debtor's management, the failures of Debtor to produce a marketable and sellable product free of pollutants such as bugs and plastic, combined with the COVID pandemic which crushed the industry's demand for CBD isolate. Thereafter, Debtor's Board failed its obligations to its shareholders and named Mr. LauBach as the scapegoat.

### IV.    LIST OF POTENTIAL WITNESSES AND SUMMARY OF ANTICIPATED TESTIMONY

1.    *Kawel LauBach*—Mr. LauBach is expected to rebut each of the claims asserted again him. He will discuss how the timeline, material facts, and pertinent documents show that he acted in good faith at all times, and was driven solely by a desire for Debtor to succeed which would have allowed his close friends and family to recoup their substantial investments in Debtor.

6

2.  *Joe Bedwick*—He is a partner with Cozen. He is expected to testify concerning the legal advice he provided to HDR Farms and Kawel LauBach concerning a number of issues, including Mr. LauBach's resignation from HDR Farms and compliance with his fiduciary duties.

3.  *Steve Bragg*—He is a former shareholder, officer and director of Debtor's board. He is expected to testify and acknowledge that he approved and ratified all decisions by Mr. LauBach which Plaintiff Trust now criticizes.

4.  *Dean Johnson*—He was a founding member of XSI. He is expected to testify concerning his dealings with Kawel LauBach and other directors of Debtor in late 2019 and early 2020. He is also expected to testify that based on his knowledge and observations, Kawel LauBach acted in a manner designed to benefit Debtor throughout late 2019 and early 2020, and the failure of Debtor and XSI to reduce the LOI to a formal agreement is attributable to the conduct of Debtor and its Board of Directors after Kawel LauBach's departure.

5.  *Adam Farmer*—He was an employee of Debtor and later became an employee of XSI. He is expected to testify concerning his dealings with Kawel LauBach and other directors of Debtor in late 2019 and early 2020. He is also expected to testify that based on his knowledge and observations, Kawel LauBach acted in a manner designed to benefit Debtor throughout late 2019 and early 2020. He will also testify concerning the business failures of Debtor after Kawel LauBach's departure.

6.  Kawel LauBach reserves the right to call the Plaintiff Trustees during his case in chief as well.

V.  **LEGAL ISSUES AND SUPPORTING AUTHORITY**

Plaintiff Trust must establish the prima facie elements of its claims which encompass the following issues:

1. Whether Mr. LauBach breached any fiduciary duties to Debtor. *See,* KRS 271B.8-300(1)-(2);

2. If there was a breach of fiduciary duty, whether Kawel LauBach acted with willful or wanton or reckless disregard for the best interest of Debtor. *See,* KRS 271.B.8-300(4)(b);

3. If there was a breach of fiduciary duty, whether Kawel LauBach's conduct is excused based on the legal advice provided by Cozen. *See,* KRS 271.B.8-300(3)(b);

4. Whether Mr. LauBach's conduct was known to the Debtor's Board of Directors which authorized, approved, or ratified his conduct. *Patmon v. Hobbs*, 280 S.W.3d 589, 597 (Ky. Ct. App. 2009);

5. Whether Mr. LauBach's conduct falls within the hold harmless waiver contained in the Debtor's Bylaws which releases Mr. LauBach for all conduct taken in good faith;

6. If there was a breach of fiduciary duty, was Kawel LauBach's conduct nonetheless fair to the Debtor. *See*, Debtor's Bylaws; *Patmon,* 280 S.W.3d at 597;

7. Whether Plaintiff Trust can establish with clear and convincing evidence that Mr. LauBach's conduct caused Debtor nominal damages. *See,* KRS 271.B.8-300(6);

8. Whether Plaintiff Trust can establish with clear and convincing evidence that punitive damages are warranted under the circumstances; and

9. If there was a breach of fiduciary by Mr. LauBach, the relative culpability of the other former directors including Trustee Wakeley and Mr. Bragg, both of whom face apportionment from Mr. LauBach.

Mr. LauBach submits that if <u>any one</u> factual finding in relation to issues #1-6 above are resolved in his favor, a defense verdict must be entered in his behalf.

8

## VI. ISSUES ALREADY RESOLVED BY SUMMARY JUDGMENT

The Court's Summary Judgment Order substantially narrow the unresolved issues. (*See* ECF # 261 and 263). Most notably, given that Plaintiff has focused most of its resources on the alleged diversion of funds from former defendants Cox and Mercer to XSI, the following ruling is substantial "Plaintiff can no longer rely on a claim that LauBach or Cozen facilitated the diversion of funds from HDR Farms to cause injury." Plaintiff must produce some proof that LauBach's and Cozen's actions caused HDR Farms to suffer injury other than the lost investment to succeed on its claims." (ECF #263 at p. 2).

Aside from the liability issues already resolved by the Court, Plaintiff's damages are limited to nominal damages as well as punitive damages. (*Id.* at 8-9).

Respectfully submitted,

*/s/ Marshall R. Hixson*
Marshall R. Hixson
Chrisandrea Turner
Stites & Harbison, PLLC
250 W. Main Street, Suite 2300
Lexington, KY 40507
Phone: (859) 226-2300
E-Mail: mhixson@stites.com
           clturner@stites.com
*Counsel for Kawel LauBach*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served this the 27th day of September, 2022 electronically in accordance with the method established under this Court's CM/ECF Administrative Procedures upon all parties in the electronic filing system in this case.

*/s/ Marshall Hixson*
Counsel for Kawel LauBach

9