UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| In re:<br><br>HDR Farms Incorporated,<br><br>               Debtor. | Case No. 20-50888-grs<br><br>Chapter 11 |
| HDR Farms Incorporated Liquidating Trust,<br><br>               Plaintiff,<br>v.<br><br>Applied Botanics LLC f/k/a XSi USA, LLC, *et al.*,<br>               Defendants. | A.P. No. 21-05166-grs |

## PLAINTIFF'S TRIAL BRIEF

\* \* \*   \* \* \*   \* \* \*

Comes the Plaintiff, HDR Farms Incorporated Liquidating Trust (the "Trust"), by counsel, and pursuant to the Court's *Third Amended Order for Trial* (Doc. 255), hereby submits the following Trial Brief respectfully showing the Court as follows:

## I.      ISSUES IN QUESTION

A.     Whether Kawel LauBach ("LauBach") owed a fiduciary duty[1] and whether he breached that duty.

B.     Whether Cozen O'Connor ("Cozen") aided and abetted LauBach's breach of fiduciary duty.

C.     Whether Cozen committed legal malpractice.

---

[1] This Court has already held that LauBach owed a fiduciary duty. [Doc. 263, p.3].

D.      Whether LauBach engaged in fraudulent misrepresentation to Debtor, its board of directors, and shareholders.

E.      Whether LauBach fraudulently omitted facts to Debtor, its board of directors, and shareholders.

F.      Whether LauBach usurped a corporate opportunity away from Debtor.

G.      Whether Debtor should be awarded punitive damages and attorneys' fees based upon the injury caused by LauBach's and Cozen's actions.

## II.      SUMMARY OF ANTICIPATED WITNESSES AND TESTIMONY

A.      Steve Bragg – Mr. Bragg was the CEO of Debtor beginning at Mr. LauBach's official departure in January 2020. Mr. Bragg was also a board member during the relevant time periods in this case. Steve Bragg is able to testify about much of the evidence and facts in this case as he was on the board during the relevant time periods. He will also testify that he did not have communications with nor was he included on any communications with Cozen until after LauBach's resignation from HDR Farms in January 2020.  Mr. Bragg will further testify that the terms of the LOI were substantially misrepresented by LauBach. Mr. Bragg will also testify about business operations and expectations with the XSi transaction which were not honored.

B.      Dak Davis – Mr. Davis is a shareholder and investor in HDR Farms. He is also a Co-Liquidating Trustee for Plaintiff. Mr. Davis is expected to testify regarding the information that the shareholders and board members learned about LauBach's dealings after he departed the company and after the company was forced to file bankruptcy.

C.      Stewart Wakeley – Mr. Wakeley is a shareholder and investor in HDR Farms. He was also a board member during the relevant time periods for the claims in this case. Mr. Wakeley is also a Co-Liquidating Trustee for Plaintiff. Mr. Wakeley will testify that the XSi transaction was

misrepresented to the board members in order to get their approval. He will likewise testify that he did not learn of the breaches of fiduciary duty committed by LauBach until after his departure. Wakeley will also testify that no board member or officer spoke with anyone at Cozen except for LauBach. Finally, Mr. Wakeley will testify regarding the information that the shareholders and board members learned about LauBach's dealings after he departed the company and after the company was forced to file bankruptcy.

D.      <u>Kawel LauBach</u> – Mr. LauBach is a defendant and was the CEO of Debtor. As he was intimately involved with the subject matter of this adversary proceeding, it is anticipated he will be able to testify about most, if not all, of the allegations and evidence.

E.      <u>Peter Ostermiller</u> – Mr. Ostermiller is an attorney and Plaintiff's legal expert. It is expected that he will testify that Cozen breached its duty of care and did not adhere to professional standards in its representation of HDR Farms. Mr. Ostermiller is expected to testify as outlined in his expert report.

F.      <u>Joseph Bedwick</u> – Mr. Bedwick is a partner at Cozen and was the point of contact for HDR Farms during the relevant time periods and transactions. It is anticipated that Mr. Bedwick will be called to testify regarding the representation of HDR Farms and the attendant facts and circumstances involving Cozen and which are the subject matter of this adversary proceeding.

G.      <u>Danny Plyler</u> – Mr. Plyler is a majority shareholder, was the CEO of HDR Farms and was a board member until his resignation in September 2019. It is expected that he can testify regarding the nature of his exit from the company and attendant negotiations that were misrepresented by LauBach.

H.      Annette Cox – if called, Ms. Cox is expected to testify about the proposed business model for the future under the HDR Farms name and with HDR Farms' assets.

## III.    BRIEF SUMMARY OF THE EVIDENCE

1.      In June 2019, LauBach became CEO of Debtor.[2] HDR Farms was still considered a startup at that time.[3]

2.      In 2019, HDR Farms purchased a farm consisting of 130 acres and referred to as the "Kentucky Farm."[4] The purchase of the Kentucky Farm was financed by Community Trust Bank with LauBach as the guarantor on the loan.[5] HDR Farms also purchased equipment for the distillation and isolation process in 2019 utilizing investor money.[6]

3.      Also in 2019, HDR Farms entered into a lease for property with greenhouses which is referred to as the "Greenhouse Lease."[7]

4.      HDR Farms also leased a building for its operations on Louisville Road known as the "Louisville Road" property and LauBach was a guarantor on the lease.[8]

