## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF KENTUCKY
### LEXINGTON DIVISION

**IN RE**

**HDR FARMS INCORPORATED**                                    **CASE NO. 20-50888**

**DEBTOR**

**HDR FARMS INCORPORATED**                                    **PLAINTIFF**
**LIQUIDATING TRUST**

**V.**                                                        **ADV. NO. 21-5166**

**APPLIED BOTANICS LLC f/k/a XSI**                            **DEFENDANTS**
**USA, LLC, et al.**

## MEMORANDUM OPINION

The Plaintiff is a trust created by the confirmed plan of Debtor HDR Farms Incorporated ("HDR Farms") to liquidate any remaining assets. The Plaintiff filed a fourteen-count complaint in October 2021 that alleges its former officer and director, Defendant Kawel LauBach, breached fiduciary duties and committed fraud by creating and diverting investments to Defendant Applied Botanics LLC f/k/a XSi USA, LLC ("XSi USA"). [ECF Nos. 1, 17.] The Plaintiff claims Defendants Dean Johnson, Cozen O'Connor, Annette Cox, Todd Mercer, and Applied Biology LLC aided the breaches and fraud, among other allegations.

The counts against Applied Biology LLC were dismissed early and Cox and Mercer were granted summary judgment before trial. [ECF Nos. 93 and 261-62.] Plaintiff did not pursue Johnson and XSi USA, and the claims against them were dismissed for lack of prosecution. [ECF No. 321.]

A trial was held on the remaining counts against LauBach and Cozen:

- Count 1 – Breach of Fiduciary Duty (LauBach)

- Count 4 – Aiding and Abetting Breach of Fiduciary Duty (Cozen)
- Count 5 – Legal Malpractice (Cozen)
- Count 10 – Fraudulent Misrepresentation (LauBach)
- Count 11 – Fraudulent Omission (LauBach)
- Count 12 – Usurpation of Corporate Opportunity (LauBach).

The parties' stipulation of facts, testimony, exhibits, arguments, and record of this

proceeding do not support these claims and judgment is granted for LauBach and Cozen.

## I.    Facts.

A detailed discussion of the facts through the discovery stage is included in the opinion

granting summary judgment to Cox and Mercer.  [ECF No. 261 at 2-10.]  That statement of facts

supplements the additional findings below.

### A.    The Creation of HDR Farms and Initial Business Operations.

Danny Plyler, Steve Bragg, Kawel LauBach, and William Noelkler formed HDR Farms

in 2017 to produce refined cannabinoids ("CBD(s)") and CBD isolate to market wholesale to

formulators of retail CBD products.

The company had the authority to issue 1,000 shares, divided into two classes:

(1) 770 shares designated as Class A voting shares; and (2) 230 shares designated as Class B

non-voting shares.  [ECF No. 291-2.]  Plyler owned 300 Class A voting shares and Bragg and

LauBach owned 200 shares each.  [ECF No. 245-33.]  The remaining Class A shares were

distributed to Ben Walls, Stuart Cahill, and Noelkler.[1]  [Id.]

Plyler, Bragg, and LauBach were the original officers and directors of the company.

Noelkler was a director and the company's attorney but did not hold an office.

---

[1] The List of Equity Security Holders indicates Plyler only owned 280 Class A shares when the bankruptcy petition
was filed.  [Case No. 20-50888, ECF No. 31.]  Trial testimony explained that Plyler distributed 20 Class A shares to
friends and family when he resigned that is not documented in the HDR Farms stock register.

The company was funded by investments from Class B shareholders that were primarily friends and family of the founders.  The Class B shareholders received convertible promissory notes equal to the face amount of their investments that were scheduled to mature one year after execution.  [ECF No. 245-31.]  Class B shareholders did not have voting rights other than the right to elect a director.  [ECF No. 291-2.]

HDR Farms spent most of 2018 and early 2019 attempting to build its business with the money raised from the Class B shareholders.  The company used the funds to purchase clones and equipment necessary to distill isolate.  It also leased farmland to plant the first crop, financed the purchase of the Jackson Pike Farm for $675,000.00, and executed a lease-to-own contract for greenhouses located on Daynabrook Farm.

HDR Farms expected strong returns so it could repay its Class B shareholders when the one-year notes matured.  Instead, HDR Farms lost $1.5 million and had a negative net worth of over $2 million in 2019.  The evidence indicated several reasons for its financial problems.

The hemp industry requires a high level of execution, quality, and expertise that HDR Farms did not have.  The company could not effectively grow hemp or distill isolate, and it struggled to consistently produce a clean product.  The other members of the Board blamed Plyler, the original CEO, for misrepresenting his experience with hemp.  They also blamed his poor management skills.  LauBach and Bragg accused Plyler of engaging in relationships and illegal drug activity with co-workers that caused significant discord in the company.

The price of hemp biomass also crashed in 2019.  CBD commodity market prices dramatically declined from approximately ~$7,500/kilo in January 2019 to ~$500/kilo in June 2020.  [Case No. 20-50888, ECF No. 76 at 5 (disclosures in the Debtor's confirmed plan).]

3

LauBach and Bragg attributed the collapse to an increase in hemp production and a decline in retail prices for CBD products.

### B.    Attempts to Solve HDR Farms' Financial Problems.

HDR Farms took several actions to address its problems.  The Board demoted Plyler and named LauBach CEO in June 2019.  It also fired its lab director for illegal drug use.  Stewart Wakeley, the largest Class B shareholder, joined the Board in August 2019.  Plyler and Noelkler resigned as directors a month later.

LauBach and Bragg searched for new investors and business partners in summer and fall 2019.  They investigated several local, regional, and national groups.  Most of their efforts came up short except for LauBach's discussions with Trim Healthy Mama ("THM") of Nashville, Tennessee, and a Canadian group called XSi Canada, led by Dean Johnson.