5.      At the time of its bankruptcy filing, Debtor also had a Hemp Production and Processing License.[9]

6.      Also, sometime in mid-2019, LauBach was introduced to Dean Johnson as someone who wanted to get into the Kentucky hemp market and partner with HDR Farms.[10] Johnson was the owner of XSi Canada, a company located in Canada that built hemp extraction

---

[2] See Exhibit 143, LauBach Transcript, 57: 21-23.
[3] See Exhibit 143, LauBach Transcript, 57: 5-7.
[4] See Exhibit 143, LauBach Transcript, 50:7-11.
[5] See Exhibit 143, LauBach Transcript, 50:12-21.
[6] See Exhibit 143, LauBach Transcript, 50:25-51:11.
[7] See Exhibit 143, LauBach Transcript, 57:8-16.
[8] See Exhibit 143, LauBach Transcript, 57:17-23.
[9] See Doc. 30, Schedules, in Case No. 20-50888-GRS.
[10] See Exhibit 143, LauBach Transcript, 59:17-60:23.

equipment.[11] LauBach was providing Johnson with proprietary information from HDR Farms without an executed Non-Disclosure Agreement ("NDA") and confessed via e-mail that it "should have been executed early in the discussions…."[12]

7.      At the time discussions between LauBach and Johnson began in June 2019, there were "several suitors" interested in HDR Farms.[13] Among those "suitors," were Trim Healthy Mama, a "group" from Hong Kong, Acreage Holding[14], and other farmers in the area.[15]

8.      Consequently, LauBach reached out to HDR Farms' then counsel, inquiring about an NDA and highlighting the various suitors for HDR Farms.[16] LauBach was concerned about protecting HDR Farms because "there were individuals wanting to get their foothold in Central Kentucky…."[17] From June 2019 through at least September 2019, there were many people trying to enter the Kentucky hemp industry, and HDR Farms was an attractive location.[18]

9.      As of October 2, 2019, Cozen began representing HDR Farms.[19]

10.      As of October 5, 2019, LauBach represented to Stewart Wakeley, a board member of HDR Farms, that "my Meryl [sic] Lynch friend…is still very optimistic that his client wants to invest and work with HDR…."[20] The Merrill Lynch friend LauBach was referencing is Mercer.[21] Shortly thereafter, on October 14, 2019, LauBach shared the "HDR deck" with Mercer without

---

[11] See Exhibit 143, LauBach Transcript, 61:14-16.
[12] See Exhibit 5, HDR Farms046385.
[13] See Exhibit 143, LauBach Transcript, 63:6-11; See also, Exhibit 5, HDR Farms046385.
[14] See Exhibit 143, LauBach Transcript, 70:23-14.
[15] See Exhibit 143, LauBach Transcript, 63:15-24.
[16] See Exhibit 6, HDR Farms046379.
[17] See Exhibit 143, LauBach Transcript, 71:22-72:1.
[18] See Exhibit 143, LauBach Transcript, 74:10-19.
[19] See Exhibit 144, Bedwick Transcript, 10:21-24; See also Exhibit 11, HDR Farms046252.
[20] See Exhibit 12, HDR Farms048297.
[21] See Exhibit 143, LauBach Transcript, 81:23-25.

requesting an executed NDA.[22]

11.     On October 22, 2019, LauBach shared HDR Farms' standard operating procedures with Johnson and boasted that HDR Farms "continues to see consistent results with 99+% isolate and high quality distillate."[23]

12.     On October 24, 2019, LauBach reached out to Cozen requesting that it continue to represent HDR Farms "through the drafting of the partnership" and then "transitioning to XSi as representative counsel."[24] Cozen knew that LauBach would be CEO of both HDR Farms and XSi.[25]

13.     LauBach also "negotiated" to take the role of CEO at XSi while he was still CEO of HDR Farms in October 2019.[26]

14.     On October 25, 2019, LauBach shared "line items of an HDR operation" with Johnson in an email with the attachment "XSiUSA. Checklist NOV2019."[27]

15.     On October 26, 2019, Johnson shared a Letter of Intent by and between XSi USA, Inc. and Terpene Bio Tech ("TBT") wherein XSi promised HDR Farms' assets to a yet to be formed joint venture between XSi and TBT (the "TBT LOI").[28] LauBach was still the CEO of HDR Farms at this time and XSi had not been formed and had no assets. HDR Farms possessed the assets.

16.     As of October 28, 2019, LauBach, as CEO of HDR Farms, had identified a

---

[22] See Exhibit 14, HDR Farms048215.
[23] See Exhibit 15, HDR Farms048217.
[24] See Exhibit 21, HDR Farms048120.
[25] See Exhibit 144, Bedwick Transcript, 23:20-25.
[26] See Exhibit 143, LauBach Transcript, 103:19-104:13.
[27] See Exhibit 143, LauBach Transcript, 93:1-4; See also Exhibit 24, HDR Farms046152.
[28] See Exhibit 143, LauBach Transcript, 95:25-96:10; See also Exhibit 26, HDRFarms046148.