LauBach believed a partnership with THM was the best fit for HDR Farms and gave the company the greatest chance of survival.  But THM's interest in forming a partnership waned in October 2019.  LauBach attributed this to Plyler's interference with the developing business relationship.  A partnership with XSi Canada was the only remaining option.

XSi Canada wanted to move into the American hemp market and create a vertically integrated CBD operation.  HDR Farms had the property, equipment, and licenses necessary to grow hemp and distill isolate.

On November 22, 2019, LauBach and Johnson executed a non-binding letter of intent between HDR Farms and XSi USA (the "Letter of Intent").  [ECF No. 248-4.]  The 3-page letter contemplated that XSi USA, an American affiliate of XSi Canada, would purchase the Jackson Pike Farm and assume the Daynabrook Farm lease and hemp licenses in the "near term."  [*Id.*]  The Letter of Intent anticipated that XSi USA would also purchase the outstanding shares of

HDR Farms "for a price of no less than a $500/share, not to exceed a total of $2,000,000.00 in expense" within 24 months. [*Id*.] It further granted XSi USA a right of first refusal to purchase isolate from HDR Farms pending the acquisition of the assets and shares.

A few days later, XSi USA through Johnson executed a non-binding letter of intent with another company called Terpene Bio Tech, Inc. ("TBT") for the retail side of the arrangement (the "TBT Letter of Intent"). [ECF No. 247-16.] The TBT Letter of Intent provided that XSi USA would take the "near term" actions described in the Letter of Intent so it could sell isolate to TBT. TBT offered its bottling capability to turn isolate into CBD retail products. It promised to lease property to construct a commercial bottling line and support lab to use the isolate for its retail products. Eventually, XSi USA and TBT planned to form a new entity to oversee the vertically integrated operation.

### C.    The Formation and Funding of XSi USA.

LauBach expected XSi Canada to locate funding for XSi USA, but that did not happen. The funding primarily came from a $2.5 million investment from Annette Cox. LauBach met with Cox and her investment advisor, Todd Mercer, in November 2019 to explain the hemp and CBD industry. LauBach invited Cox and Mercer to tour the HDR Farms' facilities in early December. Bragg, Johnson, and Steve Olasz from XSi Canada also attended the tour. LauBach explained the partnership to Cox and Mercer and gave them a document outlining the anticipated structure of the XSi USA and TBT arrangement. [ECF No. 251-10.]

On December 11, LauBach asked Joseph Bedwick, of Cozen O'Connor, to prepare the documents necessary to form XSi USA and establish a bank account to receive Cox's investment. [ECF No. 248-5.] Bedwick is a corporate attorney and chair of Cozen's cannabis industry team. LauBach testified that he primarily hired Bedwick and his firm to represent HDR

5

Farms in negotiations to buyout Plyler's shares.  But the October 2, 2019, engagement letter reflects that Cozen was hired for the broader purpose of representing HDR Farms in general corporate, business and litigation matters.  [ECF No. 241-13.]

A paralegal at Cozen prepared and filed the documents to create XSi USA as a Delaware multi-member limited liability company on December 12, 2019.  [ECF No. 243-9.]  The documents list LauBach as the responsible party and CEO.  [*Id.*]

Also on December 11, LauBach asked Bedwick to represent XSi USA in negotiating a binding contract with HDR Farms.  Bedwick agreed and XSi USA engaged Cozen as counsel on January 6, 2020.  [ECF No. 243-4.]  LauBach, for HDR Farms, and Johnson, for XSi USA, also executed a conflict waiver letter (the "Conflict Waiver Letter") that same day.  [ECF No. 249-4.]  The Conflict Waiver Letter waived any conflict created by Cozen's representation of XSi USA in its future transactions with HDR Farms.  [*Id.*]  The Conflict Waiver Letter also indicated Cozen could continue to represent HDR Farms in all non-XSi USA related transactions.  [*Id.*]

### D.    LauBach's Resignation from HDR Farms.

Cox did not want Plyler involved with her investment in any way.  Cox knew about HDR Farms' problems with Plyler and the continuing efforts to remove Plyler by purchasing his shares in the company.  The negotiations with Plyler reached a standstill in January 2020, in part because he was not paying his own lawyer.  By that time, HDR Farms had no money, and it desperately needed Cox to invest in XSi USA so the companies could move forward with the Letter of Intent.

On January 9, LauBach asked Cozen to forward drafts of the XSi USA operating agreement and subscription agreement for the Cox investment.  [ECF No. 243-9.]  The same day, LauBach sent an email to Bedwick describing his intent to resign as CEO of HDR Farms and

rescind his ownership interests to pave the way for Cox's investment. [ECF No. 243-10.]
Bedwick advised LauBach that he should consider his fiduciary duty to HDR Farms and delay
his departure. [*Id.*] LauBach and Bedwick discussed, and LauBach decided, that his resignation
was the only option to ensure Cox would immediately invest in XSi USA.

On or around January 14, LauBach notified Bragg, Wakeley, Cox, and Mercer of his
intent to resign. He officially resigned from HDR Farms on January 17, 2020. [ECF
No. 243-29.] LauBach also sold his interest in the company to Bragg and Wakeley for a nominal
amount.

LauBach assumed his position as CEO of XSi USA immediately following his
resignation. Cox signed the operating and subscription agreements and delivered $2.5 million to
XSi USA on January 20, 2020.[2] [ECF No. 249-24.]