"majority investor" as Cox[29] and informed Cozen that there would be "a non-binding agreement however will want attorneys involved for a more legally binding agreement to follow."[30] Cox testified that Mercer introduced her to LauBach in November 2019.[31] She indicated to Mercer that she was interested in the CBD market and first learned about HDR Farms around that same time.[32] Mercer shared information regarding HDR Farms with Cox.[33] In November 2019, LauBach, Mercer, and Cox had a meeting at Mercer's office discussing the CBD market and LauBach's role as the CEO of HDR Farms.[34] LauBach told Cox and Mercer about HDR Farms' operations at that meeting.[35] LauBach invited Cox and Mercer to visit HDR Farms, making no mention of XSi.[36] Cox expected to meet with LauBach and have him show her the facility when they met in December 2019 at HDR Farms.[37] Cox did not expect to meet Johnson of XSi Canada at HDR Farms.[38]

17.    On November 22, 2019, XSi USA, Inc. and HDR Farms executed the letter of intent with Dean Johnson signing for XSi and LauBach signing for HDR Farms, despite XSi not being in existence or registered in any corporate form, and LauBach was declared as the CEO for XSi (the "LOI").[39] On November 23, 2019, LauBach sent both a "letter to shareholders" and the LOI to Cozen to review as HDR Farms' counsel.[40] Cozen reviewed the documents and billed HDR

---

[29] See Exhibit 143, LauBach Transcript, 98:3-14.
[30] See Exhibit 25, HDR Farms014284.
[31] See Exhibit 142, Cox Transcript, 18:8-17.
[32] See Exhibit 142, Cox Transcript, 19:13-20:2.
[33] See Exhibit 142, Cox Transcript, 20:3-6.
[34] See Exhibit 142, Cox Transcript, 22:19-23:8.
[35] See Exhibit 142, Cox Transcript, 24:7-12.
[36] See Exhibit 142, Cox Transcript, 25:2-10.
[37] See Exhibit 142, Cox Transcript, 27:19-23.
[38] See Exhibit 142, Cox Transcript, 27:24-28:1.
[39] See Exhibit 22, LOI.
[40] See Exhibit 38, HDR Trust 020803 and Exhibit 36, HDR Trust 014218.

Farms for the review on November 23, 2019.[41] When Cozen reviewed the "letter to shareholders" and LOI, HDR Farms was its only client.[42]

18.     Cozen responded to LauBach advising him of his fiduciary responsibilities and inquiring as to whether shareholder approval was needed for an LOI in which LauBach was CEO on both sides and during a time in which Cozen represented HDR Farms.[43] LauBach was seeking the advice of Cozen on behalf of "the shareholders, the company…"[44] LauBach clarified that he was seeking advice on behalf of the board of HDR Farms as well.[45]

19.     LauBach continued to seek advice related to the LOI between HDR Farms and XSi from Cozen throughout the remainder of November 2019.[46] Despite the continued request for advice, Cozen declined to advise its client HDR Farms that it should obtain more than a non-binding LOI or that a disinterested member of the board of directors should participate in the legal discussions with Cozen.[47] Cozen confirmed that it saw "potential adversity in future transactions" while representing HDR Farms.[48]

20.     On December 2, 2019, LauBach misstated the terms of the LOI and the Cox/Mercer investment to board member Stewart Wakeley in an email containing responses to Wakeley's inquiries and clarifications.[49] LauBach advised Wakeley, "this group has agreed to buy out the stock as well at no less than $500 per share. That is as good a deal as I could get."[50] LauBach knew

---

[41] See Exhibit 52, HDR Trust 013639.

[42] See Exhibit 144, Bedwick Transcript, 18:17-21.

[43] See Exhibit 37, HDR Trust 046450.

[44] See Exhibit 143, LauBach Transcript, 109:23-110:1.

[45] See Exhibit 143, LauBach Transcript, 111:21-23.

[46] See Exhibit 143, LauBach Transcript, 113:19-25.

[47] See Exhibit 144, Bedwick Transcript, 39:13-40:25.

[48] See Exhibit 144, Bedwick Transcript, 40:20-25.

[49] See Exhibit 44, HDR Farms047395.

[50] *Id.*

this representation was not true when he made it to Wakeley.[51]

21.    On December 3, 2019, LauBach asked Cozen to "set up Delaware LLC" to "help transition from dysfunction of HDR to XSi."[52] Cozen was representing HDR Farms at the time.[53]

22.    On December 4, 2019, Mercer and Cox toured the HDR Farms facility.[54] During the tour of HDR Farms, LauBach and Bragg told Mercer and Cox, "they needed to clean their mess up and they needed more investment dollars, and this is why that they're doing what they're doing.…"[55]

23.    Shortly after the meeting on December 4, 2019, Cox was looking at investing knowing that HDR Farms had the assets.[56]

24.    On December 5, 2019, LauBach sent a follow-up email, as CEO of HDR Farms, to Mercer regarding "Investment Items" that remained outstanding that included "Danny removed from HDR."[57] Also on December 5, 2019, Cozen "review[ed] XSI term sheet" and billed HDR Farms for it.[58] Cozen partner Bedwick testified that this is "what I was doing for HDR Farms at the time is representing them in furtherance of a potential transaction with XSi."[59] However, Danny Plyler agreed to surrender his shares so long as the investors in HDR Farms would be repaid so there was no "removal" necessary.[60]