### E.    HDR Farms Continued Decline and Bankruptcy.

HDR Farms and XSi USA never negotiated a binding contract based on the Letter of
Intent or otherwise. XSi USA did complete the "near term" conditions in the Letter of Intent by
March 2020, including purchasing the Jackson Pike Farm, assuming the Daynabrook Farms
lease, and acquiring necessary licenses. XSi USA also advanced operating capital to HDR
Farms towards a subsequent purchase of isolate to help HDR Farms meet its immediate cash
needs in January.

XSi USA could not proceed with contract negotiations because it had problems of its
own. Its relationship with TBT soured in spring 2020 and the deal described in the TBT Letter
of Intent crumbled. XSi USA also suffered from the decline in the CBD market and ultimately

---

[2] The Amended Complaint alleges Mercer also invested $100,000.00 in XSi USA, but that did not occur. GEC
Realty, LLC, a company owned by Mercer's wife, made an investment in that amount. GEC Realty, LLC is not a
defendant in this action and the Plaintiff has not connected Mercer to this investment.

filed a chapter 7 bankruptcy petition in the Western District of Kentucky on December 29, 2021.

[*See In re XSi USA, LLC*, Case No. 21-32555, Bankr. W.D. Ky. (dismissed for failure to file

necessary papers).]

The lack of operating capital, high debt, and lawsuits to collect the Class B shareholder

notes forced HDR Farms to file a chapter 11 bankruptcy petition on June 9, 2020.  [Case

No. 20-50888.]  HDR Farms elected to proceed under subchapter V of chapter 11, which

provides for an expedited reorganization process.  HDR Farms' Amended Small Business Plan

was confirmed as a non-consensual subchapter V plan under 11 U.S.C. § 1191(b) on December

28, 2020.  [*Id*. at ECF Nos. 76, 85, 87.]

The confirmed plan created the Plaintiff and appointed Dak Davis and Wakeley as

Liquidating Trustees.  [*Id*.]  The Liquidating Trustees initiated this adversary proceeding on the

Plaintiff's behalf on October 15, 2021.

## II.     Jurisdiction.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334.  The Plaintiff contends this is a

core proceeding under 28 U.S.C. § 157(b).  [ECF No. 17 at ¶ 9.]  This is not a core proceeding

but the Defendants consent to entry of final orders and judgment by this Court pursuant to 28

U.S.C. § 157(c)(2).  [ECF Nos. 42, 48, 76.]  Venue is proper under 28 U.S.C. § 1409.

## III.    Count 1:  LauBach Did Not Breach A Fiduciary Duty Owed to HDR Farms.

### A.     The Plaintiff Has the Burden to Prove Breach by a Preponderance of the Evidence.

The Plaintiff claims LauBach breached his fiduciary duty of loyalty to HDR Farms.  The

Plaintiff has the burden to prove: (1) the existence of a fiduciary duty; (2) breach of that duty;

(3) injury; and (4) causation.  *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*,

436 S.W.3d 189, 193 (Ky. 2013), as modified (Feb. 20, 2014).  It is easy to conclude that

LauBach, as a director and an officer, owed a fiduciary duty of loyalty to HDR Farms.  *Id.*

at 194.  The issue is whether LauBach breached his duty and subsequently harmed the company.

The standard for the burden of proof differs depending on the fiduciary's conduct.

Actions that carry out the duties of a director or officer are evaluated using a clear and

convincing standard.  KY. REV. STAT. § 271B.8-300(6).  Actions taken by a director outside his

corporate duties are evaluated using a preponderance of the evidence standard.  *See Baptist*

*Physicians Lexington, Inc.,* 436 S.W.3d at 201.

The Plaintiff alleges LauBach breached the duty of loyalty by focusing his attention and

efforts on the success of XSi USA, not HDR Farms.  The Plaintiff must prove this breach by a

preponderance of the evidence.  The Plaintiff failed to satisfy its burden.

### B.    LauBach Did Not Breach a Duty of Loyalty by Diverting Investments.

The Plaintiff initially pursued the theory that LauBach breached his duty of loyalty by

diverting investments from Cox and Mercer intended for HDR Farms to XSi USA.  The Plaintiff

did not prove, however, that Cox or Mercer ever intended to invest in HDR Farms, or that

Mercer ever invested in XSi USA.  [ECF Nos. 261, 262.]  The Plaintiff also did not prove that

HDR Farms suffered any injury by Cox's investment in XSi USA.  [*Id.*]

The Plaintiff argues new evidence introduced at trial shows Mercer intended to invest in

HDR Farms.  The evidence is a series of text messages between LauBach and Mercer on

December 5, 2019, that asks Mercer to sign a letter showing Mercer's desire to buy Plyler's

shares in an amount up to $100,000.  [ECF No. 304.]  Mercer responded, "Yes."  [*Id.*]

The Plaintiff's discovery requests did not cover such communications and the

information was not provided to the Plaintiff during discovery, so it was not discussed in the

summary judgment briefing.  Regardless, this new information is not enough to conclude Mercer

would have made a $100,000.00 investment in HDR Farms almost two months later or that he

participated in Cox's investment.

The settlement contemplated by the text messages did not work because Plyler countered

the offer by agreeing to accept if HDR Farms paid all Class B shareholders in full.  [ECF

No. 248-8.]  HDR Farms had no funds to pay the Class B shareholders and no deal was reached.

[ECF No. 248-13.]  Further, Plyler, not HDR Farms, would have received the money if the offer

was accepted.

The evidence does not prove LauBach breached his duty of loyalty by diverting

investments from Cox and Mercer intended for HDR Farms to XSi USA.