25.    Also on December 6, 2019, LauBach introduced Johnson to Cozen and asks that

---

[51] See Exhibit 143, LauBach Transcript, 117:23-118:3.
[52] See Exhibit 46, HDR Farms020847.
[53] See Exhibit 144, Bedwick Transcript, 26:13-15.
[54] See Exhibit 141, Mercer Transcript, 25:15-19.
[55] See Exhibit 141, Mercer Transcript, 30:25-31:3.
[56] See Exhibit 142, Cox Transcript, 38:12-39:3.
[57] See Exhibit 47, HDR Farms029451.
[58] See Exhibit 112, HDR Farms013627
[59] See Exhibit 144, Bedwick Transcript 55:21-24.
[60] See Exhibit 143, LauBach Transcript, 131:9-132:

the formation of XSi USA be expedited and that Cozen begin representing it instead of HDR Farms.[61]

26.    On December 9, 2019, LauBach, as HDR CEO, shared projections with Mercer reflecting the "ROI for Annette." Attached as promised to the email was "HDR Farms Current Isolate Production:" with projections below it.[62]

27.    On December 11, 2019, Cozen, as counsel for HDR Farms, indicated that it would put LauBach, CEO of HDR Farms, in touch with an associate and paralegal to prepare documents for XSi "before we have even been engaged by XSI."[63] On December 12, 2019 Applied Botanics, LLC f/k/a XSi USA, LLC was formed as a Delaware entity. It had no assets because "the asset" was coming from HDR Farms.[64] It was set up on that day with LauBach as CEO, and with primary financial control, the primary responsible party, and with the mailing address of HDR Farms.[65]

28.    LauBach also asked that the EIN request of the IRS for XSi be done via fax so that he could avoid being declared the sole member as of December 12, 2019 but inquired as to whether he was "overthinking it." In his deposition, LauBach explained that "we were trying to get XSi established as quickly as possible to achieve the investment from Ms. Cox."[66]

29.    As of December 13, 2019 Cozen was aware that LauBach was listed with XSi's corporate filings as the CEO, and as the individual with primary financial control and responsible party.[67] Cozen's Bedwick testified that the actions Cozen was taking on behalf of XSi were done

---

[61] See Exhibit 50, Cozen_000569.
[62] See Exhibit 53, HDR Farms047289.
[63] See Exhibit 55, HDR Farms045704.
[64] See Exhibit 143, LauBach Transcript 187:23-188:2.
[65] See Exhibit 143, LauBach Transcript 144:16-145:1; See also Exhibit 59, HDR Trust 047180.
[66] See Exhibit 143, LauBach Transcript 148:1-9; See also Exhibit 59, HDR Trust 047180.
[67] See Exhibit 144, Bedwick Transcript 43:2-17; See also, Exhibit 59, HDR Trust 047180.

"in furtherance of our engagement by HDR."[68]

30.     Despite repeated references to the contrary, Steve Bragg was not copied on the emails with LauBach, Cozen, Cox, Mercer, or anyone affiliated with TBT or XSi.[69]

31.     On December 17, 2019, despite testifying that the formation of XSi with LauBach as the CEO was in furtherance of its engagement by HDR Farms with LauBach also as the CEO, Cozen decided to switch sides and represent XSi adverse to HDR and to instruct HDR Farms to get new counsel. "[W]e can represent XSI in the transactions with HDR, and continue to represent HDR in all non-XSI transactions. With respect to the XSI-HDR transactions, HDR will need to engage separate counsel."[70] On the same date that Cozen indicated that it would represent XSi now adverse to HDR Farms, and despite having no executed engagement letter, LauBach sent the same LOI again along with the TBT LOI to Cozen to review.[71]

32.     Cozen billed HDR Farms 2.6 hours on "Follow up with K. Berman on Plyler dispute; discuss new LOI with K. Laubach."[72] LauBach confirms that he sent the LOI and the TBT LOI to Cozen to review "in the capacity of HDR Farms."[73]

33.     Despite being told that HDR Farms needed new counsel for this LOI, LauBach declined to engage new counsel for HDR Farms and Cozen proceeded to review the LOI and TBT LOI and to bill HDR Farms for that work.[74] LauBach admitted "I was acting on behalf of HDR in this matter because of the fact that I had signed the LOI and I was sending it for review."[75]

---

[68] See Exhibit 144, Bedwick Transcript 46:19-20.
[69] See Exhibit 143, LauBach Transcript, 210:8-18.
[70] See Exhibit 65, HDR Farms045437.
[71] See Exhibit 66, HDR Farms047074.
[72] See Exhibit 112, HDR Farms013627.
[73] See Exhibit 143, Laubach Transcript 158:8-12.
[74] See Exhibit 143, LauBach Transcript 158:19-159:2.
[75] See Exhibit 143, LauBach Transcript 159:11-12.

34.    LauBach confirmed that XSi would have to acquire the assets of HDR Farms in accordance with the TBT LOI and someone would have to negotiate between HDR Farms and XSi.[76] LauBach was still the CEO of HDR Farms.