###### C.    LauBach Did Not Breach a Duty of Loyalty by Forming XSi USA.

Summary judgment for Cox and Mercer caused the Plaintiff to shift its primary focus at

trial to the theory that LauBach breached his duty of loyalty by setting up XSi USA as a

competing business for his own benefit as its future CEO and owner.  *See Steelvest, Inc. v.*

*Scansteel Serv. Ctr., Inc*., 807 S.W.2d 476, 483 (Ky. 1991) (director or officer that sets up a

competing enterprise breaches a fiduciary duty of loyalty).  The Plaintiff focuses on the actions

LauBach took after October 2019 when he believed he would have an ownership and

management role in XSi USA.

Laubach did not betray HDR Farms or its shareholders by forming XSi USA.

###### 1.    A Partnership with XSi Canada was HDR Farms' Only Option for Survival.

HDR Farms did not make enough money in 2019 to initiate repayment on the Class B

shareholder notes or cover its expenses.  It could not pay the mortgage on the Jackson Pike Farm

and listed it for sale in September 2019.  It also defaulted on the Daynabrook Farm lease in

October 2019.  The company had $600 in its bank account by the end of the year and it could not pay its employees.

LauBach tried to develop relationships with several local, national, and foreign entities to shore up HDR Farms' business.  But only two potential investors, THM and XSi Canada, showed any interest and THM backed out by the end of October 2019.  A partnership with XSi Canada was HDR Farms' only and last resort.

### 2.  LauBach Had the Authority to Negotiate and Execute the Letter of Intent.

LauBach had the authority to negotiate and execute the Letter of Intent as a director and CEO of the company, which he did.  LauBach asked Cozen to review a letter seeking shareholder approval of the Letter of Intent but Cozen advised LauBach that only Board approval was required by the HDR Farms' bylaws.  [*See* ECF No. 247-11 (the "November Shareholder Letter").]

The other Board members did not negotiate or execute the Letter of Intent, but they were aware of the negotiations and approved the deal.  The contemporaneous email discussions and the testimony confirm Bragg and Wakeley knew the material terms of the Letter of Intent and supported the deal as a lifeline for the company.  [*See, e.g.,* ECF No. 241-27 (November 18, 2019, email to Bragg and Wakeley with the November Shareholder Letter attached); *see also* ECF Nos. 241-18, 242-4, 246-25, 245-8, 247-3, 249-2 (text and email discussions about the Letter of Intent).]   Bragg even assisted by renegotiating the Daynabrook Farm lease for XSi USA and helping XSi USA obtain a license to grow hemp.  [*See, e.g.,* ECF No. 243-11 (discussing XSi USA growing license).]  Wakeley supported LauBach's negotiation efforts and ratified the deal after learning about its terms.  [ECF No. 247-11 (attached statement of support).]

11

Bragg and Wakeley testified that their support of the Letter of Intent was misplaced because they relied on LauBach's misrepresentations about the terms of the deal and did not know about LauBach's interest in the new company. There is no evidence that LauBach misrepresented the Letter of Intent. [*See* Part IV.] There is also no evidence that LauBach intentionally concealed his future role in XSi USA from the Board, shareholders, or HDR Farms employees.

Bragg testified that he did not know about LauBach's interest in XSi USA, but the testimony is not credible. The document shared with Cox and Mercer at the December tour reflects that both LauBach and Bragg anticipated having an ownership interest in XSi USA. [ECF No. 251-10.] There is also evidence that Bragg's wife, who helped with HDR Farms finances, knew about Laubach's future role as CEO shortly after the Letter of Intent was executed. [ECF No. 242-7.] Further, text messages between Bragg and LauBach in late December 2019 indicate Bragg knew LauBach expected to assume the CEO position. [ECF No. 245-8.]

Wakeley testified that he did not learn of LauBach's interest in XSi USA until he resigned. Yet Wakeley accepted his resignation and shares notwithstanding that knowledge and continued to praise LauBach in the months following his resignation. [*See, e.g.,* ECF No. 243-34 (January 23, 2020, email to Bragg acknowledging the "approach we are taking is the best for our survival") and 244-33 (April 24, 2020, email to Johnson expressing appreciation for the "lifeline you and KL threw us.")]. These contemporaneous actions raise significant doubts regarding his contrary testimony years later.

### 3. Establishing XSi USA Was Necessary to Perform Under the Letter of Intent.

XSi USA was not a legal entity when LauBach and Johnson executed the Letter of Intent and could not act on its promises or execute a binding contract until it was legally formed. LauBach credibly explained why he took the initiative to form the company and agreed to attach his name as the CEO and responsible party. XSi Canada's representatives could not act quickly to form the company or accept a management role because of their foreign status. LauBach anticipated managing the company as its CEO and informed Cozen of the same, so it was logical for Cozen to list him by this title on the formation documents.

The Plaintiff complains LauBach expedited the formation of XSi USA so he could abandon HDR Farms. The evidence confirms, however, that the process was expedited because HDR Farms had no money and could not survive unless XSi USA purchased isolate and the farm.

### 4. Funding XSi USA Was Necessary to Perform Under the Letter of Intent.

The prior discussion also confirms funding was necessary for XSi USA to perform under the Letter of Intent. The Board understood that the Letter of Intent was the company's only hope for survival and fully supported LauBach's actions.

The Plaintiff argues LauBach directed the funds away from HDR Farms by painting a negative picture to potential investors and overstating the need to remove Plyler from the company. But the evidence indicates that was the only portrait that existed. The Plaintiff stipulated that "HDR Farms performed poorly in 2019." [ECF No. 275 at ¶ 4.] It owed $2.1 million to its investors and lost approximately $1.5 million that same year. [*Id.*] HDR Farms was not profitable and could not pay its expenses.

13

No reasonable person would invest in a company on the verge of insolvency like HDR Farms without some strong indication of the likelihood for improvement and a return on investment ahead of the existing obligations.  The Plaintiff's evidence does not allow any scenario that might suggest otherwise, and it is unreasonable to ignore such an obvious problem.