35.    On December 24, 2019, LauBach informed an investor in HDR Farms, Mr. Kain, that "a new strong partnership is forming it will ensure repayment to investors."[77]

36.    Cozen's Bedwick confirmed at his deposition that as of December 26, 2019, HDR Farms was the only client of Cozen because "[w]e haven't even been engaged yet by XSI…"[78]

37.    Also, on December 26, 2019, LauBach, CEO of HDR Farms, confirmed to Cozen that he has a "verbal commitment of $2.5M investment into XSi USA from the soon to be ex-wife of Papa John's Pizza creator, her name is Annette Schnatter or maiden name as she is going back to is 'Cox'."[79] LauBach testified that the verbal commitment "goes back to that December 3rd, December 4th, I mean.…"[80]

38.    LauBach recognized the conflict of interest in his actions, stating that we need to "[f]irst, execute engagement letter and release of conflict between XSi USA/HDR Farms Inc. and Cozen. I will be the point person on this not the Canadians."[81] LauBach further indicated to Cozen, "once monies are received HDR will make Cozen whole with transfer of assets to XSi."[82]

39.    At that point in time, Cozen had no engagement letter with XSi and no written waiver-of-conflict.[83]

---

[76] See Exhibit 143, LauBach Transcript 161:1-17.
[77] See Exhibit 143, LauBach Transcript Exhibit 29.
[78] See Exhibit 144, Bedwick Transcript, 58:18-21.
[79] See Exhibit 69, HDR Farms045361.
[80] See Exhibit 143, LauBach Transcript 168:4-7.
[81] See Exhibit 69, HDR Farms045361.
[82] *Id.*
[83] See Exhibit 143, LauBach Transcript, 169:22-170:1.

40.     As of December 26, 2019, Cozen, as counsel for HDR Farms, knew "HDR needed this lifeline from XSi in order to pay the creditors."[84] Yet, Cozen, as counsel for HDR Farms didn't advise HDR to move any further than a non-binding LOI for this "lifeline."[85]

41.     On January 2, 2022, LauBach advised HDR Farms counsel, Cozen, that "we have received confirmed funding however one of the contingencies require the exit of Danny [Plyler]." LauBach testified that other contingencies included providing financials.[86] The financials to be provided were projections for XSi USA based on acquiring HDR Farms' assets. "That was the asset."[87]

42.     On January 2, 2020, LauBach, as CEO of HDR Farms, sent Cox correspondence regarding a press release for review by Cox. Cox responded indicating "[a]ll sounds good except could we replace staple with leader?"[88] The draft press release refers to LauBach as CEO of HDR Farms and further reads, "HDR Farms has worked diligently to find truly capable partners and we are thrilled to see this partnership come together with such respected, proficient and qualified individuals." It goes on to say "we have garnered strong local relations including the addition of Annette Cox to the board of directors…"[89] The draft press release attributed a statement to David Lloyd saying that they are "even more excited to be able to find quality of CBD provided in Central Kentucky and specifically HDR's fully vertical solution."[90] The press release was then sent to David Lloyd, Cox, and Dean Johnson for review.[91]

---

[84] See Exhibit 144, Bedwick Transcript 66:2-3.

[85] See Exhibit 144, Bedwick Transcript 67:4-6.

[86] See Exhibit 72, HDR Farms047014; See also Exhibit 143, LauBach Transcript 187:6-11.

[87] See Exhibit 143, LauBach Transcript, 187:15-188:2.

[88] See Exhibit 70, HDR Farms046998.

[89] *Id.*

[90] *Id.*

[91] See, Exhibit 143, LauBach Transcript, 179:10-21.

43.     On January 6, 2020, the XSi engagement letter was finally executed with Cozen and the Waiver of Conflict of Interest letter was executed by the CEO of both XSi and HDR Farms; LauBach, on behalf of HDR Farms; and by Dean Johnson, the "point person" on behalf of XSi.[92] No disinterested member of HDR Farms reviewed or executed the letter. The Conflict of Interest Letter notably stated that the "Firm has represented, and currently represents, HDR in various corporate and litigation matters."[93] It further indicates that the "Firm has now been engaged to represent XSi in the Possible Transaction"—the same Possible Transaction that is the subject of the LOI that Cozen reviewed in November and December as counsel to HDR Farms.[94]

44.     Three days later, on January 9, 2020, LauBach advised Cozen, "my intention is to resign HDR and rescind my ownership (200 shares) in order to avoid fiduciary conflicts…."[95] To which Cozen, HDR Farms' counsel, responded "I don't want you to expose yourself to any breach of fiduciary duties by jumping ship and joining the new entity."[96] Cozen knew as of December 12, 2019, that LauBach was the CEO of XSi, the new entity, since it prepared and filed the corporate formation documents listing him as CEO on that date.

45.     Also, on January 9, 2020, Cozen assisted XSi, through LauBach who was still the CEO of HDR Farms, in drafting "an Operating Agreement for XSi USA, LLC and a Subscription Agreement for the investments by Annette Schnatter."[97]

46.     On January 11, 2020, LauBach promised Cozen that "whether through HDR or XSi USA all legal fees accrued under this effort will be settled after funding is achieved." The funding

---

[92] See Exhibit 79, Waiver of Conflict of Interest Letter.
[93] *Id.*
[94] *Id.*; See also Exhibit 144, Bedwick Transcript 70:3-12.
[95] See Exhibit 111, Cozen_001017.
[96] *Id.*
[97] See Exhibit 144, Bedwick Transcript 83:4-7; See also Exhibit 83, HDR Trust045179.

source was Cox and Mercer.[98]

47.    On January 13, 2020, Cozen told LauBach, for the first time, that Cozen needed a new point of contact for HDR Farms and that HDR Farms needed new counsel for the transaction with XSi because Cozen would now be representing XSi with regard to the LOI.[99]

48.    On January 14, 2020, while CEO of HDR Farms, LauBach told Mercer, "[t]he primary take away should be that XSi and HDR have no legal connection and that XSi is under no obligation to acquire HDR.…"[100]