Bragg and Wakeley testified at trial that Plyler was really a scapegoat and LauBach pursued him for personal reasons.  But their conduct on or around the time of the alleged breaches belies their testimony.  There is substantial evidence and testimony blaming Plyler for the company's financial problems in 2019 and early 2020.

The November Shareholder Letter that attached a statement of support from Wakeley describes HDR Farms' efforts to remove Plyler from the company.  [ECF No. 247-11.]  Bragg blamed Plyler for the problems and described the ongoing efforts to remove him in his communications with the shareholders in February and March 2020 too.  [*See* ECF Nos. 244-19 (February Letter) and 245-13 (March Slide Show).]  There is also evidence that Plyler interfered with LauBach's attempts to develop a partnership with THM and even joined forces with Noelkler to create a competing company called Chronic Nomad.  The Board had a legitimate fear that Plyler might interfere with the XSi USA transaction.

LauBach's representations to Cox and Mercer about HDR Farms' financial status and management issues do not convincingly show LauBach improperly pushed investments intended for HDR Farms to XSi USA.  LauBach sought Cox's investment for XSi USA in furtherance of the Letter of Intent and with the full support of the HDR Farms Board so the transaction described in the Letter of Intent could move forward.

### 5.  XSi USA Did Not Operate While LauBach was a Director and Officer.

The Plaintiff alleges LauBach set up XSi USA as a competitor of HDR Farms.  The evidence shows that XSi USA was created to help HDR Farms by buying its isolate until XSi

USA absorbed the company by purchasing its shares.  The evidence does not show LauBach intended to use XSi USA to compete with HDR Farms.

Further, there was no evidence XSi USA conducted any business while LauBach was CEO of HDR Farms or competed with HDR Farms after LauBach resigned.  XSi USA was formed in December but it did not have any assets and did not receive funding until LauBach's resignation in January 2020.  LauBach did not assume his management role until he resigned, and the evidence does not convincingly indicate XSi USA competed against HDR Farms thereafter.

### D.    LauBach's Actions Did Not Cause HDR Farms to Suffer Harm.

Even if LauBach's actions were wrong, the Plaintiff failed to produce evidence that HDR Farms suffered an injury by the creation and funding of XSi USA.

XSi USA was the only reason HDR Farms survived in early 2020.  It advanced approximately $30,000.00 to HDR Farms in January 2020 toward the purchase of isolate and the farm so HDR Farms could pay its necessary expenses, including payroll.  XSi USA also fulfilled four of the five commitments in the Letter of Intent by March 2020.  It purchased isolate, assumed the Daynabrook Farm lease, purchased the Jackon Pike Farm, and acquired the licenses. These actions supplied HDR Farms with much-needed funds and relieved it from significant liabilities.

The Plaintiff suggests LauBach harmed HDR Farms because he did not negotiate the Letter of Intent to a binding contract.  But the Plaintiff did not identify the specific steps that LauBach failed to take while a fiduciary for HDR Farms.  XSi USA could not negotiate a contract until it was formed and funded.  LauBach's actions in forming and funding XSi USA

while CEO at HDR Farms made it possible for XSi USA to perform under the Letter of Intent

and set it up to eventually negotiate a binding contract with HDR Farms.

The evidence after LauBach's resignation indicates it was XSi USA that could not

negotiate a binding agreement.  The XSi USA and TBT relationship soured, and the TBT Letter

of Intent was abandoned.  XSi USA could not purchase HDR Farms isolate when it did not have

the anticipated relationship with the end user.  The Plaintiff appears to suggest LauBach had a

continuing duty to HDR Farms in his role as CEO of XSi USA, but that is not consistent with

corporate law.  *See Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir. 2012)

(fiduciary duty continues until resignation, the end of a term, or officially removed from the

company).

The evidence does not show LauBach breached a fiduciary duty owed to HDR farms.

## IV.    Counts 10 and 11:  LauBach Did Not Fraudulently Misrepresent or Omit Material Facts.

The Plaintiff claims LauBach fraudulently misrepresented or omitted material facts about

the Letter of Intent.  A claim for fraudulent misrepresentation requires proof that:

(1) the defendant made a material representation to the plaintiff;
(2) the representation was false;
(3) the defendant knew the representation to be false or made it with reckless
    disregard for its truth or falsity;
(4) the defendant intended to induce the plaintiff to act upon the
    misrepresentation;
(5) the plaintiff reasonably relied upon the misrepresentation; and
(6) the misrepresentation caused injury to the plaintiff.

*House v. Bristol-Myers Squibb Co*., No. 3:15-CV-00894-JHM, 2017 WL 55876, at *8 (W.D. Ky.

Jan. 4, 2017) (citing *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky.

2011)).  *See also United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).

Document    Page 17 of 27

Fraud by omission differs because it is based on a duty to disclose rather than an affirmative misrepresentation. It requires proof of: (1) a duty to disclose a material fact at issue; (2) failure to disclose the fact; (3) inducement to act on the omission; and (4) subsequent injury. *House*, 2017 WL 55876 at *8.

The alleged misrepresentations and omissions are substantially consistent with the alleged breaches of fiduciary duty. The Plaintiff claims misrepresentations and omissions regarding LauBach's role with XSi USA, repayment of the Class B shareholder notes, and the need to remove Plyler as a Class A shareholder.

The discussion of Count 1 confirms LauBach's management and ownership roles in XSi USA were known or easily discovered and removing Plyler was a legitimate business decision supported by the entire Board. *See, e.g.,* Part III.C. The discussion also shows that initiating repayment of the Class B shareholder notes was financially impossible.