49.    Suddenly, on January 15, 2020, LauBach advised Cox that he and Mercer had spoken of "HDR's splintered partnership" and indicated that he had resigned his role as CEO and he was "no longer associated as a fiduciary of HDR." He explained to Cox that "[t]his was done for the main purpose of insulating and protecting XSi along with your investment. It provides XSi the opportunity to use HDR as a vendor with no legal responsibility. As I articulated to Todd [Mercer], we have assembled a very strong team of professionals and none of us have the desire to see conflict arise from challenges facing HDR. They will continue to provide XSi with CBD isolate in accordance with the LOI, **while we are already importing improved solutions to extract and isolate CBD independently**." (Emphasis Added). Finally, he attached the HDR deck now rebranded as XSi USA, LLC and dated January 14, 2020.[101]

50.    Also at this time, Cox testified that HDR was the only company "that I knew of that existed at that time."[102]

51.    LauBach's resignation from HDR Farms was official as of January 17, 2020 with

---

[98] See Exhibit 143, LauBach Transcript, 189:13-22; See also Exhibit 85, Cozen_001102.
[99] See Exhibit 144, Bedwick Transcript 81:2-19; See also Exhibit 85, Cozen 001101.
[100] See Exhibit 143, LauBach Transcript, 212:3-19; See also Exhibit 92, HDR Trust009964.
[101] See Exhibit 71, HDR Farms046998.
[102] See Exhibit 142, Cox Transcript, 43:7-10.

an email from LauBach to Bragg and Wakeley stating, "Steve, if you will communicate this to the investors so that they understand that I have no fiduciary responsibility."[103] On this same date, LauBach asked Cozen's Bedwick if he can "draft a very simple contract of purchase that is signed by them and me, sell it for $1 and walk away from this train wreck?" To which Bedwick, HDR Farms' counsel, responded with a simple, "Yes."[104]

52.      On January 20, 2020, LauBach told Johnson "[d]rink them if you got them! It looks like we just raised $2.6M…" To which Johnson responds, "[r]emember this day. It's the day we start on the path of becoming Legends."[105] No one from HDR Farms was copied on this correspondence.[106]

53.      On January 21, 2020, Cozen continued to revise the XSi Operating Agreement and Subscription agreement in accordance with changes requested by Cox's counsel.[107]

54.      On January 24, 2020, LauBach sought the transfer of the HDR Farms hemp production and processing license to XSi.[108]

55.      Also on January 24, 2020, Cozen told Steve Bragg, the new CEO of HDR Farms, that it "will need to engage new counsel" when it is ready to move forward with XSi.[109] Cozen's Bedwick testified that the transaction referenced is based upon the November 22, 2019 LOI.[110]

56.      On February 7, 2020 (two weeks after the $2.6M investment), Bragg, now CEO of HDR Farms, expressed concern to LauBach that "HDR not getting the contract with XSi forces

---

[103] See Exhibit 98, HDR Famrs013868.
[104] See Exhibit 81, Cozen_001213.
[105] See Exhibit 99, HDR Trust010045.
[106] See Exhibit 143, Laubach Transcript 214:16-19.
[107] See Exhibit 144, Bedwick Transcript 90:7-13; See also Exhibit 101, HDR Trust10062.
[108] See Exhibit 143, LauBach Transcript 217:16-21.
[109] See Exhibit 104, HDR Farms023248.
[110] See Exhibit 144, Bedwick Transcript, 98:12-16.

bankruptcy." He further indicated "I'm concerned with the significant separation between HDR and XSi that has occurred already."[111]

57.     On May 14, 2020, Steve Bragg, as CEO of HDR Farms, inquired of Cozen about splitting the HDR Farms legal bill to remove "items specific to XSi."[112] In response, Cozen indicated that items related to XSi on the HDR Farms bills were LauBach asking Cozen to review documents "on behalf of HDR initially relating to the potential transaction."[113] Cozen's Bedwick further testified that he was reviewing the information and term sheets on behalf of HDR Farms.[114]

## IV.    CITATION OF AUTHORITIES AND STATUTES

### A.  LauBach owed a fiduciary duty to Debtor and he breached that duty.

As CEO of HDR Farms, LauBach owed a duty to Debtor. "Officers of corporations owe fiduciary duties to the corporation." *Cadle v. Jefferson*, No. 307CV00070RGJCHL, 2020 WL 966578, at *5 (W.D. Ky. Feb. 27, 2020), reconsideration denied, No. 307CV00070RGJCHL, 2021 WL 535848 (W.D. Ky. Feb. 12, 2021). LauBach breached that duty aided and abetted by others. "To state a claim for breach of fiduciary duty under Kentucky law, plaintiff must establish that the defendant owed a fiduciary duty, breached that duty, and that the breach caused damages." *Id*. "An officer's fiduciary duties include the duty not to act against the corporation's interest." *Id*. LauBach took no steps on behalf of HDR Farms to move the LOI to a binding agreement in breach of his fiduciary duties to HDR Farms. LauBach additionally took affirmative steps, aided and abetted by Cozen, to engage Cozen on behalf of XSi and abandon HDR Farms as its counsel. LauBach's scheme required the acquisition of all of HDR Farms' assets. Immediately after

---

[111] See Exhibit 110, HDR Farms023104.

[112] See Exhibit 127, HDR Farms012952.