The Plaintiff claims LauBach falsely told Wakeley that XSi USA would promptly pay $500 per share for the Class B shares. [ECF No. 247-19.] It is hard to accept one lone statement as sufficient proof of LauBach's intent to deceive, but reliance on the statement to suggest a guaranteed prompt payment was not reasonable. The plain language in the Letter of Intent, which Wakeley and Bragg had received as members of the Board, clearly indicates the payment might take up to 24 months.

More significant, the document was non-binding – there was not yet any legal obligation. Wakeley claimed business acumen in his testimony and the language is not difficult to interpret. Instead of supporting a claim of misrepresentation, this proof calls into question Wakeley's diligence regarding the unambiguous term. *See Bassett v. Nat'l Collegiate Athletic Ass'n.,* 428 F. Supp. 2d 675, 684 (E.D. Ky. 2006), *aff'd sub nom. Bassett v. Nat'l Collegiate Athletic Ass'n,* 528

F.3d 426 (6th Cir. 2008) (a director has a duty to review and understand the terms of an

instrument).

The record does not allow a conclusion that LauBach made any material

misrepresentations or omissions while acting as a director and officer at HDR Farms.

## V.      Count 12:  LauBach Did Not Usurp a Corporate Opportunity from HDR Farms.

The Plaintiff's usurpation claim requires proof that LauBach violated his duty of loyalty

by stealing a business opportunity from HDR Farms.  *See Patmon v. Hobbs*, 280 S.W.3d 589,

596 (Ky. Ct. App. 2009).  The Plaintiff's goal from the outset was to show LauBach violated his

duty of loyalty by diverting investments from Cox and Mercer to XSi USA.  The summary

judgment opinion confirms Cox and Mercer did not intend to invest in HDR Farms, so this

argument failed.

The Plaintiff also suggests LauBach and XSi USA took opportunities from HDR Farms

in February and March 2020.  This argument was unconvincing and has little relevance because

LauBach no longer owed any fiduciary duty to HDR Farms.  *See* Part III.B.  The evidence of

future actions does not provide material support to either side's arguments.

The Plaintiff did not show LauBach usurped a corporate opportunity.

## VI.     Count 4:  Cozen Did Not Aid and Abet a Breach of Fiduciary Duty.

Aiding and abetting a breach of fiduciary duty claim requires proof of: (1) the existence

and breach of a fiduciary relationship; (2) "substantial assistance or encouragement" in

effectuating the breach; and (3) knowledge that the conduct breached that fiduciary duty. *See*

*Insight Kentucky Partners II, LP v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 546 (Ky. Ct.

App. 2016) (citing *Miles Farm Supply, LLC v. Helena Chem. Co.*, 595 F.3d 663, 666 (6th

Cir.2010)).  The Plaintiff failed to satisfy the first element because the proof does not show

LauBach breached his fiduciary duty of loyalty to HDR Farms.

The aiding and abetting count also fails because the Plaintiff did not produce sufficient

evidence to show Cozen assisted LauBach with actual knowledge of the alleged breach.  *Miles*,

595 F.3d at 666.  The Plaintiff claims Cozen should have known that LauBach was breaching his

fiduciary duties because it knew about LauBach's future role with XSi USA in October 2019.

But constructive knowledge is not sufficient; actual knowledge is required.  *Id.*  There was no

reason for the law firm or its professionals to suspect that the tasks it performed were not in HDR

Farms' interests.

Bedwick testified that LauBach told him the Board supported the XSi USA transaction

and he had no reason to doubt this information.  This testimony is credible.  During November

2019, Bedwick reviewed the November Shareholder Letter that contained a statement in support

of the Letter of Intent from Wakeley.  [ECF No. 242-2.]  Wakeley's statement at least confirmed

the majority of the Board supported the transaction.

LauBach did not ask Bedwick to advise regarding the transaction or review the Letter of

Intent before it was signed.  LauBach suggested in correspondence that he might ask for help, but

he never instructed Bedwick to act.  Bedwick did not receive a copy of the Letter of Intent until it

was signed and he was only asked to consider it as part of the November Shareholder Letter.

The Cozen invoices confirm most of the 80 hours spent on the HDR Farms' engagement

between October 2019 and January 2020 involved the negotiations with Plyler.  [ECF

No. 245-22.]  Legal assistance with the Plyler matter was reasonable because Plyler was

interfering with customer relationships and competing with HDR Farms.  Also, he was

represented by legal counsel, which suggests the need for a lawyer's involvement on the other side.

The other matter that took more than a negligible amount of time was the paralegal's work forming XSi USA.  Bedwick credibly testified that this is a ministerial task routinely performed for business clients like HDR Farms.  *See Insight Kentucky Partners II, LP*, 514 S.W.3d at 547 (general aid through routine professional services does not aid and abet a breach of fiduciary duty).  The timing was not in question because the need to act promptly based on HDR Farms' financial problems was well known.

The aiding and abetting claim against Cozen fails because there was no breach by LauBach to assist.  The Plaintiff also failed to prove Cozen knew, or even should have known, LauBach might have breached his duty of loyalty to HDR Farms.

## VI.    Count 5:  Cozen Did Not Commit Malpractice.

The Plaintiff alleges Cozen committed malpractice by concurrently representing XSi USA and HDR Farms.  It also contends Cozen inappropriately gave LauBach personal advice about his fiduciary duty and negligently failed to inform the disinterested Board members about LauBach's alleged misconduct.  The Plaintiff further argues Cozen then inappropriately dropped HDR Farms as its client in favor of XSi USA because HDR Farms could not pay its bills.