[113] *Id.*

[114] See Exhibit 144, Bedwick Transcript 101:8-12.

securing funding, LauBach abandoned his role as CEO of HDR Farms and reneged on all promises and representations made to HDR Farms, its board, and its shareholders. Had LauBach not breached his fiduciary duties, the interests of HDR Farms in moving the LOI to a binding document based upon all of the representations LauBach had previously made to the board would have been protected and pursued.

B. Cozen aided and abetted LauBach's breach of fiduciary duty.

Cozen, while counsel for HDR Farms, aided and abetted LauBach's breach of fiduciary duty. The Trust's evidence at trial will show that (1) LauBach breached his fiduciary duty, (2) Cozen gave substantial assistance or encouragement to LauBach, and (3) Cozen knew that LauBach's conduct breached a fiduciary duty. *Cadle v. Jefferson*, No. 307CV00070RGJCHL, 2020 WL 966578, at *5 (W.D. Ky. Feb. 27, 2020), reconsideration denied, No. 307CV00070RGJCHL, 2021 WL 535848 (W.D. Ky. Feb. 12, 2021). Cozen knew that LauBach was CEO of HDR Farms and CEO of XSi from October 2019 forward. Cozen gave LauBach substantial assistance in setting up the new entity to take HDR Farms' assets. Cozen reviewed the proposed LOI with XSi on behalf of HDR Farms but failed and refused to provide any information or legal advice to a disinterested board member or officer. Cozen abandoned HDR Farms and moved to XSi knowing the entire time that LauBach had conflicting interests as CEO of both entities. Cozen knew about and assisted in the drafting of the documents for the investment into XSi instead of HDR Farms while representing HDR Farms. Cozen knew there were over thirty shareholders that would be affected by the actions of Laubach and Cozen.

C. Cozen committed legal malpractice.

"A plaintiff in a legal malpractice case has the burden of proving '1) that there was an employment relationship with the defendant/attorney; 2) that the attorney neglected his duty to

exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) that the attorney's negligence was the proximate cause of damage to the client'." *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003). This case is similar to *Potter v. Cozen O'Connor*, 46 F.4th 148 (3rd Cir. 2022). "The facts of this case are illustrative. The disadvantageous terms of the APA, the below-market purchase price, and the disputed installment payments resulting from the Lawyers' alleged conflicted representation inflicted a direct financial injury on the LLCs, but they also inflicted an indirect injury on the LLCs' shareholders: the diminution of value in their ownership interests." *Id*., 157. As outlined by Mr. Ostermiller, as counsel for HDR Farms, Cozen neglected to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances and those actions caused injury to HDR Farms, its creditors, and its shareholders. Cozen and LauBach were the only parties who knew the true nature of the transaction that would ultimately leave HDR Farms in the dust with no assets and no participation in the new "corporate structure." No one at Cozen was advising independent officers and directors about the actions of LauBach and Cozen's formation of XSi with LauBach at the helm.

D. Underline: LauBach fraudulently misrepresented the investment, the letter of intent, and future of Debtor to Debtor, its board, and its shareholders.

Fraudulent misrepresentation requires proof that: "(1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff *reasonably relied* upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 213 (6th Cir. 2019). Here, LauBach misrepresented the terms of the XSi transaction to the board and thereby induced the board members into agreeing with the new proposed corporate structure with XSi. LauBach knew that

the representation was false and testified that when he told the board member that he got $500 guaranteed per share for the investors, that it was a lie. LauBach intended for the board to rely on his misrepresentations so he could easily abandon the company without anyone pursuing him. The board was reasonable in its reliance in the representations made by its CEO and which the board believed to be handled by its legal counsel, Cozen. HDR Farms has been harmed by LauBach's actions. But for LauBach's misrepresentations, the board would not have voted to move forward with a partnership with XSi but would have instead continued to pursue other opportunities and suitors. LauBach testified that many companies and individuals were interested in Debtor at the time. However, he abandoned the pursuit of all others for his own selfish interest.

E.  LauBach fraudulently omitted facts to Debtor, its board of directors, and shareholders.

The elements of fraudulent omission are: "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 213 (6th Cir. 2019). As stated above, had the transaction terms been fully and completely disclosed, the board would have been able to pursue any number of other avenues in lieu of having its CEO jump ship and take its assets.

F.  LauBach usurped a corporate opportunity away from Debtor.

Courts uniformly hold that litigants—fiduciaries, in particular—can find no solace in board action where the board lacked full and accurate information or when conflicts of interest have not been disclosed to it. Thus, Defendants' repeated insistence that LauBach acted with the full support of HDR's board rings hollow. It is fundamental to the law of corporations that "full disclosure of all material facts" is the "condition precedent" of a board's authorization of any transaction, *First*

*Dakota Nat'l Bank v. St. Paul Fire Marine Ins. Co.*, 2 F.3d 801, 810 (8th Cir. 1993), especially in the context of a "conflict of interest transaction" like this one, KRS § 271B.8-310(1).

Under Kentucky law, when "a director of the corporation," like LauBach, "has a direct or indirect interest" in a transaction, that transaction is void or voidable by the corporation if the director failed to fully disclose his interest to the other board members. *Id.* § 271B.8-310(1)(a). For "the disclosure to be effective," it must "lay bare the truth, without ambiguity or reservation in all its stark significance." *Patmon v. Hobbs*¸ 280 S.W.3d 589, 596 (Ky. Ct. App. 2009) (quoting *Wendt v. Fischer*, 154 N.E. 303, 304 (N.Y. 1926) (Cardozo, J.)). Simply put, if an interested director obtains the board's consent to a transaction through misrepresentation or by withholding material facts, then the board's consent doesn't count.