The Plaintiff bears the burden of proving that Cozen was negligent.  *Stephens v. Denison*, 150 S.W.3d 80, 81 (Ky. Ct. App. 2004).  The Plaintiff must prove: (1) an attorney/client relationship; (2) a failure to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) injury proximately caused by the negligent conduct.  *Id.*; *see also Everest Stables, Inc. v. Rambicure*, 803 F. App'x 819, 823-24 (6th Cir.

2020); *Kotevska v. Fenton*, No. 2018-CA-000831-MR, 2019 WL 1313410, at *8 (Ky. App. Mar. 22, 2019).

HDR Farms hired Cozen as its general counsel and Cozen owed duties to HDR Farms. But the Plaintiff did not prove Cozen negligently advised HDR Farms or that Cozen's actions caused HDR Farms to suffer an injury.

### A.     Cozen's Agreement to Concurrently Represent HDR Farms and XSi USA Did Not Harm HDR Farms.

The Plaintiff alleges Cozen failed to exercise ordinary care because it concurrently represented XSi USA and HDR Farms in violation of Kentucky Rule of Professional Conduct SCR 3.130 (1.7).[3]  A violation of the Rules of Professional Conduct does not give rise to a cause of action or a presumption that a legal duty was breached.  *See McBrayer, McGinnis, Leslie & Kirkland, PLLC v. Eckerle*, No. 2019-SC-000010-MR, 2019 WL 4074735, at *5 (Ky. Aug. 29, 2019); *Chesley v. Abbott*, 524 S.W.3d 471, 482 (Ky. Ct. App. 2017).  But the Rules of Professional Conduct provide guidance in defining the minimum standard of care for a reasonable attorney acting in the same or similar circumstances.  *Id.*

Rule 1.7 prohibits a lawyer from representing a client if the representation creates a "concurrent conflict of interest."  SCR 3.130 (1.7)(a).  A concurrent conflict of interest arises when: (1) the representation of one client is directly adverse to another; or (2) the representation creates a significant risk that the lawyer's responsibilities to one of the clients will be materially limited.  *Id.  See also* SCR 3.130 (1.9)(a) (a lawyer cannot represent a current client in the same or a substantially related matter involving a former client when the current client's interests are materially adverse unless the former client gives written informed consent).

---

[3] The Conflict Waiver Letter refers to Cozen's ethical duties under the Pennsylvania Rules of Professional Conduct. The Kentucky Rules control, but they are similar.  Any differences in the relevant rules do not have any impact on the analysis herein.

LauBach asked Bedwick to represent XSi USA in its future contractual negotiations with HDR Farms and continue to advise HDR Farms in matters unrelated to XSi USA (*i.e.,* the Plyler matter).  A lawyer cannot concurrently represent counterparties to a contract regarding the agreement because their interests are directly adverse. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 413 (6th Cir. 2008). Cozen also should not represent XSi USA if it had performed work for HDR Farms on the matter involved.

Cozen determined there was not a conflict because Bedwick and Cozen did not participate in the negotiations or drafting of the Letter of Intent.  But the risk that its responsibilities to HDR Farms or XSi USA could be materially limited required a waiver letter to confirm both parties consented to the representation. *See* SCR 3.130 (1.7)(b).  LauBach and Johnson signed the Conflict Waiver Letter on January 6.

It is questionable whether LauBach could effectively waive the conflict for HDR Farms because of his anticipated interest in XSi USA.  Whether the Conflict Waiver Letter was effective is ultimately irrelevant.  The only work Cozen performed for XSi USA was preparation of the operating agreement and subscription agreement for the Cox investment in early January 2020.  These documents furthered the goals of both sides so there was not a direct conflict or harm.

There is also no evidence that Cozen harmed HDR Farms by representing XSi USA in future transactions with HDR Farms, including negotiation of a binding agreement. *See Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003) (proximate cause is a necessary element of a legal malpractice claim); *Douglas Walter Greene v. Frost Brown Todd, LLC*, No. 16-6761, 2017 WL 6210784, at *5 (6th Cir. Dec. 4, 2017) (affirming summary judgment when plaintiff failed to show attorney's alleged conflict of interest caused plaintiff any harm), *cert. denied*, 139 S.Ct.

568 (2018); *Rhem v. Horn*, Case No. 10-10050-BC, 2010 WL 4792175 (E.D. Mich. Nov. 18, 2010) (granting summary judgment where plaintiff failed to prove potential conflict of interest caused harm).  There are no damages if there is no harm.

**B.      Cozen Did Not Violate A Duty of Care by Advising LauBach About His Fiduciary Duty.**

The Plaintiff argues that Cozen's advice to LauBach about his fiduciary duty to the company is personal advice that conflicts with its representation of HDR Farms.  A corporate attorney giving an officer advice about his fiduciary duty to the client organization is appropriate representation of the organization.  *Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005). Cozen correctly advised LauBach that he owed a fiduciary duty of loyalty to the company. Cozen did not give any advice that was contrary to HDR Farms' interests.

The Plaintiff's expert opined that LauBach sought advice from Cozen for his own benefit. But he was unable to satisfactorily identify the specific communications that caused this concern. The only communication identified was Bedwick's advice to LauBach about the November Shareholder Letter.  The evidence indicates Bedwick appropriately counseled LauBach and interpreted the bylaws to conclude that shareholder disclosure was not required.  Providing sound legal advice that assists a client is not malpractice.

**C.      Cozen Did Not Violate a Duty of Care by Failing to Advise About the Risks Associated with the Letter of Intent.**

The Plaintiff argues Cozen was negligent because it did not advise the Board about the risks associated with the Letter of Intent.  HDR Farms did not ask Cozen for advice about the Letter of Intent.  LauBach asked Bedwick to review the Letter of Intent after it was executed and within the context of determining what information he should give shareholders.