What's more, Kentucky law precludes LauBach himself from casting a vote in favor of any transaction in which he has an interest. A "conflict of interest transaction" is only considered to be "authorized" by the board "if it receives the affirmative vote of a majority of the directors . . . who have *no direct or indirect interest* in the transaction." KRS § 271B.8-310(3). The law doesn't permit LauBach to vote in favor transactions that serve his personal interests at the expense of the company's any more than it permits him to procure the other board members' votes through subterfuge and by withholding material facts. *See Patmon*, 280 S.W.3d at 596. As such, no valid board authorization of the transaction ever occurred.

"To allow a corporate fiduciary to take advantage of a business opportunity when the fiduciary determines the corporation to be unable to avail itself of it would create the worst sort of temptation for the fiduciary to rationalize an inaccurate and self-serving assessment of the corporation's financial ability and thereby compromise the duty of loyalty to the corporation." *Patmon v. Hobbs*, 495 S.W.3d 722, 730 (Ky. Ct. App. 2016). "There is persuasive authority that a

'solvent corporation's financial  inability  to  undertake  an opportunity does  not  absolve

a corporate fiduciary from liability for diverting what is otherwise a corporate opportunity'." *Id.*

G.  HDR Farms should be awarded punitive damages and attorneys' fees based upon the injury caused by the actions of LauBach and Cozen.

"Generally,  in  instances  where  a  litigant  establishes  a  cause  of  action  but  has  not

established  an  entitlement  to  compensatory damages, nominal damages may  be  awarded."

*Tavadia v. Mitchell*, 564 S.W.3d 322, 327 (Ky. Ct. App. 2018), citing, *Stoll Oil Refining Co. v.*

*Pierce*, 343 S.W.2d 810, 811 (Ky. 1961). The Court enjoys wide latitude in remedying a breach

of fiduciary duty of loyalty. *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983) (in fiduciary

duty case, noting that the trial court's "powers are complete to fashion any form of equitable and

monetary relief as may be appropriate.") The settled policy justifications for breach of fiduciary

duty and the heightened duties of care and loyalty that accompany them warrant relaxation of any

strict application of direct consequential damages or economic loss rule. As a result, courts

reinforce fiduciary relationships not just through compensatory means but deterrent means as well.

*See, e.g., Mulder v. Mittelstadt*, 352 N.W.2d 223, 229 (Wis. Ct. App. 1984). In short, given the

importance of fiduciary duties as compared to, for instance, contractual duties, "no harm, no foul"

does not quite apply to fiduciary violations.

It is important to note that "the law does not require certainty in the award of damages

where a wrong has been proven and injury established." *Henkel of Am., Inc. v. Bell*, 825 F. App'x

243, 255 (6th Cir. 2020). "Where [a court] finds that a breach of fiduciary duty has occurred, the

specificity and amount of evidence required from the Plaintiff on the issue of damages is minimal."

*Id.* at 256. "[T]here is minimal [evidentiary] burden on plaintiffs who have proven a breach." *Id.*

at 255.Even if HDR suffered no compensatory damages, the trial court should consider nominal

damages and then address its claims for punitive damages and attorney's fees. *Tavadia v. Mitchell*,

564 S.W.3d 322, 328 (Ky. Ct. App. 2018). In particular, where a duty and a breach have been established, an award of punitive damages is proper even where the compensatory damages may be nominal. "It has long been held that '(t)he correct rule… is that if a right of action exists that is, if the plaintiff has suffered an injury for which compensatory damages might be awarded, although nominal in amount he may in a proper case recover punitive damages." *Lawrence v. Risen*, 598 S.W.2d 474, 476 (Ky. Ct. App. 1980).

Given that this matter has been prosecuted effectively as derivative litigation, with the estate's claims deriving from HDR's and to redress Defendants' violations of their duties to HDR Farms, Inc. in the interest of HDR's creditors, the Court is empowered to award attorneys' fees the estate has incurred in this action. See *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (attorneys' fees may be awarded in derivative suits); *Stavens v. Fed. Ins. Co*., No. 2019-CA-1433-MR, 2020 WL 7419030, at *3 (Ky. Ct. App. Dec. 18, 2020)(noting award of attorneys' fees on derivative claim). An express term of the LOI was to repay the shareholders up to $2,000,000.00 total over twenty- four (24) months.

To date, Plaintiff has incurred approximately $200,000.00 in legal fees prosecuting this action post-confirmation. Plaintiff anticipates that its legal fees will reach approximately $300,000.00 through trial. An award of Plaintiff's attorneys' fees is appropriate and authorized under the law.

Respectfully submitted,

*/s/ Charity S. Bird*
CHARITY S. BIRD
**Kaplan Johnson Abate & Bird, LLP**
710 West Main Street. 4th Floor
Louisville, Kentucky 40202
Telephone: (502) 416-1630
E-mail: cbird@kaplanjohnsonlaw.com
*Counsel for Plaintiff*

23

## CERTIFICATE OF SERVICE

It is hereby certified that on September 27, 2022, true and correct copies of the foregoing were served by the Court's CM/ECF system.

*/s/ Charity S. Bird*
CHARITY S. BIRD