LauBach decided whether to execute the Letter of Intent and the Board ratified his decision. It is not a lawyer's role to make business decisions for the company. *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp.)*, 353 B.R. 324, 358 (Bankr. D.D.C. 2006) (corporate counsel should not interfere or usurp the business judgment of the company). Cozen did not have an obligation to advise HDR Farms about the Letter of Intent.

>    **D.    The Lack of Disclosure of LauBach's Interests in XSi USA to Disinterested Directors Did Not Violate a Duty of Care.**

The Plaintiff argues Cozen should have advised Bragg and Wakeley about LauBach's alleged breaches. A lawyer employed by an organization represents the organization. SCR 3.130 (1.13)(a). A lawyer must take reasonable steps to protect the client if the lawyer has reason to believe an officer is engaged in misconduct and such actions could injure the organization. SCR 3.130(1.13)(b). This can include "refer[ring] the matter to higher authority in the organization, including, if warranted by the circumstances, to the highest authority that can act on behalf of the organization as determined by applicable law." *Id.*

The Plaintiff did not offer a reason Bedwick should have advised Bragg or Wakeley about LauBach's actions other than it was aware of LauBach's future role in XSi USA. The evidence confirms Bragg and Wakeley supported the XSi USA transaction. The evidence and preceding discussion also show Bedwick had good reason to believe the Board supported the transaction described in the Letter of Intent and the creation and funding of XSi USA.

The evidence does not show Cozen had reason to believe it should raise issues with the other Board members.

### E.    Cozen Did Not Inappropriately Terminate Its Representation of HDR Farms.

The Plaintiff argues Cozen violated its duty of care by terminating its representation of HDR Farms in favor of XSi USA because HDR Farms could not pay for its services.  The "hot potato" rule prohibits a law firm from resolving a direct conflict of interest by withdrawing from representation of the less lucrative client.  *In re Curare Lab'y LLC*, No. 21-31588, 2022 WL 1572059, at *2 n. 7, 15 (Bankr. W.D. Ky. May 18, 2022); *Metro. Life Ins. Co. v. Guardian Life Ins. Co. of Am.*, No. 06 C 5812, 2009 WL 1439717, at *3 (N.D. Ill. May 18, 2009).  The evidence does not support a finding that Cozen violated this rule.

The Conflict Waiver Letter indicates Cozen intended to continue its representation of HDR Farms in all non-XSi USA related transactions presumably until XSi USA purchased the HDR Farms shares.  Cozen did not end its relationship with HDR Farms after LauBach resigned; Bragg terminated the relationship to use cheaper legal counsel.

Further, the evidence is insufficient to conclude Cozen switched its allegiance to XSi USA because HDR Farms could not pay its bills.  Testimony did suggest the ability to pay affected LauBach's motivation, but the proof does not show Bedwick had the same understanding.  Cozen agreed to represent XSi USA at LauBach's request because LauBach anticipated XSi USA would ultimately absorb HDR Farms.

Cozen did not inappropriately withdraw its representation from HDR Farms.

## VII.    The Plaintiff Did Not Prove an Injury to HDR Farms and is Not Entitled to Recover Damages.

Summary judgment was granted to Cox and Mercer in part because the Plaintiff did not prove HDR Farms was harmed by Cox's investment in XSi USA.  The Plaintiff also has the burden to prove that Laubach and Cozen's conduct, if wrong, caused HDR Farms to suffer harm.

*See Baptist Physicians Lexington, Inc*., 436 S.W.3d at 198 (breach of fiduciary duty); *House*, 2017 WL 55876 at *8 (fraud); *Patmon*, 280 S.W.3d at 598 (usurpation); *Insight Kentucky Partners II, LP*, 514 S.W.3d at 546 (aiding and abetting); *Marrs*, 95 S.W.3d at 860 (malpractice).

The Plaintiff argued that HDR Farms was injured in ways other than the Cox investment. [ECF No. 211.]  The Plaintiff was given an opportunity to prove this injury to support an award of nominal and/or punitive damages at trial.  [ECF No. 263.]  The Plaintiff did not prove that the Defendants actions, if wrong, harmed HDR Farms.  *See* Parts III.D and VI.A.

Even if there was evidence to support an award of actual damages in a nominal amount, there is no evidence that the Defendants' actions rose to a level of the egregiousness necessary to support a punitive damages award.  *See* KY. REV. STAT. § 411.184 (requiring clear and convincing evidence that the defendant acted toward the plaintiff with oppression, fraud, or malice); *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 870–71 (Ky. 2016) (punitive damages may be awarded under the common law standard of gross negligence that requires conduct in wanton or reckless disregard for the lives, safety, or property of others); *see also Profitt v. Highlands Hosp. Corp*., No. CV 7:19-15-KKC, 2022 WL 1275632, at *9 (E.D. Ky. Apr. 28, 2022) (gross negligence equates to "egregious instances of misconduct").

## VIII.    Conclusion

The Plaintiff did not satisfy its burden of proof by a preponderance of the evidence that LauBach breached a fiduciary duty owed to HDR Farms.  The proof does not show LauBach fraudulently misrepresented or omitted material facts or usurped a corporate opportunity. Further, the evidence does not prove Cozen aided and abetted a breach of fiduciary duty or committed malpractice.  HDR Farms was not harmed by LauBach or Cozen's actions and there

is no evidence they acted egregiously.  LauBach and Cozen are entitled to a judgment on all counts.

The foregoing constitutes the Court's findings of fact and conclusions of law.  In reaching the conclusions found herein, the Court has considered all the evidence, exhibits, and arguments of counsel, regardless of whether the information is specifically referred to in this decision.  A separate Judgment shall be entered accordingly.

27

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*__Gregory R. Schaaf__*
**Bankruptcy Judge**
**Dated: Thursday, December 15, 2022**
 **(grs)**